# EXHIBIT C

<pre>
 1                  UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION


 3

      MICHAEL TULLGREN,                 :
 4                                      :
                    Plaintiff,          :   Civil Action
 5                                      :   No. 1:22-cv-00856-MSN-IDD
            v.                          :
 6                                      :
      BOOZ ALLEN HAMILTON INC., et      :   December 1, 2022
 7    al.,                              :   9:54 a.m.
                                        :
 8                  Defendants.         :
                                        :
 9    ..............................    :

10    ANDRE HALL, et al.,               :
                                        :
11                  Plaintiffs,         :   Civil Action
                                        :   No. 1:22-cv-00857-MSN-IDD
12          v.                          :
                                        :
13    CAPITAL ONE FINANCIAL             :   December 1, 2022
      CORPORATION, et al.,              :   9:54 a.m.
14                                      :
                    Defendants.         :
15                                      :
      ..............................    :

16

17              TRANSCRIPT OF MOTIONS HEARING
           BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
18              UNITED STATES DISTRICT COURT JUDGE


19

    APPEARANCES:
20

      For the Plaintiffs:         MILLER SHAH LLP
21                                James C. Shah, Esq.
                                  John Claude Roberts, Esq.
22                                1845 Walnut Street, Suite 806
                                  Philadelphia, PA 19103

23


24

25                        (Continued)
</pre>

```
 1      (Continued)

 2      For the Plaintiffs:        TYCKO & ZAVAREEI LLP
                                   Glenn Edward Chappell, Esq.
 3                                 2000 Pennsylvania Avenue NW
                                   Suite 1010
 4                                 Washington, D.C. 20036

 5      For the Defendants:        MORGAN LEWIS & BOCKIUS LLP
                                   Matthew James Sharbaugh, Esq.
 6                                 Frank H. Williams, III
                                   1111 Pennsylvania Avenue NW
 7                                 Washington, D.C. 20004

 8                                 Jeremy P. Blumenfeld, Esq.
                                   Jared R. Killeen, Esq.
 9                                 1701 Market Street
                                   Philadelphia, PA 19103
10
        Court Reporter:            Diane Salters, B.S., CSR, RPR, RCR
11                                 Official Court Reporter
                                   United States District Court
12                                 401 Courthouse Square
                                   Alexandria, VA 22314
13                                 Email: Dianesalters.edva@gmail.com
                                   Telephone:  (301) 338-8033
14

15

16

17

18

19

20

21

22

23

24
        Proceedings reported by machine shorthand.  Transcript produced
25      by computer-aided transcription.
```

*Proceedings*

1          THE DEPUTY CLERK:  *Michael Tullgren v. Booz Allen*

2  *Hamilton, et al.*, Case Number 22-cv-856, and *Hall, et al. v.*

3  *Capital One Financial Corporation, et al.*, Case Number 22-cv-857.

4  Will the parties please note their appearances for the record.

5          MR. SHAH:  Good morning, Your Honor.  James Shah on

6  behalf of Miller Shah.

7          THE COURT:  Good morning.

8          MR. ROBERTS:  Good morning, Your Honor.  John Roberts,

9  on behalf of plaintiffs in both cases, from Miller Shah.

10          THE COURT:  Good morning.

11          MR. CHAPPELL:  Good morning, Your Honor.  Glenn

12  Chappell from Tycko & Zavareei on behalf of plaintiffs in both

13  cases.

14          THE COURT:  Good morning.

15          MR. BLUMENFELD:  Good morning, Your Honor.  Jeremy

16  Blumenfeld from Morgan Lewis on behalf of defendants.

17          THE COURT:  Good morning, Mr. Blumenfeld.

18          MR. SHARBAUGH:  Good morning, Judge.  Matthew Sharbaugh

19  from Morgan Lewis on behalf of defendants.

20          THE COURT:  Good morning.

21          MR. KILLEEN:  Good morning, Your Honor.  Jared Killeen

22  from Morgan Lewis on behalf of the defendants.

23          THE COURT:  Good morning.

24          MR. WILLIAMS:  Good morning, Your Honor.  Frank

25  Williams, III, on behalf of the defendants.

4

*Proceedings*

1          THE COURT:  Good morning.  Very good.  Well, good

2   morning to you-all, and I'm delighted to be starting court early.

3   It's a long tradition here in the Eastern District of Virginia,

4   and I'm pleased you were here before ten o'clock.

5          This matter comes before the Court on motions to

6   dismiss in both of the cases which were called, *Tullgren v. Booz*

7   and *Hall v. Capital One*.  I saw, as I reviewed the pleadings and

8   realized that we have the same lawyers on both cases, that for

9   purposes of efficiency, we could call the cases together.  I

10  don't think that I need to or it would be appropriate to

11  consolidate the cases formally, but I want to make sure that both

12  sides agree that it's appropriate to simply have one argument

13  addressing the fundamental issues and that the Court will make a

14  decision that applies in both cases, although I would issue

15  orders appropriately in both cases.

16          Does anyone have any objection to that?  Mr. Shah?

17          MR. SHAH:  Plaintiffs have no objection, Your Honor.

18          MR. BLUMENFELD:  That's fine with us, Your Honor.

19  Thank you.

20          THE COURT:  Likewise, let me, just in terms of

21  housekeeping before we turn to the substance of the motion,

22  address the motions for leave to file the amicus briefs.  I know

23  that there were amicus briefs filed in both cases.  They weren't

24  the identical parties, but they were substantially similar, the

25  Chamber of Commerce and the various other groups.  I've reviewed

*Proceedings*

1    those motions and the oppositions.  I am going to deny those

2    motions.  I will not grant leave to file those amicus briefs.

3    Although I appreciate the effort and work that was put into this,

4    I do find that the defendants are ably represented by competent

5    counsel and the matters have been fully briefed and that I can

6    certainly understand the public interest and the industry's

7    interest in this issue, but this isn't the Supreme Court, it's

8    not the Fourth Circuit.  This is a motion to dismiss under

9    12(b)(6).  I'm looking at the complaint, the facts that are

10   alleged.  I will apply the law.  I don't need to address the

11   arguments that are in those amicus briefs, and so that motion is

12   denied.

13            So that leaves us with the motions to dismiss filed by

14   the defense in both cases.  I've received those motions,

15   memoranda.  I've reviewed the oppositions filed by plaintiffs in

16   those cases and the reply briefs.  And so the matter is fully

17   briefed before the Court.  I am mindful of the fact, as I've

18   reviewed many of the other cases from around the country, that

19   the law firm on the plaintiffs' side has been on many of those

20   cases, and Mr. Blumenfeld, yourself and your law firm has been on

21   the other side of those cases, so you're used to these arguments

22   and we don't need to repeat them all from the beginning.  So you

23   can assume I'm familiar with your arguments, but I'll hear

24   whatever you have to say.

25            MR. BLUMENFELD:  Thank you very much, Your Honor.

*Proceedings*

1          THE COURT:  Thank you.

2          MR. BLUMENFELD:  May it please the Court, my name is

3   Jeremy Blumenfeld, and I represent defendants in both cases.

4          As the Court's aware, plaintiffs allege breach of

5   fiduciary duty claims regarding the plan's offering of BlackRock

6   target-date funds as investment options when four other

7   target-date funds allegedly performed better.  These allegations

8   don't state a claim as a matter of law.

9          A few principles, and then I'll dive into the argument,

10  Your Honor.  First, plan fiduciaries don't need to pick the best

11  performing funds, and the corollary to that, Your Honor, is that

12  there is no cause of action for not picking the best performing

13  funds.  The Supreme Court, this past January, held that the

14  plausibility of allegations of a fiduciary breach must account

15  for the range of reasonable judgments that fiduciaries may make.

16  And since the Supreme Court's decision in *Hughes*, the courts of

17  appeals have universally rejected investment challenges by

18  alleging underperformance, comparing funds that have some

19  similarities and some differences.  We talk about these cases in

20  our brief, but just to name them:  *Albert v. Oshkosh* out of the

21  Seventh Circuit, *Smith v. CommonSpirit* out of the Sixth,

22  *Matousek v. MidAmerican* out of the Eighth, and *Davis v.*

23  *Salesforce* out of the Ninth.  Notably, Your Honor, *Smith v.*

24  *CommonSpirit* and *Davis v. Salesforce* also involved target-date

25  fund allegations, that is, comparisons of one target-date fund to

*Proceedings*

1    one or another target-date fund.

2            Even before the Supreme Court's decision in *Hughes*, the

3    Eighth Circuit, in *Meiners v. Wells Fargo*, rejected another

4    challenge to Wells Fargo target-date funds on the basis that they

5    were underperforming as compared to Vanguard target-date funds,

6    the same Vanguard target-date funds that plaintiffs point to as

7    comparators here.  The grounds for dismissal in those cases apply

8    equally here.  There are really three reasons for it, Your Honor,

9    as we set forth in our papers:  One, the lack of a meaningful

10   benchmark; two, plaintiffs are just cherry-picking a few

11   target-date funds out of a universe of 28 -- or, really, more

12   than that -- target-date funds that exist in the marketplace;

13   and, three, the performance differences are small.  I'm going to

14   focus my remarks, Your Honor, on the meaningful benchmark aspect,

15   and then I'll have a few remarks on the other two towards the

16   end.

17           There are several reasons that comparator funds here

18   don't provide a meaningful benchmark as a matter of law.  First,

19   the comparator funds are active funds, at least two of them, as

20   compared to the BlackRock funds, which are passively managed

21   target-date funds.  This difference matters.  It's not just a

22   naming convention.  It's what the Sixth Circuit looked at in

23   *Smith v. CommonSpirit*; it's what the Eighth Circuit looked at in

24   *Davis v. Washington University in St. Louis;* and it was the basis

25   for the Ninth Circuit's decision in *Davis v. Salesforce*.  It's

1   also, on the face of the complaint here, reflected in the fact

2   that these investments have different risks and have different

3   investment strategies.  Paragraph 27 of the Capital One complaint

4   and paragraph 25 of the Booz Allen complaint admit that active

5   funds are not designed to address different risks and have

6   different strategies.

7          The second difference, Your Honor, is the glide path,

8   that is, "through retirement" versus "to retirement."  The

9   BlackRock funds are to-retirement funds.  All the comparator

10   funds that plaintiffs point to are through retirement.  Again,

11   that's not just a nomenclature issue; it means they are designed

12   to address different risks.  It's not that one is better than

13   another or worse than another; they're just not meaningful

14   benchmarks for each other because they are designed to accomplish

15   different things.  That's reflected in the DOL guidance, which is

16   attached as Exhibit 2 to our motion to dismiss.  It's also,

17   again, on the face of the complaint.  Here, it's paragraph 26 of

18   the Capital One complaint and paragraph 24 of the Booz Allen

19   complaint.

20          The third difference, another meaningful one, is the

21   equity holdings of the BlackRock target-date funds are different

22   than the comparator funds, and there are really two subcomponents

23   of that:  First, on the face of the complaint -- paragraph 39 of

24   Capital One, paragraph 37 of Booz Allen -- the complaint admits

25   that the equity holdings vary from among the BlackRock

9

*Proceedings*

1    target-date funds to the others.  Sometimes those differences are

2    a little smaller; sometimes they're as much as ten percent or

3    more, that is, a ten percent more difference in equity holdings.

4    That's a meaningful difference in terms of the comparatorness and

5    renders them inept comparators.  Again, the Eighth Circuit, in

6    the *Meiners* case, affirmed Rule 12 dismissal on precisely those

7    grounds, that is, the holdings of the target-date funds in the

8    Vanguard target-date funds were a little bit different, about ten

9    percent or so, from the holdings in the Wells Fargo target-date

10   funds that were being challenged in that case; and as a result,

11   the Eighth Circuit said it wasn't a meaningful benchmark and

12   affirmed Rule 12 dismissal of those allegations.

13         THE COURT:  Do you think that argument, maybe, proves

14   too much in the sense that you could potentially never have a

15   comparator if you had to identify exactly the same allocation?

16         MR. BLUMENFELD:  So you could often have a comparator;

17   and what the courts talk about in that context is where they are

18   identical, that's sufficient.  Typically, this comes up in the

19   context of different share classes of an investment option where

20   everything about the investments are identical, and what you're

21   left with is one happens to be cheaper, at least at first blush,

22   than another.  And there are lots of reasons why somebody might

23   pick one or the other of those, but at least courts have looked

24   at that and said that provides a meaningful benchmark.

25         To use an analogy, Your Honor, to say that Person A

*Proceedings*

1    finished a race in 45 seconds and Person B finished a race in

2    55 seconds doesn't allow you to draw any inference about who is

3    faster or slower unless you know they were running the exact same

4    race, unless you know they were both running.  If one of them had

5    hurdles, you can't say one is better than the other.  They're not

6    meaningful comparators.  If one of them was a little bit longer

7    than the other, they're not meaning comparators; you can't

8    compare them.  The same is true here.  And, frankly, Your Honor,

9    that's what the Sixth Circuit did in *Smith v. CommonSpirit*, the

10   Seventh Circuit in the *Albert v. Oshkosh*, and the *Meiners* case

11   from the Eighth Circuit, and *Davis v. Salesforce.*  All were

12   dealing with those issues and precisely those kinds of things.

13           I would say further, Your Honor, plaintiffs' argument

14   assumes that all equities are the same, but we know that's not

15   true.  There are domestic equities and there are foreign

16   equities.  There are large-cap equities and small-cap equities,

17   and there are growth-oriented equities versus value-oriented

18   equities, and the complaint here says nothing about any of those

19   holdings.  And that's meaningful, Your Honor, because the

20   allegation is that some of these funds hold 90-plus percent of

21   their holdings in equities.  But if one of them has 90 percent of

22   their holdings in large-cap domestic equities and the other has

23   90 percent of its holdings in small-cap foreign holdings, they're

24   not meaningful comparators for each other.

25           Likewise, with respect to bonds, Your Honor, the

*Proceedings*

1    complaint actually doesn't say anything at all about the bond

2    holdings of the comparator funds or the BlackRock target-date

3    funds.  It assumes that anything that's not in equity would be a

4    bond, and that assumption isn't right.  But even taking that

5    assumption as true, the same problems arise.  First, you have a

6    situation where the bonds vary by as much as 10 to 12 percent

7    between the BlackRock funds and the comparator funds.  That's not

8    to say that one allocation to bonds is better or worse than the

9    other; it is to say they are different.  They're expected to have

10   different returns and carry with them, also, different risks.

11          And the second part of that is, again, it says nothing

12   about what those bonds are invested in.  You could have two bond

13   funds that are 100 percent invested in bonds, but if one of them

14   is in government agency bonds and the other is in corporate

15   bonds, those aren't comparable.  They're going to carry with them

16   different risks and different returns.  And what we know here is

17   two things:  Nothing about the American funds or T. Rowe Price

18   fund bond holdings as compared to the BlackRock funds.  There's

19   no allegations about it and no information about it.  And with

20   respect to the others, there is information comparing the

21   BlackRock bonds to the Vanguard bonds and the Fidelity Freedom

22   bonds.  And what we know from that, Your Honor, is that they

23   invest -- putting aside the percentages, they invest in different

24   kinds of bonds.  Again, it's not to say that one is better than

25   the other or worse than the other.  They're just different, and

*Proceedings*

1    they carry with them different risks and, therefore, expected

2    different returns.  They are not meaningful benchmarks for each

3    other.

4              Plaintiffs' response, essentially, Your Honor, is to

5    say that all of these issues are fact issues and that the Court

6    can never decide whether something is a meaningful benchmark or

7    not.  With respect, Your Honor, that's just not the law.  The

8    Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Ninth

9    Circuit all considered these issues in the context of Rule 12

10   motions, and all found that the claims failed as a matter of law

11   for lack of a meaningful benchmark.  And the reason is you can't

12   infer imprudence based on investments that are not comparable

13   having different performance.  If you could, then a plaintiff

14   could sue over a bond fund saying that an equity fund performed

15   better and just say, Well, whether it's a meaningful benchmark or

16   not is a fact issue.  This is really no different.

17             You also could compare a target-date fund to not

18   another target-date fund.  Why not just the S&P 500 Index and say

19   that the S&P 500 performed better than all of the target-date

20   funds we're talking about and, therefore, they are all imprudent

21   investment options?  They're not meaningful benchmarks for each

22   other, and you can't do that, and it is certainly appropriate to

23   consider in the context of a Rule 12 motion.  That's clear from

24   the Supreme Court's decision in *Hughes* and all of the appellate

25   decisions after it.

13

*Proceedings*

1        So what are we left with, Your Honor?  What are the

2   other allegations of imprudence in the complaint here?  There are

3   none.  There are no red flags about other investors abandoning

4   the BlackRock funds.  There are no allegations of press reports

5   that are critical of the BlackRock funds.  There are no

6   allegations that the manager, BlackRock, was a new manager or

7   inexperienced or that the funds had an insufficient track record,

8   and there are no allegations of self-dealing or excessive costs

9   or anything along those lines.

10       And just look at the cases that they looked to in

11  support -- and I know we talk about some of those in our reply

12  brief -- there's one in particular that I'd like to mention that

13  I don't believe was in our reply brief, but looking back at

14  the briefing, I thought it would be worth addressing, and that's

15  the *Williams v. Centerra Group* case.  It's cited in their brief

16  at pages 10 to 11.  A couple of observations about that case:

17  First, it predates the Supreme Court's decision in *Hughes*.  It

18  predates *Oshkosh* and *CommonSpirit* and *Davis v. Salesforce* and all

19  the other cases I've been talking about.  But even putting that

20  to one side, listen to what the allegations were in that case and

21  what that case was about.  Aon was hired as an investment manager

22  to manage the Centerra 401(k) plan, and the allegations were

23  shortly after being hired, Aon came in and replaced all of the

24  401(k) plan investment options in the Centerra plan with Aon

25  investment options.  This is a quote from the court's opinion

*Proceedings*

1    denying the motion to dismiss, a part that plaintiffs don't talk

2    about in their papers, where the court is talking about the

3    allegations that the plaintiffs made that made the claim

4    plausible:  Plaintiffs contend the following allegations support

5    a plausible inference of imprudence:  One, AHIC -- that's Aon

6    Hewitt Investment Consulting -- benefited directly and indirectly

7    when it chose to invest the plan in its affiliated Aon trusts,

8    creating a significant conflict of interest; two, despite

9    the conflict of interest, AHIC failed to undertake an

10   independent investigation of investment options available in the

11   market before deciding to use its own products; and, three, AHIC

12   hired an inexperienced manager without a meaningful track record,

13   and the Aon trusts were newly created with insufficient

14   performance history.  Of course, Your Honor, none of those facts

15   exist here.  No allegations of self-dealing or financial conflict

16   of interest, no allegations that BlackRock was an inexperienced

17   manager or that the BlackRock funds had an insufficient

18   performance history.  Instead, what we know from plaintiffs'

19   brief and the documents that are incorporated into the complaint,

20   BlackRock was a gold-rated investment manager highly rated for

21   its people, process, and parent organization.

22            Your Honor, putting aside the meaningful benchmark

23   point, I told you there were those two other arguments.  I just

24   want to touch on those briefly.  And, in particular, without

25   rehashing the arguments that were in our papers, I'd like to

*Proceedings*

1    direct the Court to Exhibit 1 to our motion to dismiss, which was

2    the Morningstar Report.  It's Docket 22-1 at page ID number 145.

3    And, in particular, that shows the performance history of the

4    BlackRock target-date funds in percentile rankings.  It shows

5    that the BlackRock LifePath Index funds, the funds that are being

6    challenged here, over the prior three years were at the

7    33rd percentile, that is, they were in the top third

8    of target-date funds --

9        THE COURT:  I'm sorry to interrupt, but do I really

10   need to consider that?  Is that not outside the pleadings?

11       MR. BLUMENFELD:  So, no, it is not outside the

12   pleadings because they cite to it in, I think it's footnote 4 of

13   the complaints in this case, and plaintiffs haven't objected to

14   it being attached.  The Court doesn't need to consider it, no,

15   because the complaint is silent on the subject, but I think it

16   sort of proves the point as to why plaintiffs' allegations are

17   insufficient.  And what it shows, Your Honor, is that the

18   BlackRock funds were in the 33rd percentile over three years, the

19   29th percentile over five years, and the 37th percentile over ten

20   years.  That certainly is not outside the range of reasonable

21   judgments that fiduciaries make.  It's in the top third over the

22   last three and five years and just shy of that over the last ten

23   years.  What that shows is that plaintiffs' allegations that the

24   fund performance of the BlackRock funds was deplorable is only

25   from their suggestion that you can compare it to just four funds

*Proceedings*

1    and ignore all of the other target-date funds in the marketplace.

2            THE COURT:  Well, I'm going to give plaintiffs' counsel

3    a chance to address this, but you note in your pleadings -- and I

4    believe looking back on it, maybe all these same lawyers were

5    involved in the case in *Wehner v. Genentech* -- that the

6    plaintiffs pointed to BlackRock TDF as a benchmark for a fund

7    that was performing well as compared to an underperforming fund.

8            MR. BLUMENFELD:  Correct.  Also true, Your Honor.  And

9    if you look at the performance of the other comparator funds they

10   talk about in that Morningstar Report that they cite to and that

11   is incorporated into the complaint, you see the BlackRock funds

12   are, you know, like I said, they're in the top third and just shy

13   of the top third.  The Vanguard funds that they point to as a

14   comparator, over the last ten years, they were in the

15   31st percentile.  And if you think about that, Your Honor, that's

16   plaintiff saying you were unreasonable and imprudent because you

17   offered a fund that performed at the 37th percentile and,

18   instead, you should have offered a fund that performed six

19   percentile better, that is, in the 31st percentile.  And the

20   Fidelity Freedom Index Funds -- and I point that out, Your Honor,

21   only because the chart that is in the Morningstar Report lists

22   the Freedom Index funds and also the Freedom funds -- plaintiffs

23   have elsewhere said in the complaint the Freedom funds were not a

24   prudent choice either.  So I just want to make that distinction.

25   The Fidelity Freedom Index Funds actually performed worse in

*Proceedings*

1    their percentile rankings than the BlackRock funds over the last

2    three years, the last five years, and the last ten years.

3            Unless the Court has any questions, I don't have

4    anything further.

5            THE COURT:  Would you like to address, briefly, the

6    issue of Mr. Hall's status as plaintiff here?  I'm not sure it's

7    the primary issue, but it was raised by the defense.

8            MR. BLUMENFELD:  Sure.  So I think the release is

9    clear.  He has released the claims that are the subject of his

10   lawsuit and also agreed, to the extent that he has some claim

11   that is not released, that he was agreeing not to participate in

12   any way, shape, or form in any sort of class action.  The case

13   law, the contract, the terms of that are clear and prohibit him

14   from participating in this action.  His claims are released, to

15   start with, but even if they weren't, they would be barred

16   because he's not allowed to participate in any sort of action.

17           THE COURT:  And how do you respond to the argument that

18   the release doesn't apply to his standing in the shoes of the

19   plan?

20           MR. BLUMENFELD:  So I think the case law is to the

21   contrary, because the plan doesn't need to release the claims.

22   He is the one who needs to release the claims.  The cases that we

23   cite in our brief, I think, make that point, including the, I

24   believe it's the *George Washington University* case out of the

25   D.C. Circuit which affirmed dismissal of the *Howell v. Motorola*

*Proceedings*

1    case, which affirmed summary judgment on a release even though

2    those claims were also brought on behalf of the plan in both of

3    those contexts.  And he's also agreeing not to participate in a

4    lawsuit, which, again, means to the extent the claim is not

5    released, he personally is agreeing not to participate in a

6    lawsuit and shouldn't have filed this action in court.

7              THE COURT:  Thank you.

8              MR. BLUMENFELD:  There is one other thing that I just

9    wanted to address briefly, Your Honor.  I apologize for

10   having forgotten about it.  There's a footnote in plaintiffs'

11   brief where they say, We should be allowed to amend.  My answer

12   to that, Your Honor, is that's not a motion for leave to amend.

13   Plaintiffs' counsel know that that's not a motion for leave to

14   amend.  It's the same thing they tried in the *Smith v.*

15   *CommonSpirit* case, and the Sixth Circuit rejected, and I would

16   ask that you do the same thing.  Them dropping a footnote saying

17   they should be allowed to amend is like me saying, You should

18   allow them to amend and then you should dismiss the amended

19   complaint for reasons that I haven't told you about yet and that

20   aren't the subject of a motion and for a complaint that doesn't

21   exist yet.  If they're going to be allowed to amend, they should

22   be forced to go through that process.  And in the meantime, I

23   would say Your Honor can rule on the current complaint, the

24   current motion to dismiss, and I would ask you to dismiss the

25   complaint and then enter judgment based on it.

*Proceedings*

1          THE COURT:  Thank you.

2          MR. BLUMENFELD:  Thank you, Your Honor.

3          THE COURT:  Mr. Shah?

4          MR. SHAH:  Good morning, Your Honor.  May it please the

5   Court, James Shah on behalf of plaintiffs in both cases.

6          I would like to start with the standard.  There was a

7   fair amount of discussion in the briefing about what the

8   appropriate standard is and the suggestion that somehow

9   the *Dudenhoeffer* case from the Supreme Court and the *Hughes* case

10  placed some kind of heightened pleading standard in ERISA actions

11  on plaintiffs.  And I would just like to note that in

12  *Dudenhoeffer*, the Court actually reversed the dismissal of ERISA

13  claims and specifically said that it declined -- the Supreme

14  Court declined to impose a presumption of prudence.  And so I

15  think that any suggestion in the briefing that *Dudenhoeffer*

16  somehow heightened the pleading standard cannot be found in the

17  actual text of the opinion itself.  And, in fact, *Hughes*, which

18  was recently decided, as counsel noted, specifically when it came

19  to the standard and the burden in ERISA pleading, says, Given the

20  Seventh Circuit's repeated reliance on this reasoning, we vacate

21  the judgment below so that the court may reevaluate the

22  allegations as a whole.  On remand, the Seventh Circuit should

23  consider whether petitioners have plausibly alleged a violation

24  of the duty of prudence as articulated in *Tibble*, applying

25  the pleading standard discussed in *Iqbal* and *Twombly*.

20

*Proceedings*

1          So even the most recent Supreme Court case, in *Hughes*

2   *v. Northwestern,* has made clear that this is a Rule 8 pleading

3   analysis and that there is no heightened standard.  And I think

4   that's important, because in reference to *Tibble*, in *Tibble*, the

5   Supreme Court made very clear that fiduciaries, in the context of

6   401(k) plans, have an ongoing duty to monitor and remove funds

7   that are imprudent.  And so what plaintiffs' complaints in both

8   actions do here is plausibly allege that the plan fiduciaries in

9   the respective actions did not monitor the BlackRock TDF

10  investment in an appropriate way.  And, again, we're talking

11  about a plausibility standard, not some heightened standard, and

12  the fiduciaries here, as per the Supreme Court's guidance in

13  *Dudenhoeffer* and in *Hughes*, are not afforded a presumption of

14  prudence.  So let's look at -- and *Dudenhoeffer* talks about

15  looking at pleadings in context when it comes to fiduciary

16  violations.  *Sweda* out of the Third Circuit talks about taking

17  a holistic look.

18          And Mr. Blumenfeld spoke at length about benchmarking,

19  and I think what is important is how the allegations frame the

20  TDF marketplace.  As we note in both complaints, Your Honor, the

21  six largest target-date funds make up 75 percent of the

22  target-date market.  And we have, as counsel noted, excluded the

23  Fidelity Freedom funds from the comparators, and so the four

24  other comparators make up 59 percent, nearly 60 percent of the

25  entire target-date fund.  So is it plausible that in a relatively

*Proceedings*

1   niche area of target-date funds where six funds make up

2   75 percent, billions of dollars of the marketplace, that four of

3   those six could be apt comparators to the one that we allege was

4   underperforming?  I think the answer is, most assuredly, yes.

5   And to Your Honor's question to Mr. Blumenfeld, if they're not,

6   is there not an apt comparator?  So are fiduciaries really

7   investing billions of dollars in an investment where there's no

8   comparator that they can look to to determine whether or not the

9   decision to invest in that fund is actually prudent?

10          And I want to kind of take the flip side of that

11   because the suggestion was that we as plaintiffs' counsel are

12   arguing that the Court doesn't need to do any analysis at a

13   motion to dismiss stage as to whether or not a comparator is apt.

14   And I think in the briefing, they even suggested if all the

15   comparators start with C, then that's not a determination for the

16   Court at a motion to dismiss stage.  That's not what we're

17   saying.  Of course, as alleged, the comparator has to plausibly

18   be an apt comparator, an appropriate comparator.  And,

19   contextually, here, given the nature of the TDF marketplace, it

20   is our position that the comparators are, in fact, apt.  I think,

21   notably, when cases like *CommonSpirit* out of the Sixth Circuit

22   are mentioned and the other cases, those are circumstances where

23   you had one passive being compared to one active, all right, and

24   there are other variations in those cases.  For example, in

25   *CommonSpirit*, the District of Maryland, in the *Moler v.*

*Proceedings*

1    *University of Maryland* case that recently came down, specifically

2    distinguished *CommonSpirit* in allowing underperformance claims to

3    go forward, and the Court said -- the Sixth Circuit affirmed

4    the district court's dismissal of plaintiff's complaint where the

5    plaintiff had not plausibly pleaded that this ERISA plan acted

6    imprudently merely by offering actively managed funds in the mix

7    of investment options.

8              So what we have alleged here with the comparators are

9    two passive comparators in the TDF marketplace of the big six --

10   I guess accounting used to be, like, the Big 5, but, you know --

11   and two active.  So the defendants take issue with a

12   passive-active comparison, but they really don't have any

13   argument for how two of the largest six comparators that are also

14   passive are somehow problematic.  That fact alone takes us

15   completely out of the realm of the other cases that were

16   mentioned.  In fact, the *Salesforce* case out of the Ninth

17   Circuit, also markedly different, the plaintiffs' claims there,

18   it truly was just a passive is better than active; they should

19   take these nine active funds and they should have all been

20   passive.  That's not what we're saying here.  We're not saying

21   that BlackRock should have been some other type of fund.  So

22   completely different --

23             THE COURT:  Help me understand what you are saying.

24   Help me understand what the allegations in the complaint are,

25   which the Court has to --

1      MR. SHAH:  Sure.

2      THE COURT:  -- and will accept as true under 12(b)(6).

3  What are the allegations that demonstrate the breach of the

4  fiduciary duty?

5      MR. SHAH:  Right.  So to that point, what the complaint

6  details numerically over a decade period, when you look at the --

7  when one looks at the BlackRock TDFs from a performance

8  standpoint and compares them to the four apt comparators as pled,

9  that there was significant underperformance for that entire time,

10  I think what the complaint --

11      THE COURT:  So how could you argue in 2021 in *Wehner v.*

12  *Genentech* that BlackRock TDF was a comparator for demonstrating

13  underperformance by another fund?

14      MR. SHAH:  So in *Genentech*, I think it's important to

15  note there that what was alleged in *Genentech*, which were custom

16  TDF funds -- so *Genentech* had custom funds; they weren't

17  BlackRock or Vanguard; it was simply a comparison that those

18  funds even underperformed the BlackRock funds -- so there's

19  no allegation that the BlackRock TDFs were the gold standard or

20  were prudent or were appropriate.  So I understand why they make

21  that argument, but that in no way detracts from the allegations

22  here regarding the performance -- the elongated poor performance.

23  And I would like to point out that -- and I know that we get

24  accused in every brief, in these briefs in particular, of

25  engaging in some type of hindsight analysis -- that is absolutely

*Proceedings*

1    not the case.  And courts in this district -- and we cite them --

2    and elsewhere have noted where a complaint provides real-time

3    data, that is, information that was or should have been known to

4    the fiduciaries at the time, that that is not a hindsight

5    analysis.  So the allegations in the complaint here -- for

6    example, if you look at second quarter 2017, all right, that data

7    on the three- and five-year basis, annualized basis, that data

8    was all available to the fiduciaries at the time, so --

9          THE COURT:  Fiduciaries are constantly looking at data

10   in which some funds are doing better and some funds are doing

11   worse, and at one moment of time, you can compare one fund to

12   another and say, relatively speaking, this one is doing poorly.

13   But these are funds that have a life of 30, 40, 50 years; they're

14   designed to allocate risk and grow over time.  So how is -- and I

15   understand; I've looked at -- there are a lot of charts in there

16   and, you know, some of them show a modest difference, some of

17   them show a larger difference, some of them show BlackRock doing

18   a little bit better than the comparator funds in certain

19   quarters -- how is it that that by itself could form the basis

20   for concluding that the plan administrators were breaching their

21   fiduciary duties or not adequately monitoring simply because

22   there were quarters, or even years, in which the BlackRock TDF

23   fund was not getting the same returns as Vanguard or Fidelity?

24         MR. SHAH:  And I think that's an important distinction.

25   Again, it's not a hindsight analysis.  The fiduciaries for each

*Proceedings*

1    of those quarters that we include the data for, at that time,

2    they had information that would have shown them on a three- and

3    five-year period just how significantly, from a performance

4    standpoint, they were trailing the other four TDFs in the

5    marketplace.  The hindsight analysis --

6            THE COURT:  But isn't that argument that they should

7    have made the decision at that point to pull out and take away

8    that option and then the participants would have no idea 10 or 15

9    or 20 years later whether that had been a good idea or a bad

10   idea; isn't that exactly what fiduciaries of ERISA plans aren't

11   supposed to be doing?

12           MR. SHAH:  No.  In fact, I disagree with that, Your

13   Honor.  In fact, we address this in the complaint, that we say

14   that the industry standard is to look at three- and five-year

15   time horizons for fiduciaries and make determinations about the

16   prudence of investments that are offered in the menu.  And the

17   complaints also further allege that if -- the notion you have to

18   wait 25 years to see if a TDF was appropriate or prudent, if

19   you're looking over that period of time, you have many of the

20   vintages that are out of their life span, are no longer even in

21   play.  And we also allege in the complaints that the average

22   person in this day and age, which is much different from when I

23   started my career, is in the same job for just slightly over four

24   years.  So there is a lot of movement in and out that also has to

25   be considered from a demographic standpoint.

*Proceedings*

1           And, again, from having -- on the standard under *Iqbal*

2    and *Twombly* and taking the allegations in the light most

3    favorable to the plaintiffs, we have addressed these issues as to

4    why a three- and five-year time horizon is correct, why we are

5    not engaged in a hindsight analysis, but we provide real-time

6    data that would have been and should have been made available to

7    the fiduciaries at the time, and we demonstrate significant

8    underperformance.  To try to demonstrate that somehow our

9    pleadings don't demonstrate significant underperformance, in

10   defendant's briefing, they pick one vintage, the 2050 vintage,

11   and they say, Oh, look, for this three- and five-year period --

12   now, again, one vintage in one cherry-picked period -- they say,

13   Look, it's about a one percent difference.  What does that mean?

14   But the data that we have in there is annualized.  So even taking

15   their cherry-picked one, when you look at it over the three- and

16   five-year period, compounded, it's a 3.36 percent difference over

17   three years and an 8.3 -- almost 8.4 percent underperformance

18   over five years.  And if you take that same vintage and do a

19   different three- and five-year period -- again, this is the one

20   they are pointing to, saying it wasn't underperformance -- if you

21   look at it from Quarter 1, 2018, over a three-year period, it's

22   6.57 percent underperformance; in five years, it's 18.56 percent

23   underperformance.  That is substantial.

24           And I think another important point -- Your Honor asked

25   me, you know, what do we plead here -- these are the QDIAs, all

*Proceedings*

1    right, so these are the default investments, the TDFs.  So these

2    are the core assets.  As we allege in the case of Booz Allen as

3    of, I think a year and a half ago, 29 percent of the $6 billion

4    fund was in this TDF, 35 percent for Capital One.  So these are

5    the core assets.  These are the assets where if people who -- as

6    we also allege, most 401(k) participants are not particularly

7    savvy when it comes to investing -- if they don't make an

8    election as to where to put their money, it defaults into these

9    funds.  I'm not saying that gives it a heightened burden, but,

10   contextually, holistically, it's another consideration when you

11   have specific allegations of a decade of underperformance.  And

12   the only hindsight analysis being done in this case is when

13   defendant says, Oh, look, over the last year, they've improved a

14   little bit.  But the case law -- we cite this -- is *Legion*, that

15   when it comes to a fiduciary's conduct, the court looks to what

16   it offered at a point in time, right, not what transpired after.

17   At a point in time, was there a breach or was there not a breach?

18   Whether what occurred after inures to the benefit or detriment is

19   not the issue.  The breach occurs at the time when something was

20   presented.

21          I would also just note on the benchmarking that even

22   courts in this district -- in *In Re MedStar*, in the *IQVIA* case --

23   have determined that where you have one passive comparator in a

24   TDF world and an active -- when you have a -- sorry -- when you

25   have an active TDF and a passive comparator, that at a motion to

*Proceedings*

1    dismiss stage, that is sufficient and that it's not for the Court

2    to determine whether or not that that's plausibly apt, and that

3    there's no further analysis that needs to be done.  Again, we're

4    well beyond that here because we have the two passive and the two

5    active comparators.

6            I think that largely addresses the benchmark arguments

7    that my colleague made.  I would --

8            THE COURT:  Well, how do you respond to the other

9    arguments that are made, setting aside the passive and the

10   active, that you have the "to retirement" and you have "through

11   retirement," and, obviously, the risk allocation and the way in

12   which those funds are invested is going to vary if you have a

13   time horizon that is ending at the time of retirement or

14   continuing through it?

15           MR. SHAH:  Sure.  We certainly would acknowledge and do

16   not allege that these investments are 100 percent identical,

17   right?  But as the case law says, there is no perfect comparator.

18   And I think what's notable is that in the complaint, we're not

19   silent about glide path in "to" and "through."  Allegations 37

20   through 40 -- paragraphs 37 through 40 in the Booz Allen

21   complaint -- 38 through 40, we acknowledge that there are

22   differences, but we also plead why those differences are not

23   material when it comes to a holistic analysis of the TDF.  Again,

24   particularly when you're looking at there are six TDFs -- and I

25   can't emphasize this enough -- that make up three-quarters of the

*Proceedings*

1    market, right?

2            So, again, going back to *Twombly* and *Iqbal* in the

3    pleading standard, alleging that four of those are apt

4    comparators, it's hard to see how that isn't plausible,

5    particularly in light of all the other allegations.  So I

6    think -- and some courts have addressed this, and we cite these

7    in the brief -- but several courts specifically have even looked

8    at the fact that there are different investment strategies and

9    different equity allocations and said that in and of itself,

10   particularly the motion to dismiss, doesn't lend itself to a

11   finding at this procedural stage; that the comparators are not

12   apt; that that is still left for after discovery and down the

13   road.

14           And I would also point out, this isn't a particularly

15   surprising notion, because we're not trying to compare a small

16   cap to a high-risk international tech investment, right?  Even

17   when you do comparators, benchmarking, whether it's a small cap

18   or a large cap, you're still going to have -- those large-cap

19   investments, small-cap investments all have sub-assets.  They're

20   never going to be identical, right?  So the notion that,

21   particularly at this stage, that distinctions or some

22   differences, five percent here, two percent here, that that is so

23   meaningful that it can't plausibly be an apt comparator doesn't

24   make sense, because that would translate to the entire

25   marketplace in terms of, you know, what could a fiduciary look

*Proceedings*

1    to.  Well, basically, it is just an attempt to insulate and

2    inoculate fiduciaries making decisions pertaining to the

3    target-date marketplace from any potential scrutiny, and that is

4    impossible to square with the case law that says the duties taken

5    on by ERISA fiduciaries are the highest known to law.

6           When you combine the applicable pleadings standard with

7    the very specific and significant allegations of long-term

8    significant underperformance of these TDFs as compared to four of

9    the five other TDFs that make up the vast majority of the

10   marketplace, we think that we have more than satisfied our burden

11   here.

12          Let me just say one additional thing:  My colleague

13   mentioned, Well, they don't talk about, you know, the 48th

14   largest TDF, right?  But, again, these are two companies that

15   have hundreds of millions -- billions of dollars invested in the

16   TDFs.  If we had come in and said an apt comparator was XYZ TDF

17   that has a total asset class -- a total asset base of

18   $100 million, they would have said, Mr. Shah is making an

19   incredulous statement, that Booz Allen should have put its $1.5

20   billion into XYZ fund that's not even managing 10 percent of

21   that.  So, again, plausible?  Are these plausible benchmark

22   comparators?  Absolutely, in this marketplace.

23          THE COURT:  Thank you.

24          MR. SHAH:  Appreciate the Court's time.

25          MR. BLUMENFELD:  May I have a few minutes for rebuttal?

1          THE COURT:  You may.

2          MR. BLUMENFELD:  Thank you.

3          I would like to address a legal question and then drill

4   down a little into some of the facts that counsel was talking

5   about.

6          First, we haven't said that this is a heightened

7   pleading standard case, but the Supreme Court, in *Hughes* -- this

8   isn't me talking; this is the courts of appeals since used --

9   have made clear that you need to identify a meaningful benchmark.

10  *Hughes* came out of the Seventh Circuit, and the first court in

11  the Seventh Circuit to have addressed the impact of *Hughes* was

12  the *Albert v. Oshkosh* case.  The Seventh Circuit there held

13  *Hughes* didn't change the law, and affirmed Rule 12 dismissal of

14  similar kinds of claims.

15          Getting back to *Twombly*, sort of the start of it all.

16  I went back to look at what was going on in the *Twombly* case that

17  led the Supreme Court to reach the ruling that it did.  They

18  didn't have charts and graphs.  They had a map, and the map

19  showed all of the places around the country where the different

20  defendants, apparently, were located right next to each other but

21  weren't competing, and the plaintiffs alleged that, and they also

22  alleged there was an agreement by them not to compete.  And that

23  was the sort of thing that the Supreme Court said was not

24  sufficient to state a claim.  Applying that same kind of analysis

25  to the charts and graphs that are in the complaint here is fully

*Proceedings*

1    consistent with *Twombly*, fully consistent with *Hughes* and all of

2    the courts of appeals to have reached these issues.

3         Plaintiffs talked about the active versus passive and

4    basically said, We don't have an answer as to the Fidelity and

5    Vanguard target-date funds.  That's not true.  The *Meiners v.*

6    *Wells Fargo* case out of the Eighth Circuit specifically addressed

7    it.  It wasn't about active versus passive.  Plaintiffs said that

8    in their briefs, but it doesn't mention active versus passive at

9    all.  Instead, they said that the Vanguard target-date funds, the

10   same one these plaintiffs are pointing to, were not comparable to

11   the Wells Fargo target-date funds because they had different

12   allocations to bonds, the same differences that I'm talking about

13   here.  And while plaintiffs may say some of those allocation

14   differences are small, those small differences in allocations

15   reflect different risks that different plan fiduciaries are

16   allowed to take.  And the question is not can plaintiffs identify

17   a better performing target-date fund; the question is whether the

18   target-date fund that's in the plan was outside the range of

19   reasonable judgments that other fiduciaries make, and it's not.

20        And the contrary, you know, you heard Mr. Shah talk

21   about the fact that three- and five-year performance history is

22   their benchmark.  But if that's true, in the time period that the

23   BlackRock target-date funds were last, according to the

24   allegations in the complaint, one of the other target-date funds,

25   one of the other four was fourth.  That target-date fund also

*Proceedings*

1    would be imprudent, because on a three- and five-year basis,

2    there are three other better target-date funds in the marketplace

3    that did better, and one of them was third, and that means there

4    are two other target-date funds that did better.  And what you're

5    left with is their allegations really boil down to they found a

6    better target-date fund in the marketplace.  That's not relevant.

7    What's relevant is whether the target-date fund that's in the

8    plan fell outside the range of reasonable judgments that

9    fiduciaries make, and they have no answer to that, Your Honor.

10          And I would say further -- you know, you pointed out

11   the *Genentech* argument, and we think you're right to focus on

12   that issue -- I would say further, plaintiffs' own argument would

13   mean that the Fidelity target-date funds that they point to as

14   appropriate comparators and the Vanguard funds that they point to

15   as appropriate comparators also would not be prudent investment

16   options over the last two years because they were last or second

17   to last during that time period.  That's why you can't do what

18   you are asking plaintiffs' counsel about, right?  You can't be

19   jumping in and out of an investment option just because at a

20   point in time, its three-year performance or five-year

21   performance happens to be lower than something else.  That's why

22   the Supreme Court talked about the range of reasonable judgments

23   that fiduciaries make and why the courts -- *CommonSpirit*, *Davis*

24   *v. Salesforce*, *Meiners*, *Albert v. Oshkosh* -- are rejecting these

25   sorts of claims, because plaintiffs' arguments that they're not

*Proceedings*

1    engaged in hindsight is to say, Well, as of Q2 2017 -- I think

2    was the time period he talked about -- the BlackRock funds

3    performed lower than the others.  But that performance number as

4    of that point in time says nothing about what the performance is

5    going to be subsequent to that date or what the risks are of the

6    fund at that point in time or subsequent to that date.  That's

7    where the hindsight comes in.  It only works if, in hindsight,

8    the BlackRock target-date funds ended up performing worse; and,

9    here, we know they didn't.

10          I don't think I have anything further unless the Court

11   has any questions.

12          THE COURT:  I do not.  Thank you.

13          MR. BLUMENFELD:  Thank you, Your Honor.

14          THE COURT:  Do you wish to be heard?

15          MR. SHAH:  Do you wish me to be heard?

16          THE COURT:  This is your chance if you want to take it.

17          MR. SHAH:  I will be very brief.  Famous last words, I

18   know.

19          In terms of the *Meiners* case, the Eighth Circuit case,

20   the Eighth Circuit specifically said that the plaintiffs there

21   failed to plead underperformance of any kind.  They just pointed

22   to one, in that case, the Vanguard that had outperformed the

23   Wells Fargo fund.  They did in -- I think it's footnote 2 -- they

24   did note that the district court had noted that there were some

25   differences in the investment strategy between the two funds.

*Proceedings*

1    But to say that that was fundamental to the holding, I think,

2    ignores the fact that the Eighth Circuit noted that the

3    plaintiffs had, at base, failed to plead an underperforming

4    investment.

5          Outside the range of reasonableness, if, essentially,

6    last over a decade's worth of data in a QDIA isn't plausibly

7    outside the range of reasonableness of the four apt benchmarks,

8    then where does that leave a plan participant?

9          And, lastly, with respect to Mr. Hall, the *Lerner* case

10   from the Southern District of New York that we cite in our

11   briefing says that the vast majority of cases that have addressed

12   the issue say that a plan participant cannot release the claims

13   of a plan, and have allowed individuals who have signed such

14   agreements to move forward with their claims on behalf of the

15   plaintiffs.

16         Thank you very much for your time here, Your Honor.

17   Appreciate it.

18         THE COURT:  Thank you.

19         Well, this matter comes before the Court on the motions

20   to dismiss in both cases, and I've listened carefully to the

21   arguments of counsel and spent a lot of time looking at the cases

22   and reading the complaint.  And having considered the standard

23   under 12(b)(6), applying *Iqbal* and *Twombly*, I find that it is

24   appropriate, and the Court will grant the motions to dismiss in

25   this case.

*Proceedings*

1          Count 1 alleges that the defendants breached a

2     fiduciary duty of prudence by continuing to offer the BlackRock

3     TDFs in both of these plans when it should have been known to a

4     prudent fiduciary that they were underperforming in comparison to

5     other TDFs offered in the market.  And in Count 2, plaintiffs

6     allege that Capital One failed to adequately monitor

7     the committee and prevent the alleged breach.  And then Count 3

8     is pled in the alternative, alleging liability for defendants'

9     knowing breach of trust.

10          With respect to Count 1, the Court finds that the

11     plaintiffs have failed to set out circumstantial factual

12     allegations from which the Court may reasonably infer that the

13     decision to retain BlackRock was the product of a flawed

14     decisionmaking process.  Plaintiffs fail to allege facts

15     that demonstrate BlackRock TDFs severely underperformed the

16     comparable TDFs or that, in fact, the comparable TDFs were

17     appropriate, meaningful benchmark comparators.  The complaint

18     lacks facts showing that the TDFs shared the same investment

19     strategy, investment style, risk profile, or asset allocation.

20     The Court accepts that the differences that have been identified

21     between actively managed and passively managed, the time horizons

22     of "to retirement" versus "through retirement," and the different

23     allocations of bond and equity mixes is fatally defective in

24     plausibly stating a claim, and I find that Counts 2 and 3 are

25     derivative of Count 1 and, therefore, must be dismissed.

*Proceedings*

1          I do find that Mr. Hall, with respect to the *Capital*

2 *One* case, is barred from bringing these claims in his individual

3 capacity because of the severance agreement he entered, although

4 it is a, I think, troubling circumstance that the weight of the

5 case law does reflect that he cannot release the claims of the

6 plan.  So I'm going to dismiss this case without prejudice.

7          I understand the argument made with regard to what goes

8 on from here.  I'm going to give the plaintiffs an opportunity to

9 file an amended complaint if there's a good-faith basis for doing

10 so, and I'll give you 14 days to make that decision, but I would

11 caution that plaintiffs should think carefully about whether or

12 not there's a way to move forward and whether that makes sense.

13 And I realize there are other cases around the country and I may

14 not be the only judge to be weighing in on this, but based and

15 all the information that I've seen, the weight of the case law, I

16 do find that dismissal is appropriate, and both cases are

17 dismissed at this time without prejudice.

18          Is there anything else I need to address this morning

19 on behalf of the plaintiffs?

20          MR. SHAH:  Nothing from the plaintiffs, Your Honor.

21          THE COURT:  Thank you.  On behalf of the defense?

22          MR. BLUMENFELD:  No, Your Honor.  Thank you.

23          THE COURT:  Thank you.  I want to thank counsel on both

24 sides.  As you've both noted, you're used to these battles, and

25 I'm sure there will be more of them.  It was well argued and well

1    briefed, and I appreciate the efforts on the part of all parties.

2            Thank you.  Court will be in recess.

3                    *      *      *      *      *

4

5                       CERTIFICATE OF REPORTER

6            I, Diane Salters, hereby certify that the foregoing

7    transcript is a true and accurate record of the stenographic

8    proceedings in this matter.

9

10                                       /s/ Diane Salters

11                               _____

12                               Diane Salters, CSR, RCR, RPR
                                 Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25