# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JUSTIN BELDOCK, et al.,

                     Plaintiffs,

     v.

MICROSOFT CORPORATION, et al.,

                     Defendants.

CASE NO. C22-1082JLR

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

Before the court is the motion to dismiss filed by Defendants Microsoft Corporation ("Microsoft"), the Board of Trustees of Microsoft Corporation, and the 401(k) Administrative Committee of the Microsoft Corporation Savings Plus 401(k) Plan (collectively, "Defendants"). (Mot. (Dkt. # 27); Reply (Dkt. # 53).) Plaintiffs Justin Beldock, Gordon Broward, and Shaadi Nezami (collectively, "Plaintiffs"), who bring this action on behalf of themselves, the Microsoft Corporation Savings Plus 401(k) Plan (the

1    "Plan"), and a proposed class, oppose the motion.  (Resp. (Dkt. # 49).)  The court heard

2    oral argument on the motion on January 30, 2023.  (*See* 1/30/22 Min. Entry (Dkt. # 56).)

3    The court has considered the motion, all materials submitted in support of and in

4    opposition to the motion,[1] and the governing law.  Being fully advised, the court

5    GRANTS Defendants' motion to dismiss and DISMISSES Plaintiffs' complaint with

6    leave to amend.

## II.    BACKGROUND

8          Below, the court sets forth the factual and procedural background relevant to this

9    motion.

10   **A.    Factual Background**

11         The Plan is a defined contribution plan within the meaning of the Employee

12   Retirement Income Security Act of 1974 ("ERISA").  (Compl. (Dkt. # 1) ¶ 2.)  That is,

13   the Plan is

14         a pension plan which provides for an individual account for each participant
           and for benefits based solely upon the amount contributed to the participant's
15         account, and any income, expenses, gains and losses, and any forfeitures of
           accounts of other participants which may be allocated to such participant's
16         account.

17   29 U.S.C. § 1002(34).  The Plan is a participant-driven 401(k) plan, meaning that

18   participants direct the investment of their contributions into the investment options

19

20   _____

21   [1] The court also reviewed *amici curiae* briefs filed in support of Defendants' motion by
     (1) the Chamber of Commerce of the United States of America (Chamber Br. (Dkt. # 51)) and
     (2) a group comprised of American Benefits Council, the ERISA Industry Committee, American
22   Retirement Association, and Committee on Investment of Employee Benefit Assets, Inc. (ABC
     Br. (Dkt. # 52)).  The court did not, however, rely on either brief when deciding this motion.

1  offered by the Plan.  (Compl. ¶ 20.)  As of December 2020, the Plan had 135,252

2  participants with account balances and assets totaling approximately $34.48 billion,

3  placing it in the top 0.1% of all defined contribution plans by size.  (*Id.* ¶ 4.)

4         Since at least December 31, 2009, the Plan has offered participants a suite of ten

5  BlackRock LifePath Index target date funds (the "BlackRock TDFs").  (*Id.* ¶ 31.)  Target

6  date funds ("TDFs") are investment vehicles that offer "an all-in-one retirement solution

7  through a portfolio of underlying funds that gradually shifts to become more conservative

8  as the assumed target retirement year approaches."  (*Id.* ¶ 26.)  The BlackRock TDFs are

9  offered in "vintages" at five-year intervals.  (*See id.* ¶ 43 (including tables showing

10 performance for various vintages of the BlackRock TDF).)  Thus, there are BlackRock

11 TDF vintages for 2025, 2030, 2035, and so forth, along with a BlackRock Retirement

12 TDF.  (*Id.*)  Defendants designated the BlackRock TDFs as the Plan's Qualified Default

13 Investment Alternative ("QDIA"), into which a participant's contributions are invested if

14 the participant does not otherwise indicate where their assets should be allocated.  (*Id.*

15 ¶ 35.[2])  In December 2020, about 24% of the Plan's assets were invested in the

16 BlackRock TDFs.  (*Id.* ¶ 36.)  As of late 2021, the BlackRock TDFs were the third largest

17 target date suite by market share.  (*Id.* ¶ 39.)

18 //

19 //

20 //

21 _____

   [2] The participant's contributions are invested into the fund with the target year closest to

22 the participant's anticipated retirement year.  (*Id.*)

TDFs are actively managed, meaning that their managers make changes to the funds' allocations to stocks, bonds, and cash over time. (*Id.* ¶ 26.[3]) These shifts in allocation are referred to as a TDF's glide path. (*Id.* ¶ 26.) TDF glide paths are managed either "to retirement" or "through retirement." (*Id.* ¶ 27.) A "to retirement" glide path "generally assumes participants will withdraw their funds once they reach the presumed retirement age, or soon thereafter." (*Id.*) The asset allocation in a "to retirement" TDF "remains static once the retirement date is reached." (*Id.*) A "through retirement" glide path "expects participants will remain invested after reaching retirement and gradually draw down their funds." (*Id.*) "Accordingly, the terminal allocation of a 'through' TDF is not reached until a predetermined number of years after the target date." (*Id.*) "To retirement" strategies are "managed to protect against the risk of a market decline significantly diminishing assets, while the 'through' approach focuses on the risk of outliving savings." (*Id.* ¶ 28.) Thus, TDFs designed with a "to" strategy "typically de-risk faster than their 'through' peers." (*Id.*) The BlackRock TDFs are managed with a "to" strategy and invest in underlying passively managed index funds. (*See id.* ¶¶ 29, 43.)

Plaintiffs assert that the BlackRock TDFs are "significantly worse performing than many of the mutual fund alternatives offered by TDF providers and, throughout the Class

---

[3] The funds within the TDFs, however, may be either actively managed or passively managed. (*Id.* ¶ 29.) Passively managed funds "provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift." (*Id.*) Actively managed funds "tend to provide more diversified asset class exposure while offering the potential for excess returns." (*Id.*)

Period,[4] could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable." (*Id.* ¶ 31.) They allege that Defendants breached their fiduciary duties by employing a "fundamentally irrational decision-making process" in adding and retaining the BlackRock TDFs. (*Id.* ¶¶ 34-35.) They do not, however, allege any specific facts regarding that decision-making process. (*See generally id.*) Instead, Plaintiffs compare the BlackRock TDFs' returns over time to the returns realized by four of the other top-six largest TDF suites (the "Comparator TDFs") and ask the court to infer, based on the BlackRock TDFs' alleged underperformance, that Defendants acted imprudently in retaining the BlackRock TDFs in the Plan. (*Id.* ¶ 39 (listing the six largest target date suites by market share); *id.* ¶ 43 (comparative performance tables).[5]) Plaintiffs allege that a prudent fiduciary would have measured the returns of the BlackRock TDFs against these "specific, readily investable alternatives" rather than by the fund's own custom benchmarks and would have switched to a different TDF provider based on the BlackRock TDFs' alleged underperformance relative to the Comparator TDFs. (*Id.* ¶ 38.)

Plaintiffs provide nine pages of tables showing how the three- and five-year annualized returns for the BlackRock TDFs ranked against the Comparator TDFs at the end of each quarter since the beginning of the class period in August 2016. (*Id.* ¶ 43.)

---

[4] The Class Period is from August 2, 2016, to the present. (*Id.* ¶ 57.)

[5] Plaintiffs do not include the Fidelity Freedom Funds TDF suite as a comparator because, they assert, it would have been an "imprudent selection" during the class period. (*Id.* ¶ 40 n.7.)

1    Indeed, for many of the quarters, the BlackRock TDFs ranked last or second-to-last

2    among the five TDF suites that Plaintiffs compare in their complaint. (*See id.*) By 2021,

3    however, the BlackRock TDFs' performance began to improve, and by 2022, the later

4    vintages were among the best-performing of the TDF suites. (*See id.* at 23-24.) In

5    addition, the BlackRock Retirement TDF has "regularly generated better trailing returns

6    than the two Comparator TDFs that also offer a Retirement vintage." (*Id.* ¶ 43 n.9.)

7          As Defendants point out, there are some key differences between the BlackRock

8    TDFs and the Comparator TDFs. (*See* Mot. at 6-8.) For example, the BlackRock TDFs

9    are a "to retirement" suite, while the Comparator TDFs are "through retirement" suites;

10   the BlackRock TDFs and two of the Comparator TDFs invest only in passively managed

11   funds while the remaining two invest in actively managed funds; the TDFs allocate their

12   assets differently among bonds and equities; and the TDFs invest in different categories

13   of bonds and equities. (Mot. at 7-8 (citing McMahan Decl. (Dkt. # 28) ¶ 4, Ex. 2

14   (Morningstar Manager Rsch., *Morningstar 2022 Target-Date Strategy Landscape*,

15   Morningstar (Mar. 3, 2022) ("Morningstar Report"))).[6]) In addition, the BlackRock

16   TDFs have a "Gold" analyst rating from Morningstar, while only two of the four

17   Comparator TDFs have a "Gold" rating. (Mot. at 6, 8 (citing Morningstar Report).)

18   //

19   //

20   //

21          _____

       [6] The court may consider the Morningstar Report because Plaintiffs rely on it in their

22   complaint. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); (Compl.
       ¶ 28 n.4).

**B.** **Procedural Background**

Plaintiffs, who are former employees of Microsoft and former participants in the Plan, filed this proposed class action on August 1, 2022. (Compl. at 1; *id.* ¶¶ 9-11.) All three Plaintiffs were invested in different vintages of the BlackRock TDF suite: Mr. Beldock maintained an investment in the BlackRock Retirement TDF; Mr. Gordon in the BlackRock 2020 TDF; and Mr. Nezami in the BlackRock 2030 TDF. (*Id.* ¶¶ 9-11.) They allege that Defendants breached their fiduciary duties to the Plan and Plan participants under ERISA by selecting and retaining the BlackRock TDFs as investment options in the Plan. (Compl. ¶¶ 70-74.) They also allege claims under ERISA for failure to monitor fiduciaries and co-fiduciary breaches, as well as a claim in the alternative for knowing breaches of trust based on Defendants' decisions to select and retain the BlackRock TDFs. (*Id.* ¶¶ 75-86.) They seek a declaratory judgment that Defendants' acts violated ERISA; a permanent injunction against Defendants prohibiting the practices described in the complaint and requiring Defendants to act in the best interests of the Plan and its participants; equitable, legal, or remedial relief for all losses and/or compensatory damages; and attorneys' fees, costs, and recoverable expenses. (*Id.* ¶ 8; *id.* at 42-43.)

The parties agreed on an extended briefing schedule for Defendants' motion to dismiss. (9/20/22 Order (Dkt. # 25).) Briefing was complete on December 16, 2022. (*See generally* Dkt.) The court heard oral argument on January 30, 2023. (*See* 1/30/23 Min. Entry.) The motion is now ripe for decision.

//

//

## III. ANALYSIS

Below, the court sets forth the standard of review, then evaluates Defendants' motion to dismiss.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (stating that the allegations must "rise beyond mere conceivability or possibility" to meet the plausibility standard). The court is not required to accept as true legal conclusions or "formulaic recitation[s] of the legal elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012).

//

//

**B.    Standing**

The court has an "independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).  Therefore, before turning to the merits of Plaintiffs' claims, the court must address whether and to what extent Plaintiffs have plausibly alleged that they have standing to pursue this action.

To establish Article III standing, a plaintiff must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and conduct complained of; and (3) it is likely that a favorable decision in the case will redress the injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  It is not enough for a plaintiff to have statutory standing (that is, a right of action) under ERISA:  plaintiffs must also have Article III standing to pursue their claims in federal court.  *Thole v. U.S. Bank NA*, --- U.S. ---, 140 S. Ct. 1615, 1620, 1622 (2020).  Here, Defendants argue that (1) Mr. Beldock lacks standing to act as a plaintiff in this case because he did not suffer an injury cognizable under Article III, and (2) none of the three Plaintiffs has standing to pursue prospective injunctive relief on behalf of the Plan and the proposed class because any such relief would not benefit them.  (Mot. at 21-22.[7])  The court agrees with Defendants.

//

//

//

---

[7] Defendants do not argue that Mr. Broward and Mr. Nezami lack Article III standing to pursue claims for damages based on losses they allegedly suffered while they were participants in the Plan.  (*Id.*)

1        1.      Mr. Beldock

2        Defendants contend that Mr. Beldock cannot show an injury in fact because he

3   was only ever invested in the BlackRock Retirement TDF, which, according to Plaintiffs,

4   "regularly generated better trailing returns than the two Comparator TDFs that also offer

5   a Retirement vintage." (Mot. at 21 (citing Compl. ¶¶ 9, 43 n.9).)  Indeed, the complaint

6   is devoid of any allegation that Mr. Beldock suffered any concrete injury.[8]  (*See*

7   *generally* Compl.)

8        Plaintiffs make three arguments to support their view that Mr. Beldock has

9   standing to bring his claims in this case.  First, citing *Braden v. Wal-Mart Stores, Inc.*,

10  588 F.3d 585, 593 (8th Cir. 2009), they argue that Mr. Beldock is entitled to seek relief

11  for the Plan's losses because he makes his claims on behalf of the Plan under ERISA

12  Section 502(a)(2), 29 U.S.C. § 1132(a)(2).  (*See* Resp. at 21.)  *Braden*, however, makes

13  clear that a plaintiff must have Article III standing to sue for relief for the Plan.  *Braden*,

14  588 F.3d at 592-93 (evaluating Article III standing before turning to statutory standing);

15  *see also Thole*, 140 S. Ct. at 1622 ("There is no ERISA exception to Article III.").  Thus,

16  *Braden* does not obviate the requirement that Mr. Beldock prove that he suffered the type

17  of concrete and particularized injury necessary for Article III standing.

18

19

20  ───────────────

        [8] At oral argument, the court asked Plaintiffs' counsel to identify where Plaintiffs allege
21  that Mr. Beldock suffered an injury.  Plaintiffs' counsel directed the court to paragraph 9 of the
    complaint.  That paragraph (1) states that Mr. Beldock is a former employee of Microsoft and
    former Plan participant who lives in Liverpool, New York and (2) lists the assets he invested in
22  through the Plan.  (Compl. ¶ 9.)  It says nothing about how Mr. Beldock was injured.  (*Id.*)

Second, Plaintiffs assert that because TDFs are chosen for defined contribution plans as a complete suite, the fact that one vintage performed well does not foreclose a claim that Defendants failed to monitor the BlackRock TDF suite as a whole. (Resp. at 21-22.) Although it is true that a fiduciary has a continuing duty to properly monitor investments, *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015), Plaintiffs do not explain how any alleged failure to do so caused Mr. Beldock a concrete and particularized injury that could be redressed by a favorable decision in this case.

Finally, Plaintiffs contend that Mr. Beldock was "deprived of the opportunity to invest in suitable TDFs as a result of Defendants' retention of the BlackRock TDFs" and that he could have invested in "appropriate pre-retirement vintages" if Defendants had replaced the BlackRock TDFs. (Resp. at 21-22.) Again, however, Plaintiffs themselves pointed out that the BlackRock Retirement TDF in which Mr. Beldock invested performed better than the retirement vintages offered by the Comparator TDFs. (Compl. ¶ 43 n.9.) And whether Mr. Beldock would have invested in pre-retirement vintages if the Plan had offered one of the Comparator TDFs is purely conjectural. *See Lujan*, 504 U.S. at 560 (stating that an injury in fact must be "actual or imminent, not conjectural or hypothetical" (internal quotation marks omitted)).

For the foregoing reasons, the court concludes that Mr. Beldock has not plausibly alleged that he has Article III standing to pursue the claims alleged in this case. The court GRANTS Defendants' motion to dismiss Mr. Beldock from this lawsuit for lack of standing.

1    2.  Prospective Injunctive Relief

2   Defendants argue that none of the three Plaintiffs, who are all former Microsoft

3 employees and former participants in the Plan, have standing to seek prospective

4 injunctive relief because they would not benefit from such relief if it were granted.  (Mot.

5 at 21-22.)  Again, the court agrees with Defendants.

6   The Supreme Court has made clear that "a plaintiff must demonstrate standing for

7 each claim he seeks to press and for each form of relief that is sought."  *Town of Chester*

8 *v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Federal Election*

9 *Comm'n*, 554 U.S. 724, 734 (2008)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95,

10 105-06 (1983) (holding that a plaintiff who has standing to seek damages must also

11 demonstrate standing to pursue injunctive relief).  Where there are multiple plaintiffs,

12 "[a]t least one plaintiff must have standing to seek each form of relief requested in the

13 complaint."  *Town of Chester*, 581 U.S. at 439.

14   To establish Article III standing to seek prospective injunctive relief, a plaintiff

15 must plausibly allege that he or she is likely to suffer future injury from the conduct he or

16 she seeks to enjoin.  *Lyons*, 461 U.S. at 105-06; *see Davidson v. Kimberly-Clark Corp.*,

17 889 F.3d 956, 969-70 (9th Cir. 2018) (holding that the plaintiff in proposed class action

18 had standing to seek injunctive relief where she alleged an "actual and imminent, not

19 conjectural or hypothetical threat of future harm"); *Marks v. Trader Joe's Co.*, No. CV

20 19-10942 PA (JEMx), 2020 WL 2504333, at *9 (C.D. Cal. Apr. 24, 2020) (holding

21 former plan participants who no longer worked for Trader Joe's lacked standing to seek

22 injunctive relief as a remedy for alleged breaches of fiduciary duty under ERISA).  Here,

1    none of the three Plaintiffs alleges that he is likely to become reemployed by Microsoft

2    and to participate again in the Plan.  (*See generally* Compl.)  Accordingly, the court

3    agrees with Defendants that none of the Plaintiffs plausibly alleges that he is likely to

4    suffer future injury if the court does not enjoin the conduct challenged in the complaint.

5          The court is not persuaded by the cases Plaintiffs cite in their responsive brief.

6    (*See* Resp. at 23-24.)  First, *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265 CW,

7    2017 WL 4023149 (N.D. Cal. July 26, 2017), and *Hay v. Gucci Am., Inc.*, No.

8    2:17-CV-07148, 2018 WL 481558 (D.N.J. Oct. 3, 2018), concern statutory standing

9    under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), rather than Article III standing.

10   Second, as the court noted above, *Braden*, 588 F.3d at 592-93, made clear that a plaintiff

11   must have Article III standing to sue for relief on behalf of the Plan.  Third, *Amara v.*

12   *CIGNA Corp.*, 775 F.3d 510, 524-25 (2d Cir. 2014), does not analyze the issue of

13   standing at all, whether statutory or constitutional.  Instead, the Second Circuit simply

14   noted in a footnote, without discussion, that the class would benefit from prospective

15   injunctive relief.  *Id.* at 524 n.9.  In addition, *Amara* predates the Supreme Court's

16   holding in *Thole* that an ERISA plaintiff must demonstrate Article III standing in addition

17   to statutory standing.  *Thole*, 140 S. Ct. at 1622.  Finally, the court is not swayed by

18   *Laurent v. Pricewaterhouse Coopers LLP*, 565 F. Supp. 3d 543, 550 (S.D.N.Y 2021),

19   because it relies on *Amara* for its holding that cashed-out former plan participants had

20   standing to pursue an injunction.  Therefore, the court GRANTS Defendants' motion to

21   dismiss Plaintiffs' claims for prospective injunctive relief.

22

## C.   Breaches of Fiduciary Duty

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA

Sections 404(a)(1)(A), (B), and (D).  (Compl. ¶ 71.)  Under these sections, a fiduciary:

> shall discharge his duties with respect to a plan solely in the interest of the
> participants and beneficiaries and—
>
> (A)    for the exclusive purpose of:
>
> > (i)      providing benefits to participants and their beneficiaries; and
> >
> > (ii)     defraying reasonable expenses of administering the plan;
>
> (B)    with the care, skill, prudence and diligence under the circumstances
> then prevailing that a prudent man acting a like capacity and familiar with
> such matters would use in the conduct of an enterprise of a like character and
> with like aims; [and] . . .
>
> (D)    in accordance with the documents and instruments governing the
> plan[.]

29 U.S.C. §§ 1104(a)(1)(A), (B), (D).  Plaintiffs conceded at oral argument, however,

that they do not allege that Defendants failed to act in accordance with the documents

governing the Plan.  Accordingly, the court GRANTS Defendants' motion to dismiss

Plaintiffs' claim for breach of fiduciary duty under ERISA Section 404(a)(1)(D) and

turns to Defendants' motion to dismiss Plaintiffs' claims for breaches of the duties of

prudence and loyalty.

### 1.    Breach of the Duty of Prudence

ERISA Section 404(a)(1)(B)'s fiduciary duty of prudence focuses "on a

fiduciary's conduct in arriving at an investment decision, not on its results, and asks

whether a fiduciary employed the appropriate methods to investigate and determine the

1     merits of a particular investment." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath.*

2     *Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir.

3     2013). This analysis is "context specific," and must give "due regard to the range of

4     reasonable judgments a fiduciary may make based on her experience and expertise."

5     *Hughes v. Nw. Univ.*, --- U.S. ---, 142 S. Ct. 737, 742 (2022). "Even in a

6     defined-contribution plan where plaintiffs choose their investments, plan fiduciaries are

7     required to conduct their own independent evaluation to determine which investments

8     may be prudently included in the plan's menu of options." *Id.* (citing *Tibble*, 575 U.S. at

9     529-30). Thus, "[i]f the fiduciaries fail to remove an imprudent investment from the plan

10     within a reasonable time, they breach their duty." *Id.* (citing *Tibble*, 575 U.S. at 529-30).

11        Defendants argue that the court should dismiss Plaintiffs' claim for breach of the

12     fiduciary duty of prudence because (1) the Comparator TDFs are too different from the

13     BlackRock TDFs in glide path, investment strategy, asset allocation, and whether they

14     invest in active or passive funds, and thus are not meaningful benchmarks against which

15     to measure the performance of the BlackRock TDFs and (2) Plaintiffs' allegations of

16     underperformance do not support the inference that Defendants acted imprudently in

17     retaining the BlackRock TDFs as investment options in the Plan. (Mot. at 9-10.)

18     Plaintiffs counter that (1) the Comparator TDFs are meaningful benchmarks because they

19     are the most likely alternative options to be selected by large 401(k) plans like

20     Microsoft's Plan and (2) evidence of the BlackRock TDFs' ongoing underperformance

21     since 2016 relative to the Comparator TDFs gives rise to a plausible inference that

22

1   Defendants breached their fiduciary duty of prudence by failing to monitor the

2   BlackRock TDFs and remove them from the Plan.  (Resp. at 11-20.)

3          The court need not decide whether the Comparator TDFs are meaningful

4   benchmarks because even if they are, Plaintiffs have not plausibly alleged that

5   Defendants breached their fiduciary duty of prudence by selecting the BlackRock TDFs,

6   failing to monitor them, and retaining them in the Plan.  As noted above, a complaint

7   must allege "factual content that allows the court to draw the reasonable inference that

8   the defendant is liable for the misconduct alleged."  *In re Century Aluminum Co. Sec.*

9   *Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  Where there

10  are "two possible explanations, only one of which can be true and only one of which

11  results in liability," Plaintiffs "cannot offer allegations that are 'merely consistent with'

12  their favored explanation but are also consistent with the alternative explanation."  *Id.*

13  (quoting *Iqbal*, 556 U.S. at 678).  Indeed, "[s]omething more is needed, such as facts

14  tending to exclude the possibility that the alternative explanation is true, . . . in order to

15  render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*."  *Id.*

16         In *White v. Chevron*, 752 F. App'x 453, 455 (9th Cir. 2018), the Ninth Circuit

17  applied these rules and affirmed the district court's dismissal of the plaintiffs' claims for

18  breaches of ERISA's fiduciary duties of loyalty and prudence.  The court concluded in

19  that case that the plaintiffs' allegations were insufficient to support a plausible inference

20  that the defendant breached its fiduciary duties because they "showed only that [the

21  defendant] could have chosen different vehicles for investment that performed better

22

ORDER - 16

1    during the relevant period, or sought lower fees for administration of the fund[9]" and that

2    "[n]one of the allegations made it more probable than not that any breach of a fiduciary

3    duty had occurred." *Id.* at 455.  The same is true here.  Plaintiffs ask the court to infer,

4    based on the quarterly charts of three- and five-year annualized returns they present in

5    their complaint, that Defendants must have breached their fiduciary duty of prudence

6    when they did not divest from the BlackRock TDFs.  They allege no facts, however, that

7    would "tend to exclude the possibility" that Defendants had reasons to retain the

8    BlackRock TDFs that were consistent with their fiduciary duties.  *See id.* at 454-55; *In re*

9    *Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108.  Absent such allegations, Plaintiffs

10    fail to raise their claim above a speculative level.  *See Twombly*, 550 U.S. at 555.  Other

11    circuits are in accord.  *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th

12    Cir. 2022) ("Merely pointing to another investment that has performed better in a five-

13    year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not

14    suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that

15    breaches a fiduciary duty."); *Meiners v. Wells Fargo & Co*, 898 F.3d 820, 823 (8th Cir.

16    2018) ("The fact that one fund with a different investment strategy ultimately performed

17    better does not establish anything about whether the [challenged TDFs] were an

18    imprudent choice at the outset. . . . . No authority requires a fiduciary to pick the best

19    performing fund.").  Because Plaintiffs have failed to plausibly allege that Defendants

20

21

22        [9] Plaintiffs stated at oral argument that they do not allege breaches of fiduciary duty based on excessive fees in this case.

1    breached their fiduciary duty of prudence, the court GRANTS Defendants' motion to

2    dismiss that claim.

3        2.      Breach of the Duty of Loyalty

4        ERISA § 404(a) distinguishes the duty of loyalty from the duty of prudence.

5    *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *6 (N.D. Cal. May

6    31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018). To state a claim for breach of the

7    fiduciary duty of loyalty, Plaintiffs must plead facts sufficient to raise a plausible

8    inference that Defendants engaged in self-dealing, took actions for the purpose of

9    benefitting themselves or a third party at the expense of Plan participants, or acted under

10   an actual or perceived conflict of interest in administering the Plan. *White*, 2017 WL

11   2352137, at *6 (dismissing breach of duty of loyalty claim where plaintiff alleged no

12   facts showing any benefit to the defendant resulting from the alleged conduct); *see also*

13   *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *7 (N.D.

14   Cal. Oct. 5, 2020), *rev'd on other grounds*, No. 21-15867, 2022 WL 1055557 (9th Cir.

15   Apr. 8, 2022) (dismissing breach of duty of loyalty claim where plaintiffs failed to allege

16   facts "from which it can plausibly be inferred that the Plan's fiduciaries subjectively

17   intended to benefit either themselves or a third party at the expense of the Plan's

18   participants"); *CommonSpirit Health*, 37 F.4th at 1169-70 (dismissing breach of duty of

19   loyalty claim where plaintiff failed to "plead facts suggesting 'the fiduciary's operative

20   motive was to further its own interests'" (quoting *Brotherston v. Putman Invs., LLC*, 907

21   F.3d 17, 40 (1st Cir. 2018))).

22

1    Here, as Defendants point out, Plaintiffs make no allegations that Defendants

2    acted with intent to benefit themselves or a third party.  (Mot. at 20; *see generally*

3    Compl.)  Indeed, Plaintiffs conceded at oral argument that they do not allege that

4    Defendants engaged in self-dealing and that their claim for breach of the duty of loyalty

5    is based solely on the BlackRock TDFs' alleged underperformance.  Thus, because

6    Plaintiffs have not plausibly alleged a claim for breach of the fiduciary duty of loyalty

7    under ERISA Section § 404(a)(1)(A), the court GRANTS Defendants' motion to dismiss

8    this claim.

9        3.    Secondary Claims

10    Plaintiffs agreed at oral argument that if the court dismisses their claims for breach

11    of the duties of prudence and loyalty, it need not reach their claims in Counts 2 and 3 of

12    their complaint for failure to monitor, co-fiduciary breaches, or knowing breaches of

13    trust.  Indeed, at least one circuit court of appeals has noted that these claims are

14    derivative in nature and "must be premised [on] an underlying breach of fiduciary duty."

15    *Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022) (quoting *Rogers v. Baxter*

16    *Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)); *see also Coulter v. Morgan Stanley*

17    *& Co.*, 753 F.3d 361, 368 (2d Cir. 2014) (finding that failure to monitor claims "cannot

18    survive absent a viable claim for breach of a duty of prudence").  Because the court has

19    granted Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claims, the

20    court also GRANTS Defendants' motion to dismiss Plaintiffs' claims for failure to

21    monitor, co-fiduciary breaches, and knowing breaches of trust.

22

**D.     Leave to Amend**

On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). Accordingly, the court GRANTS Plaintiffs' request for leave to amend their complaint to address the deficiencies identified in this order. (*See* Resp. at 24-25.) Plaintiffs shall file their amended complaint by no later than **February 17, 2023**. If Plaintiffs fail to timely file an amended complaint, the court will DISMISS this matter with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Dkt. # 27) and DISMISSES Plaintiffs' complaint with leave to amend. Plaintiffs may file an amended complaint that addresses the deficiencies identified in this order no later than **February 17, 2023**.

Dated this 7th day of February, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 20