# EXHIBIT B

2023 WL 2307615
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia.

MICHAEL TULLGREN, Plaintiff,

v.

BOOZ ALLEN HAMILTON, et al., Defendants.

No: 1:22-cv-00856-MSN-IDD
|
Filed 03/01/2023

**MEMORANDUM OPINION AND ORDER**

Hon. Michael S. Nachmanoff United States District Judge

 **\*1** This matter comes before the Court on Defendants'
Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No.
41). Upon consideration of the motion, the memorandum
in support thereof, the opposition, the reply thereto, the
arguments of counsel at the hearing held on February 3,
2023, and for the reasons set forth below, the motion is
**GRANTED** and the Amended Complaint is **DISMISSED
WITH PREJUDICE**.

**I. FACTUAL BACKGROUND**
The Booz Allen Hamilton Inc. Employees' Capital
Accumulation Plan (the "Plan") is a defined contribution
plan within the meaning of the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. See Am.
Compl. (Dkt. No. 38) ¶ 18. The Plan is participant-driven,
meaning that participants can choose from among the various
investment options offered by the Plan in which to invest
their own retirement assets. Id. The Plan's investment options
include mutual funds, collective trust funds, and a self-
directed brokerage account. Id.

A target date fund ("TDF") is an investment vehicle
that offers "an all-in-one retirement solution through a
portfolio of underlying funds that gradually shifts to become
more conservative as the assumed target retirement year
approaches." Id. ¶ 22. Because the analysis below references
differences among TDFs' investment strategies, styles, risk
profiles, and asset allocations, a brief discussion of those
differences follows. TDF managers make changes to the
allocations of stocks, bonds, and cash over time; these
allocation shifts are referred to as a fund's glidepath. Id. TDF

glidepaths are managed either "to" or "through" retirement.
Id. ¶ 23. "To retirement" glidepaths "generally assume[ ]
participants will withdraw their funds once they reach the
presumed retirement age, or soon thereafter," and the asset
allocation in a "to retirement" TDF "remains static once
the retirement date is reached." Id. "Through retirement"
glidepaths, on the other hand, assume participants will
remain invested after reaching retirement and that those
participants will "gradually draw down on their funds."
Id. "[T]he terminal allocation of a 'through' fund is not
reached until a predetermined number of years after the
target date." Id. A TDF's underlying mutual funds can be
managed actively or passively. Id. ¶ 25. Actively managed
TDFs "tend to provide more diversified asset class exposure
while offering the potential for excess returns, particularly
in less efficient asset classes where active management
tends to outperform," whereas passively managed TDFs are
"comprised of primarily or entirely passive strategies [that]
provide broad market exposure at minimal cost and avoid the
risk of active management underperformance and style drift."
Id.

The Plan has offered participants the BlackRock LifePath
Index Funds (the "BlackRock TDFs"), a suite of ten TDFs,
as an investment option since at least March 26, 2010. Id. ¶
27. The BlackRock TDFs are managed with a "to" strategy
and invest in underlying passively managed index funds. Id.
¶¶ 24 n.5, 42 n.13. The BlackRock TDFs were the Plan's
Qualified Default Investment Alternative ("QDIA"). Id. ¶
31. Contributions automatically invested in the QDIA if
participants did not select an investment preference. Id. As of
December 31, 2020, approximately 29% of the Plan's assets
were invested in the BlackRock TDFs. Id. ¶ 32.

 **\*2** Michael Tullgren ("Plaintiff") was an employee of
Booz Allen Hamilton Inc. ("Booz Allen") and a former
participant in the Plan. Id. ¶ 9. Plaintiff contends that the
BlackRock TDFs "are significantly worse performing"—
both in terms of total and risk-adjusted returns—"than most
of the mutual fund alternatives offered by TDF providers"
throughout the Class Period," which Plaintiff defines as six
years from the date of the original complaint filed in this
action and continuing to the date of judgment or such other
date as determined by the Court. Id. ¶¶ 1, 27. Plaintiff
alleges that Booz Allen, the Board of Trustees of Booz
Allen Hamilton Inc., the Administrative Committee of the
Booz Allen Hamilton Inc. Employees' Capital Accumulation
Plan (together, the "Defendants") "employed a fundamentally
irrational decision-making process" and "breached their

fiduciaries by imprudently selecting, retaining, and failing to appropriately monitor the clearly inferior BlackRock TDFs." *Id.* ¶¶ 29, 30. To support his claims, Plaintiff compares the performance of the BlackRock TDFs to four of the six largest TDF suites (the "Comparator TDFs"). *Id.* ¶¶ 35, 36. Specifically, Plaintiff provides charts comparing the performance of the BlackRock TDFs against the best and worst performing Comparator TDFs for the three-year and five-year annualized returns for each quarter from the second quarter of 2016 through the third quarter of 2019. *Id.* ¶¶ 44– 46.

In addition to the four Comparator TDFs, Plaintiff provides data regarding the S&P Target Date Indices ("S&P Indices" or "S&P Index") and Sharpe ratio. The S&P Indices are "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs." Am. Compl. ¶ 41. The S&P Indices "include a separately calculated index for each target date," each of which measures the performance of sub-indices purporting to represent a "consensus of the opportunity set available in the U.S. universe of target date funds." *Id.* Each composite index thus represents "an amalgamation of the different characteristics of TDF strategies: TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and ... those with different asset allocations[.]" *Id.* For each of the charts Plaintiff submits comparing the BlackRock TDFs against the Comparator TDFs, Plaintiff also provides BlackRock TDFs' alleged outperformance or underperformance of the corresponding vintage of the S&P Indices. *Id.* ¶¶ 44– 46 & n.16.

The Sharpe ratio is a measurement of investment performance that considers "risk-adjusted return[s]." *Id.* ¶ 43. The Sharpe ratio "accounts for differing levels of risk by measuring the performance of an investment, such as a TDF, compared to the performance of similar investments, after adjusting for risk." *Id.* The ratio, according to Plaintiff, therefore "enables the comparison of suites with disparate equity and fixed income allocations as well as both 'to' and 'through' management styles ... by controlling for those differences." *Id.* ¶ 45. For each of Plaintiff's quarterly data charts, Plaintiff includes the Sharpe ratio as an additional metric indicating how the BlackRock TDFs, as a risk-adjusted investment possibility, would have ranked among the four Comparator TDFs. *Id.* ¶¶ 44–46.

## II. PROCEDURAL HISTORY

On August 1, 2022, Plaintiff filed a complaint, individually as a participant of the Plan and on behalf of a class of similarly-situated participants and beneficiaries of the Plan, against Defendants alleging breaches of fiduciary duties under ERISA. *See generally* Compl. ("Complaint") (Dkt. No. 1). [1] Plaintiff brought three counts: (1) breach of fiduciary duty, (2) failure to monitor fiduciaries and co-fiduciary breaches, and in the alternative, (3) liability for knowing breach of trust. *Id.* ¶¶ 66–82. Plaintiff alleged that the BlackRock TDFs offered by the Plan were "significantly worse performing" than available alternatives funds and that Defendants breached their fiduciary duties by selecting and retaining the BlackRock TDFs. *See, e.g., id.* ¶¶ 27–32. To support his claims, Plaintiff provided the performance data charts of the Comparator TDFs discussed above.

**\*3** On October 10, 2022, Defendants filed a motion to dismiss the Complaint under Rule 12(b)(6) on grounds that the Complaint failed to state a claim for breach of fiduciary duties and that Plaintiff's secondary claims failed as a matter of law. *See* (Dkt. Nos. 20, 21). After the motion was fully briefed, *see* (Dkt. Nos. 30, 31), the Court heard oral argument on December 1, 2022 (Dkt. No. 34). Ruling from the bench, this Court granted Defendants' motion to dismiss the Complaint and dismissed the Complaint without prejudice. (Dkt. Nos. 34, 35). With respect to Count I, the claim of breach of fiduciary duties, this Court concluded that:

> [P]laintiffs have failed to set out circumstantial factual allegations from which the Court may reasonably infer that the decision to retain BlackRock was the product of a flawed decisionmaking process. Plaintiffs fail to allege facts that demonstrate BlackRock TDFs severely underperformed the comparable TDFs or that, in fact, the comparable TDFs were appropriate, meaningful benchmark comparators. The complaint lacks facts showing that the TDFs shared the same investment strategy, investment style, risk profile, or asset allocation. The Court accepts that the differences that have been identified between actively managed and passively managed, the time horizons of "to retirement" versus

"through retirement," and the different allocations of bond and equity mixes is fatally defective in plausibly stating a claim[.]

Tr. Hrg. Mot. to Dismiss (Dkt. No. 37) at 36:11–24. The Court dismissed Counts II and III, as they were derivative of Count I. *Id.* at 36:24–25. The Court provided Plaintiff with fourteen days from the date of the December 1, 2022 order to file an amended complaint. *See* (Dkt. No. 35).

On December 15, 2022, Plaintiff filed an amended complaint. Am. Compl. ("Amended Complaint" or "Am. Compl.") (Dkt. No. 38). In his Amended Complaint, Plaintiff brings the same causes of action as their original Complaint. Plaintiff alleges that "Defendants have severely breached their fiduciary duties of prudence and loyalty to the Plan." *Id.* ¶ 26. Count I alleges that Defendants' conduct violated their fiduciary duties of prudence and loyalty under Sections 404(a)(1)(A), (B), and (D) of ERISA, codified at 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), because Defendants failed to "discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries ...." *Id.* ¶ 75. Count II alleges that Defendants breached their fiduciary monitoring duties by "[f]ailing to monitor and evaluate the performance of their appointees or have a system in place for doing so"; "[f]ailing to monitor their appointees fiduciary processes"; and [f]ailing to remove appointees whose performances were inadequate." *Id.* ¶ 84. Count III alleges that, in the event the Court finds that the Defendants are not fiduciaries or co-fiduciaries under ERISA, Defendants should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a "knowing breach of trust." *Id.* ¶ 89. In addition to the four Comparator TDFs alleged in the Complaint, Plaintiff now includes in his Amended Complaint the S&P Indices and the Sharpe ratio as additional metrics to support his claims of fiduciary breaches. *See Id.* ¶¶ 40–41, 43–46.

On January 11, 2023, Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim for which relief can be granted. Mot. to Dismiss Pl. Am. Compl. (Dkt. No. 41); Mem. of Law in Supp. of Mot. to Dismiss ("Def. Mem.") (Dkt. No. 42). On January 25, 2023, Plaintiff filed an opposition to the motion to dismiss. Pl. Mem. of Law in Opp. Mot. to Dismiss Am. Compl. ("Opp.") (Dkt. No. 44). Defendants filed a reply in support of their motion on January 31, 2023. Rebuttal Br. in Supp. of Mot. to Dismiss. Pl.

Am. Compl. ("Reply") (Dkt. No. 45). This Court heard oral argument on the matter on February 3, 2023. (Dkt. No. 46).

## III. LEGAL STANDARD

**\*4** Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). " 'Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court must "construe facts in the light most favorable to the plaintiff and draw all reasonable inferences in [its] favor" but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (cleaned up).

In assessing ERISA fiduciary-breach claims under Rule 12(b) (6), courts apply the *Iqbal* and *Twombly* pleadings standards by evaluating a complaint's allegations "as a whole" and "giv[ing] due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). As such, courts must exact a "careful, context-sensitive scrutiny of a complaint's allegations" in order to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "Because the content of the duty of prudence turns on the circumstances ... prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* (cleaned up).

## IV. ANALYSIS

### A. COUNT I: FIDUCIARY BREACHES UNDER ERISA

#### 1. Duty of Prudence

ERISA requires that plan fiduciaries discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The duty of prudence requires fiduciaries to undertake their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims[.]" *Id.* § 1104(a)(1)(B). To state a viable claim for fiduciary breach under ERISA, Plaintiff must allege either direct facts demonstrating a deficient fiduciary process or circumstantial facts allowing a plausible inference that the fiduciaries' decision was outside the "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. "[I]f the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct," thus allowing the "court to infer more than the *mere possibility* of misconduct.' " *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678–79).

Plaintiff alleges in conclusory fashion that the "fiduciaries here employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence)." Am. Compl. ¶ 30. But the Amended Complaint is completely devoid of facts about the particular decision-making process undertaken by Defendants with respect to the Plan at issue here. To state a claim for breach of fiduciary duty, therefore, Plaintiff relies on solely circumstantial allegations. Specifically, Plaintiff argues that the "significantly worse performing" BlackRock TDFs "could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable." Am. Compl. ¶ 27. Were the fiduciaries to have objectively evaluated the BlackRock TDFs' performance, Plaintiff posits, they would have selected "a more consistent, better performing, and more appropriate TDF suite." *Id.* ¶ 29. Plaintiff bases these allegations solely on quarterly performance data of the four Comparator TDFs, the S&P Indices, and the Sharpe ratio. *See id.* ¶¶ 33–46.

**\*5** Defendants argue that Plaintiff's allegations are insufficient to state a fiduciary breach claim under ERISA because allegations of underperformance alone fail to state a plausible claim and that Plaintiff fails to allege any meaningful benchmarks by which this Court can assess the BlackRock TDFs. *See* Def. Mem. 8–17. The Court agrees. When the Court dismissed Plaintiff's original Complaint, it concluded that Plaintiff failed to set out circumstantial factual allegations from which the Court could reasonably infer that the decision to retain the BlackRock TDFs was the product of a flawed decision-making process. It also concluded that Plaintiff failed to allege that the BlackRock TDFs severely underperformed the Comparator TDFs or that the Comparator TDFs were appropriate, meaningful

benchmark comparators. The addition of the S&P Index and the Sharpe ratio to Plaintiff's Amended Complaint fails to resolve these deficiencies.

### a. Underperformance-only Allegations

The Amended Complaint fails to state a claim for fiduciary breach under ERISA because Plaintiff relies solely on the performance of the BlackRock TDFs. That is, Plaintiff asks this Court to infer Defendants' fiduciary breach based solely on the circumstantial allegation that the BlackRock TDFs "fail[ed] to outperform" a composite index (the S&P Index) and the four Comparator TDFs based on the annualized returns for fourteen quarterly periods. *E.g.*, Compl. ¶ 46. To survive a motion to dismiss, however, Plaintiff must set forth some additional factual matter from which this Court can reasonably infer misconduct under ERISA.

A claim of imprudence cannot "come down to simply pointing to a fund with better performance." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022). Courts broadly agree on this point. *See, e.g., Forman v. TriHealth, Inc.*, 40 F.4th 443, 448–49 (6th Cir. 2022) ("Although ERISA does not allow fiduciaries merely to offer a broad range of options and call it a day, a showing of imprudence cannot come down to simply pointing to a fund with better performance.") (quotation marks omitted); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund."); *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at \*20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018) ("poor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to" act with the duty of prudence "either when the investment was selected or as its underperformance emerged"); *St. Vincent*, 712 F.3d at 718 (allegations that "better investment opportunities were available at the time of the relevant decisions" are insufficient); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at \*17 (S.D.N.Y. Oct. 7, 2019) ("ERISA does not require clairvoyance on the part of plan fiduciaries, nor does it countenance opportunistic Monday-morning quarter-backing on the part of lawyers and plan participants who, with the benefit of hindsight, have zeroed in on the underperformance of certain investment options."). [2]

*CommonSpirit Health* is instructive. In *CommonSpirit Health*, a retirement fund participant alleged that fiduciaries

breached their duty of prudence under ERISA when they offered several actively managed investment funds when index funds available on the market offered higher returns and lower fees. 37 F.4th at 1164. The complaint in *CommonSpirit Health* identified "three-year and five-year periods in which three actively managed funds ... trailed related index funds in their rates of return." *Id.* The Sixth Circuit rejected these underperformance-only allegations as insufficient to infer any fiduciary breaches, concluding that "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Id.* at 1166. Identifying a better-performing fund, or an alternative course of action the fiduciaries may have taken, "will often be *necessary* to show a fund acted imprudently," but that factual allegation alone is not *sufficient. Id.* (emphasis added). Such claims require that "an investment was imprudent from the moment the administrator selected it, that the investment became imprudent over time, or that the investment was otherwise clearly unsuitable for the goals of the fund based on ongoing performance." *Id.*

**\*6** So too here. Underperformance of the BlackRock TDFs is *all* that Plaintiff alleges. Plaintiff has provided no factual allegations from which the Court may reasonably infer that the choice of the BlackRock TDFs was imprudent from the moment the administrator selected it, that the BlackRock TDFs became imprudent over time, or that the BlackRock TDFs were otherwise clearly unsuitable for the goals of the fund based on ongoing performance. Plaintiff alleges nothing beyond data allegedly indicating the BlackRock TDFs' disappointing performance relative to Plaintiff's preferred alternatives over the course of a limited period of time.[3] The addition of the Sharpe ratio and S&P Index to the Amended Complaint does not alter this analysis, as these are merely additional measurements of investment performance. That the Sharpe ratio is alleged to analyze performance on a risk-adjusted basis is therefore immaterial. *See Anderson v. Intel Corp.,* 2021 WL 229235, at \*7–8 (N.D. Cal. Jan. 21, 2021), *appeal filed,* No. 22-16268 (9th Cir. Aug. 22, 2022) (where plaintiffs alleged TDFs performed substantially worse than both actively-and passively-managed TDFs both in absolute terms and on a risk-adjusted basis, court held that "allegations of poor performance, standing alone, are insufficient to state a claim for breach of the duty of prudence").

ERISA simply does not provide a cause of action for fiduciary breaches based solely on a fund participant's disappointment

in the fund's performance. That the BlackRock TDFs were allegedly outperformed by some other TDFs at some points during a three-or five-year window, without more, does not suggest that offering the BlackRock TDFs fell outside the "range of reasonable judgments" that fiduciaries may make. *See Hughes,* 142 S. Ct. at 742. The Court therefore finds that Plaintiff has failed to state a claim for the breach of the fiduciary duty of prudence alleged in Count I of the Amended Complaint.

### b. Meaningful Benchmarks

The Amended Complaint fails for the additional and independent reason that Plaintiff has not pled meaningful benchmarks against which this Court can assess his allegations of the fiduciaries' imprudence. To "show that a prudent fiduciary in like circumstances would have selected a different fund based on the ... performance of the selected fund, a plaintiff must provide a sound basis for comparison —a meaningful benchmark." *Meiners,* 898 F.3d at 822 (quotation marks omitted); *see also Davis v. Wash. Univ. in St. Louis,* 960 F.3d 478, 484 (8th Cir. 2020) ("[A] complaint cannot simply make a bare allegation that ... returns are too low.... Rather, it must provide a sound basis for comparison —a meaningful benchmark.") (quotation marks omitted). Because TDFs encompass a range of investment goals, risk profiles, and underlying funds, Plaintiff must advance comparators that have similar investment strategies to the challenged fund. *See Matousek v. MidAmerican Energy Co.,* 51 F.4th 274, 281 (8th Cir. 2022) (comparator funds are "unlikely to be 'sound' or 'meaningful' " if they do not "hold similar securities, have similar investment strategies, [or] reflect a similar risk profile"); *Davis v. Salesforce, Inc.,* No. 21-15867, 2022 WL 1055557, at \*2 n.1 (9th Cir. Apr. 8, 2022); *CommonSpirit Health,* 37 F.4th at 1167. Therefore, funds that have "distinct goals and distinct strategies" are "inapt comparators." *CommonSpirit Health,* 37 F.4th at 1167.

In dismissing the original Complaint, which alleged the four Comparator TDFs as benchmarks, this Court concluded that the "complaint lacks facts showing that the TDFs shared the same investment strategy, investment style, risk profile, or asset allocation." Tr. Hrg. Mot. to Dismiss (Dkt. No. 49) at 36:17–19. Plaintiff has not remedied this deficiency in the Amended Complaint. In the Opposition, Plaintiff states that "the funds at issue are passively managed, and the [Amended] Complaint contains both passive and active comparators, each of which were selected for their similarity to the BlackRock

TDFs and status as leading offerings in the TDF market," but provide no citation to the Amended Complaint. *See* Opp. at 15. [4] Indeed, the Amended Complaint remains silent on whether the Comparator TDFs use "through" or "to" retirement glidepaths; whether the Comparator TDFs invest only in actively-managed or passively-managed funds; or how the Comparator TDFs' underlying equity and bond funds are allocated among the types and categories of possible equity and bond funds. In short, the Amended Complaint makes no factual allegations demonstrating that the Comparator TDFs are meaningful comparators to the BlackRock TDFs.

**\*7** Plaintiff has included two additional performance metrics in the Amended Complaint—the S&P Index and the Sharpe ratio—but neither salvages Plaintiff's claims. Regarding the S&P Index, Defendants argue that the S&P Index suffers from the same problems that make the Comparator TDFs inapt benchmarks. Def. Mem. at 10. The Court agrees. The S&P Index is not an actual fund. Rather, it is "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs." Am. Compl. ¶ 41. Each composite index thus represents "an amalgamation of the different characteristics of TDF strategies: TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and ... those with different asset allocations[.]" *Id.* Because funds with distinct goals and distinct strategies are inapt comparators, there is no sound basis on which the Court can compare the BlackRock TDFs with the S&P Index. As Plaintiff concedes, the S&P Index is "a composite of the *disparate* strategies and styles present in the broad universe of investable alternative TDFs." Am. Compl. ¶ 41 (emphasis added). Courts have rejected plaintiffs' reliance on similar industry averages or medians. *See, e.g., Parmer v. Land O'Lakes*, 518 F. Supp. 3d 1293, 1303–04 (D. Minn. 2021) (finding "median expense ratios" were not meaningful benchmarks because they did not "differentiate between passively and actively managed funds"); *Rosenkranz v. Altru Health Sys.*, No. 3:20-cv-168, 2021 WL 5868960, at \*10 (D.N.D. Dec. 10, 2021) (similar); *Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-cv-71-D, 2021 WL 1231415, at \*7 (E.D.N.C. Mar. 31, 2021) (rejecting reliance on broad-based category medians because they were not "sufficiently similar"). Notably, plaintiffs in *Wehner v. Genentech*, No. 20-cv-06894-WHO, 2021 WL 2417098, at \*8 (N.D. Cal. June 14, 2021), attempted to amend their complaint with performance comparisons against the S&P Target Date Indices alleged here. That court concluded that because the S&P Indices did not share the same "styles and strategies to support a finding

of 'meaningful benchmark' to the challenged TDFs," they were not apt comparators. *Id.* This Court likewise concludes that because they reflect disparate investment strategies and styles, the S&P Indices are not meaningful benchmarks against which the Court can assess the performance of the BlackRock TDFs.

Nor is the Sharpe ratio any more persuasive. Defendants contend that "Sharpe ratios are just another way to compare the performance returns of any two investments. Sharpe ratios are not magic wands that equalize any two investments as meaningful benchmarks in the first place." Reply at 2. The Court agrees. The Sharpe ratio assesses risk adjusted across investments to account for differences in investments' asset allocations and styles. Am. Compl. ¶ 43. But the Sharpe ratio is not in itself a TDF—it is simply a metric one can use to compare the risk-adjusted returns for any two kinds of investments. [5] As Defendants correctly note, courts that have rejected TDF comparisons have done so not because the plaintiffs advanced the wrong metrics, but rather because the underlying investment strategies and styles were meaningfully different to start. *See, e.g., CommonSpirit Health*, 37 F.4th at 1167. The Sharpe ratio cannot substitute making two funds comparable in the first place.

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim for a breach of the duty of prudence under ERISA.

## 2. Other Fiduciary Breaches

The duty of loyalty requires that a fiduciary discharge duties "for the exclusive purposes of[ ] providing benefits to participants and their beneficiaries[ ] and "defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A). To survive a motion to dismiss, Plaintiff must plead specific facts from which this Court may plausibly infer that Defendants breached their duty of loyalty. Plaintiff has simply recast the alleged breaches of the duty of prudence as breaches of loyalty. Plaintiff merely asserts the fiduciaries breached their duty of loyalty without alleging any supporting facts. *See* Am. Compl. ¶¶ 26, 75 (citing a fiduciary breach claim under 29 U.S.C. § 1104(a)(1)(A)). That is insufficient to state a claim for disloyalty. *See Smith v. CommonSpirit Health*, No. 20-95-DLB-EBA, 2021 WL 4097052, at \*12 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022).

Plaintiff similarly alleges that Defendants failed to "act in accordance with the documents and instruments governing the Plan," in violation of 29 U.S.C. § 1104(a)(1)(D). Am. Compl. ¶ 75. Again, the Amended Complaint is devoid of any factual allegations to support the allegation. Plaintiff, for instance, does not even specify the particular documents or instruments to which Defendants are alleged to have failed to adhere.

* * *

 **\*8**  Accordingly, this Court **GRANTS** Defendants' motion to dismiss Count I of the Amended Complaint alleging breaches of fiduciary duties under ERISA and **DISMISSES COUNT I WITH PREJUDICE.** [6]

**B. COUNTS II AND III**

Plaintiff's claim alleging failure to monitor, Am. Compl. ¶¶ 79–87, is wholly derivative of the underlying fiduciary breach claim. Because the Court finds Plaintiff's Amended Complaint deficient with respect to the fiduciary breach claim, *see, e.g., In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (failure to monitor fiduciaries are dependent upon establishing an underlying fiduciary breach under ERISA), the Court

**GRANTS** Defendants' motion to dismiss Count II of the Amended Complaint and **DISMISSES COUNT II WITH PREJUDICE.**

Count III of the Amended Complaint alleges knowing breach of trust. Am. Compl. ¶¶ 88–90. This claim too is derivative of the underlying fiduciary breach and must be dismissed. *See Beldock v. Microsoft Corp.*, No. C22-1082 JLR, 2023 WL 1798171, at \*8 (Feb. 7, 2023). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Count III of the Amended Complaint and **DISMISSES COUNT III WITH PREJUDICE.**

**V. CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. No. 41) is **GRANTED** and Plaintiff's Amended Complaint (Dkt. No. 38) is **DISMISSED WITH PREJUDICE** in its entirety.

It is **SO ORDERED**.

Alexandria, Virginia

**All Citations**

Slip Copy, 2023 WL 2307615

**Footnotes**

1    This lawsuit is one of eleven lawsuits brought by Plaintiff's counsel alleging the same claims against other large-employer-sponsored retirement plans offering the BlackRock TDFs. *See* Compl., *Bracalente v. Cisco Sys., Inc.*, No. 22-cv-4417 (N.D. Cal. July 29, 2022), ECF No. 1; Compl., *Motz v. Citigroup Inc.*, No. 22-cv-965 (D. Conn. July 29, 2022), ECF No. 1; Compl., *Kistler v. Stanley Black & Decker*, No. 22-cv-966 (D. Conn. July 29, 2022), ECF No. 1; Am. Compl., *Luckett v. Wintrust Fin.*, No. 22-cv-3968 (N.D. Ill. Sept. 8, 2022), ECF No. 18; Am. Compl., *Hall v. Capital One Fin. Corp.*, No. 22-cv-857 (E.D. Va. Dec. 15, 2022), ECF No. 50; Am. Compl., *Trauernicht v. Genworth Fin.*, No. 22-cv-532 (E.D. Va. Jan. 30, 2023), ECF No. 73; Am. Compl., *Beldock v. Microsoft Corp.*, No. 22-cv-1082 (W.D. Wash. Feb. 17, 2023), ECF No. 58; Compl., *Antoine v. Marsh & McLennan Cos., Inc.*, No. 22-cv-6637 (S.D.N.Y. Aug. 4, 2022), ECF No. 1; Am. Compl., *Anderson v. Advance Pubs., Inc.*, No. 22-cv-06826 (S.D.N.Y. Jan. 27, 2023), ECF No. 54; Compl., *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449 (W.D. Wis. Aug. 19, 2022), ECF No. 1.

2    Plaintiff largely sidesteps addressing these cases in his Opposition. *See* Opp. at 22–26. Instead, Plaintiff cites to *Moler v. Univ. of Maryland Med. Sys.*, 2022 WL 2756290, at \*4–5 (D. Med. July 13, 2022). But, unlike the Amended Complaint here, the allegations of a flawed fiduciary process in *Moler* were based on underperformance of the funds as well as the selection of high-cost funds. *Id.* at \*2.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.                    7

3    Because the Amended Complaint's performance-only allegations are legally deficient, the Court will not address whether the charts provided by Plaintiff in fact reflect what he suggests—that the BlackRock TDFs exhibited "consistently deplorable performance" and were "consistently and dramatically outperformed" by the Comparator TDFs. Nor will the Court address whether the time period reflected in those charts is legally sufficient to demonstrate long-term underperformance as a matter of law. *See, e.g.*, Compl. ¶¶ 33, 44–46, 51.

4    Relying on the Morningstar Report cited by Plaintiff (Am. Compl. ¶ 24 n.5), Defendants allege that:

[U]nlike the BlackRock TDFs, which are passively managed, two of the four Comparator TDFs are actively managed. Unlike the BlackRock TDFs, which utilize a "to-retirement" strategy, all the Comparator TDFs utilize a "through-retirement" strategy. The Amended Complaint admits that these differences mean that the different funds—"to retirement" versus "through retirement" and passive versus active—are designed to address different risks. And Plaintiff still does not and cannot allege that the equity and bond allocations of the BlackRock TDFs are equivalent to the allocations of the Comparator TDFs, whether generally or specifically.

Def. Mem. at 9–10 (citations omitted). Plaintiff has not advanced any of these allegations in the Amended Complaint, so the Court need not address these differences. The Court notes, however, that had the Amended Complaint included such allegations, the Comparator TDFs would not serve as meaningful benchmarks because they have "distinct goals and distinct strategies" and are thus "inapt comparators." *See CommonSpirit Health*, 37 F.4th at 1167.

5    Notably, Plaintiff only provides how the BlackRock TDFs' Sharpe ratio would have ranked among the Comparator TDFs but does not include the actual numerical values. As a result, even if this Court found the Sharpe ratio to be a meaningful benchmark as a matter of law, the Court would be unable to determine how significant or insignificant those differences are.

6    This Court has already provided Plaintiff with an opportunity to amend the complaint to address the deficiencies outlined herein. Plaintiff has once again failed to sufficiently allege a fiduciary breach of the duty of prudence on a second attempt. This Court will accordingly dismiss these claims with prejudice and without further leave to amend.

---

**End of Document**                                       © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   8