UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARY LALIBERTE and MARIE MCKNIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the QUANTA SERVICES, INC. 401(K) SAVINGS PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>QUANTA SERVICES, INC.; THE BOARD OF TRUSTEES OF QUANTA SERVICES, INC.; THE QUANTA SERVICES, INC. 401(K) SAVINGS PLAN COMMITTEE; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>Defendants. | Case No: 4:22-cv-03290<br><br>Oral Argument Requested |

## DEFENDANTS' MOTION TO CERTIFY INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND MEMORANDUM OF LAW IN SUPPORT

Defendants Quanta Services, Inc. ("Quanta"), the Board of Trustees of Quanta Services, Inc., (the "Board") and the Quanta Services, Inc. 401(k) Savings Plan Committee (the "Committee"), by and through undersigned counsel, respectfully request that this Court, pursuant to 28 U.S.C. § 1292(b), certify for interlocutory appeal the Court's order on Defendants' motion to dismiss (Dkt. 53) (the "Order").

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 4

    I.    Factual Background ........................................................................................ 4

    II.    Procedural History .......................................................................................... 6

ARGUMENT ........................................................................................................................ 8

    I.    The Appropriate Pleading Standard Is A Question Of Law. ............................... 8

    II.    The Appropriate Pleading Standard Is A "Controlling" Issue. ........................... 10

    III.    There Is Substantial Ground For Difference Of Opinion. ................................. 13

    IV.    Immediate Appeal From The Order May Materially Advance The Ultimate Termination Of The Litigation ............................................................ 16

CONCLUSION .................................................................................................................... 17

**INTRODUCTION**

The Court should certify the Order for interlocutory review so that the Fifth Circuit may clarify the requirements for pleading a legally sufficient claim for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") in this Court. The Order denied Quanta's motion to dismiss and held that Plaintiffs had sufficiently pleaded ERISA fiduciary-duty claims based on alleged excessive costs and "underperformance" of certain actively managed mutual funds in the Quanta Services Inc. 401(k) Savings Plan ("the Plan") compared to other funds identified in the complaint. The Court acknowledged that the Sixth and Eighth Circuits have held that ERISA plaintiffs must *plead* facts demonstrating that their proposed comparator funds are a "meaningful benchmark" for the challenged funds to plausibly allege that a prudent fiduciary in like circumstances would have selected a different fund. Op. 4 (citing *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cri. 2022), and *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018). It also noted that the Fifth Circuit has not addressed that question, and that district courts within the Fifth Circuit have split over the right answer. Op. 4–5 (citing *Blackmon v. Zachary Holdings, Inc.*, No. 5:20-CV-DAE, 2021 WL 2190907, at *3 (W.D. Tex. Apr. 22, 2021), and *Locascio v. Fluor Corp.*, No. 3:22-CV-0154-X, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023)). Ultimately, the Court sided with Judge Ezra in the Western District of Texas in *Blackmon*, concluding "determination of the appropriate benchmark for a fund is not properly resolved at the motion to dismiss stage." Op. 5 (quoting *Blackmon*, 2021 WL 2190907, at *5).

Interlocutory review is warranted. Whether Plaintiffs must plead a "meaningful benchmark" to plausibly allege an ERISA fiduciary-duty claim based on alleged excessive costs and "underperformance" of TDFs and other mutual funds is a question of law that is controlling and as to which there is substantial ground for difference of opinion, and an immediate appeal may

1

materially advance the ultimate termination of the litigation and save the parties and this Court considerable expense and judicial resources. *See* 28 U.S.C. § 1292(b).

First, the Order involves a question of law because it focuses on the proper pleading standard for an ERISA duty-of-prudence claim. Under ERISA, fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Where, as here, a complaint does not make direct allegations of a flawed fiduciary process but instead relies on allegations about the process's results, those allegations must be sufficient for a court to "infer . . . that the process was flawed." *Matousek v. MidAmerican Energy Co.*, 51 F. 4th 274, 278 (8th Cir. 2022) (quotation marks and citation omitted). In construing this standard, the Supreme Court has directed that "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). Whether these principles require Plaintiffs to plead a "meaningful benchmark" to state ERISA duty-of-prudence claims is a question of law resolved through ERISA's statutory text and case law interpreting it, not extensive consultation of the record.

Second, the question of law is controlling because it has a substantial effect on this case—and many other cases. If the Fifth Circuit were to take up this appeal and adopt the pleading standard urged by Defendants, it would dispose of this litigation in its entirety on the pleadings—just as that pleading standard has disposed of indistinguishable claims (involving many of the same challenged investments) in the many jurisdictions that have adopted it. And because ERISA class actions are expensive to litigate and increasingly common—and have resulted in different

2

approaches across district courts in the Fifth Circuit—the pleading-standard question is also highly important to other cases in which these issues will arise.

Third, there is "substantial ground for difference of opinion" on the pleading-standard question. As the Order aptly recognized, this Court diverged from both the Sixth and Eighth Circuits on that threshold legal question. Indeed, *every* court of appeals to decide the issue has held that plaintiffs must plead facts demonstrating that their proposed better performing or less expensive comparator funds are a "meaningful benchmark" for the funds they challenge in order to state a duty-of-prudence claim under ERISA. But absent guidance from the Fifth Circuit, that legal question has divided district courts within it. A court in the Fifth Circuit has joined many others and held that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the allegedly imprudent funds." *Locascio*, 2023 WL 320000, at *6 (dismissing ERISA claim challenging the prudence of offering TDFs for failure to plead a sufficiently similar benchmark). A plaintiff cannot simply point to a supposed "after-the-fact performance gap between benchmark comparators" and claim that this "by itself violates the process-driven duties imposed on ERISA fund managers." *Smith*, 37 F.4th at 1167 (affirming dismissal of fiduciary-duty claims based on alleged underperformance of the same Fidelity Freedom Funds at issue here). Rather, imprudence claims must be dismissed on the pleadings where (as here) they are based only on inapt comparisons, such as comparisons between actively managed funds (such as the Fidelity Freedom Funds) and passively managed funds (such as the Fidelity Index Funds), or funds with materially distinct investment strategies, investment styles, risk profiles, or asset allocations. *See, e.g.*, *Meiners*, 898 F.3d at 825 (affirming dismissal of fiduciary-duty claims making this inapt comparison, holding that the plaintiffs failed to offer "any meaningful benchmark" between the

3

different investment options); *Tullgren v. Booz Allen Hamilton*, No. 1:22-cv-00856-MSN-IDD, 2023 WL 2307615, at *6 (E.D. Va. Mar. 1, 2023) (dismissing fiduciary-duty claim for lack of a "meaningful benchmark" because the pleading "remains silent on whether the Comparator TDFs use 'through' or 'to' retirement glidepaths; whether the Comparator TDFs invest only in actively-managed or passively-managed funds; or how the Comparator TDFs' underlying equity and bond funds are allocated among the types and categories of possible equity and bond funds").

Finally, an interlocutory appeal will materially advance the ultimate termination of the litigation. A decision from the Fifth Circuit could dispose of Plaintiffs' claims and terminate the litigation altogether, or at a minimum streamline the claims significantly, thereby avoiding (or at least significantly narrowing) the need to engage in time-consuming and costly discovery, which could be particularly burdensome in this ERISA putative class action. Absent interlocutory review, moreover, it is uncertain whether the Fifth Circuit will have the opportunity to decide the appropriate pleading standard in an ERISA breach-of-fiduciary-duty case like this one.

For all these reasons, Defendants respectfully request that the Court certify its Order for interlocutory review under 28 U.S.C. § 1292(b).

## BACKGROUND

### I.   Factual Background

One of the ways Quanta helps its employees prepare for retirement is through the Plan, a "participant-directed 401(k) plan." Compl. ¶ 19. Under the Plan, each participant's retirement benefit depends on the amount they contribute and the performance of the investments they select. *Id*. Participants in the Plan can choose from a diverse menu of investment options covering different asset classes, investment styles, and risk-reward profiles. *Id*. ¶¶ 9, 24. Here, the Plan offered several mutual funds in which participants could choose to invest, including the Fidelity Freedom Funds target date funds ("Freedom Funds"), the American Small Cap Value Fund

4

("American Fund"), and the DFA International Small Cap Value Fund ("DFA Fund"). *Id.* ¶¶ 25, 50, 55.

Target Date Funds ("TDFs") are investment options "in which the allocation of equity, bonds, and cash" automatically shifts "as the target date approaches." *Meiners v. Wells Fargo & Co.*, No. CV 16-3981, 2017 WL 2303968, at *1 n.2 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir. 2018). The Freedom Funds, for example, "are a suite of [TDFs], which means that the managers change the allocation of the underlying investments that they hold over time, say by selling funds that hold stocks to buy a greater proportion of funds that hold bonds or cash." *Smith*, 37 F.4th at 1164 (citation omitted).

Different mutual funds, including TDFs, can have meaningful differences. For example, as with other investments, mutual funds, such as TDFs, may be characterized as either "actively managed" or "passively managed," depending on whether they invest in other funds that are passively managed or actively managed, or some combination of the two. *Id.* ¶¶ 29–33; *see also Loomis v. Exelon*, 658 F.3d 667, 669–70 (7th Cir. 2011) (explaining that actively managed funds "try to find and buy underpriced securities while selling ones that the advisers think are overvalued," whereas passively-managed funds, also known as index funds, "simply track a designated portfolio"). Different mutual funds may also hold different percentages of equities, bonds, and other assets. Compl. ¶¶ 25, 37. Mutual funds also have different focuses on "value" or "growth" strategies, risk taking, different industries (healthcare, finance, technology), and foreign securities in different countries, among other things. TDFs in particular also have different "glide paths" that help someone plan for retirement with different risk taking at different stages of life. *See Tullgren*, 2023 WL 2307615, at *1 ("TDF managers make changes to the allocations of stocks, bonds, and cash over time; these allocation shifts are referred to as a fund's glidepath.").

## II.     Procedural History

Plaintiffs allege that they were participants in the Plan.  Plaintiff Laliberte alleges that she invested in the Fidelity Freedom 2055 Fund.  Compl. ¶ 9.  Plaintiff McKnight alleges that she invested in fourteen different funds in the Plan, but she challenges just two of them: the American and DFA Funds.  *Id*.  The Complaint alleges the equity holdings of the Freedom Funds and the passively managed Fidelity Index Funds at different points in time, but it does not allege any facts about the equity or bond holdings of any of the alternative target date funds Plaintiffs advocate (the "Alternative TDFs"), their exposure to particular industries or particular countries or other risk parameters.  *Id*. ¶ 36.  The Complaint also does not allege any facts about the holdings, investment strategy or style and risk of the American or DFA Funds, or the proposed cheaper or better performing comparators for those funds.

The Complaint asserts three claims.  In Count I, Plaintiffs allege that Quanta breached its fiduciary duties of prudence and loyalty under ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), and (D), by offering the Freedom Funds, the American Fund, and the DFA Fund in the Plan's investment lineup instead of the comparators they advocate.  Compl. ¶¶ 78–82.  In Count II, Plaintiffs allege that Quanta and its Administrative Committee failed to adequately monitor the fiduciaries.  *Id.* ¶¶ 83–91.  And in Count III, Plaintiffs allege that to the extent any defendant is not an ERISA fiduciary, that defendant is liable as a non-fiduciary who participated in a knowing breach of trust. *Id.* ¶¶ 92–94.

Defendants moved to dismiss all claims.  *See* Dkt. 36.  The Court denied that motion. Dkt. 53.  The Court's Order focused on the legal standard for pleading fiduciary-duty claims under ERISA and Defendants' argument that Plaintiffs failed to identify a "meaningful benchmark" that

6

could provide a sound basis for comparing the challenged funds with an investment option that a prudent fiduciary in like circumstances would have allegedly offered instead. Op. 4.

The Court noted that the Sixth and Eighth Circuits have held that pleading a viable fiduciary-duty claim under ERISA requires allegations of a "meaningful benchmark" and that failure to do so requires dismissal on a Rule 12 motion. *Id.* The Court further acknowledged that the Fifth Circuit "has not adopted" the pleading standard articulated by the Sixth and Eighth Circuits and "has not commented on which stage of the litigation, if any, is most appropriate for lower courts to consider arguments regarding whether the meaningful benchmark requirement was met." *Id.* And without much-needed guidance from the Fifth Circuit, the Court correctly recognized the pleading standard remains unsettled amongst district courts within it: the Court explained that those "sister courts" within the Fifth Circuit "that have addressed this issue are split on the matter." *Id.* at 4–5.

The Court, however, went on to reject the pleading standards that apply in the Northern District of Texas, the Sixth Circuit, the Eighth Circuit, and elsewhere (*see infra* at 13–15), and instead embraced the approach taken by Judge Ezra in the Western District of Texas, holding that the existence of an appropriate benchmark for determining ERISA imprudence "is not properly resolved at the motion to dismiss stage." Op. at 5 (quoting *Blackmon*, 2021 WL 2190907, at *5). Because the Court did not assess whether Plaintiffs adequately alleged a "meaningful benchmark" for the challenged funds, it concluded that Plaintiffs' allegations plausibly stated a claim for breach of fiduciary duty. As a result, the Court denied Defendants' motion to dismiss in its entirety. *Id.* at 5–6.

**ARGUMENT**

Certification of an interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate when an order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Congress has conferred on district courts "first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

This Court has identified "four statutory criteria" that guide the Court's decision about whether to certify an interlocutory appeal: "(1) there must be a question of law; (2) it must be controlling; (3) it must be contestable; and (4) its resolution must speed up the litigation." *Barker v. Halliburton Co.*, No. CIV.A. H-07-2677, 2008 WL 536640, at *1 (S.D. Tex. Feb. 27, 2008) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675‑76 (7th Cir. 2000)). Each criterion is satisfied here, and the Court should certify the Order for interlocutory review.

**I.     The Appropriate Pleading Standard Is A Question Of Law.**

The Order satisfies the first criterion for interlocutory review because it involves the appropriate pleading standard, which is a pure question of law. Orders that qualify for interlocutory review typically involve "a pure issue of law, *i.e.*, a question the appellate court can efficiently rule on without making an intensive inquiry into the record." *Total E & P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, No. CV H-16-2671, 2018 WL 11469624, at *2 (S.D. Tex. Nov. 6, 2018) (citing cases). Orders addressing the appropriate pleading standard at the motion-to-dismiss stage are routinely considered questions of law for purposes of 28 U.S.C. § 1292(b). *See Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (holding that the question concerning "the requisite pleading standards" is "an issue of law as opposed to fact"); *Alex v. TMobile USA, Inc.*, No. 3:17-cv-1532-M, 2018 WL 11275541, at *2 (N.D. Tex. Apr. 16, 2018)

8

(certifying interlocutory appeal from order denying motion to dismiss); *Gonzalez v. CoreCivic, Inc.*, No. 1:18-CV-169-LY, 2019 WL 13150080, at *1 (W.D. Tex. June 10, 2019) (same); *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*, 495 F. Supp. 3d 400, 413–414 (M.D. La. 2020) (holding that denial of a motion to dismiss involved a question of law); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) ("Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous.").

The issue pertaining to the proper pleading standard for a duty-of-prudence claim presents a "question of law" because it is a pure legal principle that can be resolved without extensive consultation to the record. Under ERISA, fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Where, as here, a complaint does not make direct allegations of a flawed fiduciary process but instead relies on allegations about the process's results, those allegations must be sufficient for a court to "infer . . . that the process was flawed." *Matousek*, 51 F.4th at 278 (quotation marks and citation omitted). In construing this standard, the Supreme Court has directed that even at the pleading stage, "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

Construing the proper pleading standard in light of ERISA's statutory text and interpretive case law is a question of law. Indeed, the Order correctly treated the proper pleading standard as a legal question by recognizing that Defendants were challenging Plaintiffs' claims as a matter of law and surveying relevant case law addressing the pleading standard. *See* Op. 3–5 (discussing

9

"holdings" from the Sixth and Eighth Circuit "requiring a meaningful benchmark" at the pleading stage). Accordingly, the proper pleading standard for imprudence claims under ERISA can be decided "quickly and cleanly without having to study the record." *Lake Charles Harbor & Term. Dist.*, 2021 WL 5828720, at *2.

## II.     The Appropriate Pleading Standard Is A "Controlling" Issue.

An issue of law is "controlling" when it has "some impact on the course of the litigation." *Ryan*, 444 F. Supp. 2d at 723. The classic example of a "controlling" question of law is an issue on which reversal "would result in dismissal of the action." *Id.* (quoting *Strougo v. Scudder, Stevens & Clark, Inc.*, No. 96 CIV. 2136(RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug.18, 1997)); *see Escobedo v. Ace Gathering, Inc.*, No. H-22-538, 2023 WL 5511199, at *2 (S.D. Tex. Aug. 25, 2023) ("Answering a question materially advances the termination of the litigation 'if reversal of the district court's opinion would result in dismissal of the action.'") (citation omitted). When "resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling." 19 James William Moore, *Moore's Federal Practice - Civil* § 203.31[2] (2023); *see Hines v. Alldredge*, No. 1:13-CV-56, 2014 WL 12649849, at *1 (S.D. Tex. Mar. 27, 2014) (certifying interlocutory appeal where "reversal could terminate the action and, in any event, would certainly 'have some impact on the course of the litigation'") (citation omitted). An issue of law may also be controlling where "the certified issue has precedential value for a large number of cases." *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 2814893, at *2 (E.D. Tex. May 14, 2021) (quoting *Ryan*, 444 F. Supp. 2d at 723); *see* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction* § 3930 (3d ed.) ("The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement.").

10

Here, the appropriate pleading standard is a "controlling" question of law in relation to this case, but also in relation to a large number of other ERISA cases. If the Fifth Circuit were to take up this appeal and adopt the pleading standard urged by Defendants, it would be wholly dispositive of this litigation. The Court declined to dismiss Plaintiffs' Complaint for failure to plead a meaningful benchmark because it concluded that Plaintiffs were not required to plead a meaningful benchmark. Op. 5. But for the reasons explained in Defendants' motion to dismiss, if Plaintiffs are required to plead a meaningful benchmark, their Complaint falls far short of stating a claim on which relief may be granted. *See* Dkt. 36. For example, Plaintiffs attempt to challenge the Freedom, American, and DFA Funds that invest in actively managed funds based on comparators that invest in passively managed funds. They also fail to allege any facts about the comparator funds' glidepath, equity holdings, bond holdings, risk profiles, or investment strategies, let alone make plausible allegations that the comparator funds are meaningful benchmarks for assessing the prudence of the challenged funds.

Indeed, Plaintiffs have identified "benchmarks" that other courts have consistently rejected in the Rule 12 context. *See, e.g.*, *Smith*, 37 F.4th at 1167 (explaining that comparing the Freedom Funds to index funds did not suffice to state a claim because "each fund has distinct goals and distinct strategies, making them inapt comparators"); *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) (affirming Rule 12(b)(6) dismissal of fiduciary breach claim based on underperformance of actively managed TDFs to passively managed TDFs); *Coyer v. Univar Sols. USA Inc.*, No. 1:22-cv-00362, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022) (dismissing imprudence claims and holding that the Alternative TDFs are inapt comparators to the Freedom Funds); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306–07 (D. Minn. 2021) (granting Rule 12 motion as to fiduciary breach claims challenging T. Rowe Price TDFs

11

because TDFs from Fidelity, Vanguard, and American Funds were not meaningful comparators); *Rosenkranz v. Altru Health Sys.*, 2021 WL 5868960, at *10 (D.N.D. Dec. 10, 2021) (granting Rule 12 motion as to fiduciary breach claims challenging JP Morgan TDFs because Fidelity and American TDFs were not meaningful comparators); *Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at *10 (D. Utah Apr. 21, 2022) (similar). And Plaintiffs' allegations that the Alternative TDFs performed better than the challenged TDFs would not suffice to state a claim absent plausible allegations that the Alternative TDFs were meaningful benchmarks for the challenged TDFs. As Judge Starr recently explained: "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the allegedly imprudent funds." *Locascio*, 2023 WL 320000, at *6. Because the Complaint cites only comparator funds with fundamentally different investment strategies, Plaintiffs' claims in their entirety would be dismissed as a matter of law under the meaningful-benchmark standard.

Additionally, this pleading-standard question presents an opportunity for the Fifth Circuit to clarify the proper pleading standard for fiduciary-duty claims under ERISA. As the Order noted, the Fifth Circuit has yet to have any occasion to take up this issue. And the issue has ever-increasing importance, as "ERISA class actions are one of the fastest-growing areas of litigation." Brief of Amicus Curiae the U.S. Chamber of Commerce at 2, *Hughes*, No. 19-1401 (U.S. Oct. 28, 2021) ("What began as a trickle in the early 2000s (mostly lawsuits against large public companies) has in recent years become a tidal wave. Cases increased five-fold from 2019 to 2020, targeting not just for-profit businesses large and small, but also healthcare systems, universities, and other nonprofits—even the Red Cross."). The Fifth Circuit can use this case as an opportunity to provide definitive guidance, avoid forum shopping by litigants seeking to avoid the pleading standard

adopted by every other circuit to consider the issue, and avoid a flood of litigation within the Circuit proceeding to burdensome class-wide discovery without satisfying the pleading standards that other circuits, and other district courts in this Circuit, already apply.

### III. There Is Substantial Ground For Difference Of Opinion.

There are multiple reasons to find substantial grounds for a difference of opinion on this question. Among other possibilities, "[c]ourts traditionally will find a substantial ground for difference of opinion 'if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue [or] if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point.'" *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 868–69 (S.D. Tex. 2013) (quoting 4 Am. Jur. 2d Appellate Review § 123 (2012)); *see also, e.g.*, *Gonzalez v. Seal*, 702 F.3d 785, 787–88 (5th Cir. 2012) (permitting appeal on issue of whether Fifth Circuit precedent survived a conflicting Supreme Court decision); *Fisher v. Halliburton*, 667 F.3d 602, 613–14 (5th Cir. 2012) (permitting appeal on issue of first impression under the Defense Base Act in which all relevant case law came from courts in other jurisdictions interpreting parallel statutes); *Luera v. The M/V Alberta*, No. 4:07-cv-02698, Dkt. 172 (S.D. Tex. Aug. 6, 2009) (certifying appeal when Fifth Circuit precedent was factually distinguishable but had been interpreted by another circuit and district court as applicable).

The Order itself acknowledges that there is substantial authority holding that plaintiffs must plead a "meaningful benchmark" in order to plead a viable duty-of-prudence claim under ERISA. As explained in the Order, the Sixth Circuit in *Smith v. CommonSpirit Health* and the Eighth Circuit in *Meiners v. Wells Fargo and Company* "require[e] a meaningful benchmark." Op. 4. In addition, the Seventh, Ninth, and Tenth Circuits have similarly ruled that a plaintiff must allege a meaningful benchmark to avoid dismissal of this variety of claim. *See Albert v. Oshkosh Corp.*,

13

47 F.4th 570, 574 (7th Cir. 2022) ("[A] complaint cannot simply make a bare allegation that costs are too high, or returns are too low. . . . Rather, it 'must provide a sound basis for comparison—a meaningful benchmark.'" (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)); *Matney v. Barrick Gold of N. Am.*, No. 22-4045, 2023 WL 5731996 (10th Cir. Sept. 9, 2023) (holding that to "raise an inference of imprudence" based on investment fund performance or price, a plaintiff "has the burden to allege a 'meaningful benchmark'"); *Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1 (affirming that defendants did not allegedly breach their duty of prudence under ERISA "by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan"); *Matousek*, 51 F. 4th at 281 ("Among the missing details is whether they hold similar securities, have similar investment strategies, and reflect a similar risk profile. If they are indeed different, then the peer-group data is unlikely to be 'sound' or 'meaningful' on its own."). Indeed, *every* court of appeal to decide the issue has held that plaintiffs must plead facts that proposed cheaper or better performing comparator funds are a "meaningful benchmark" to state a duty-of-prudence claim under ERISA.

That the Fifth Circuit has not yet weighed in itself counsels in favor of certifying an interlocutory appeal. *See, e.g.*, *Fields*, 2021 WL 2814893, at *3 (certifying "issue of first impression in the Fifth Circuit" for interlocutory appeal); *Hines*, 2014 WL 12649849, at *2 (certifying interlocutory appeal on issue for which there is "no clear precedent . . . in the Fifth Circuit"). But the divergence of views among district courts in the Fifth Circuit further confirms there is substantial ground for disagreement. As the Court noted in the Order, "the Court's sister courts that have addressed the issue" of whether a "meaningful benchmark" requirement should be evaluated at the pleading stage "are split on the matter." Op. 4. In *Locascio*, Judge Starr explained that "meaningful benchmarks for comparison are important" and that "some courts have

14

required plaintiffs alleging breach of fiduciary duty to 'provide a sound basis for comparison—a meaningful benchmark' to show that a prudent fiduciary in like circumstances would have acted differently." 2023 WL 320000, at *6 (citations omitted). He then held that the plaintiff "needs to provide meaningful comparison *in his pleadings* to demonstrate that his selected funds are sufficiently similar benchmarks" and that the plaintiff's failure to do so warranted dismissal of the claim on the pleadings. *Id.* (emphasis added).

Citing the "lack of guidance from the Fifth Circuit," the Court opted to follow Judge Ezra's approach in *Blackmon*. In that case, Judge Ezra declined to dismiss the duty-of-prudence ERISA claims on the pleadings because an assessment of comparator funds supposedly "involves issues of fact, which cannot be determined on a motion to dismiss." 2021 WL 2190907, at *5. After Judge Ezra's decision in *Blackmon*, however, the Sixth, Seventh, Eighth, Ninth and Tenth Circuits all reached the opposite conclusions in the cases cited above. Those conflicting decisions satisfy the substantial-ground-for-difference-of-opinion requirement of 28 U.S.C. § 1292(b). *See Alex*, 2018 WL 11275541, at *2 (finding substantial ground for difference of opinion where "the law is unsettled"); *Odle v. Wal-Mart Stores Inc.*, 2013 WL 66035, at *3 (N.D. Tex. Jan. 7, 2013) (certifying an issue for interlocutory appeal where other courts have held otherwise); *EEOC v. Stanley Automotive Enterprises, Inc.*, No. 5:07-CV-206-C, 2008 WL 11350061, at *1 (N.D. Tex. Apr. 28, 2008) (certifying interlocutory appeal on issue that was "unresolved in the Fifth Circuit").

In sum, the great weight of authority holds that plaintiffs must allege a "meaningful benchmark" in order to plead a viable duty-of-prudence claim under ERISA, and there is certainly substantial ground for a difference of opinion on the Court's holding to the contrary.

**IV.    Immediate Appeal From The Order May Materially Advance The Ultimate Termination Of The Litigation.**

Finally, immediate appeal from the Order may materially advance the ultimate termination of the litigation. A "key" concern under this prong of 28 U.S.C. § 1292(b) is "whether permitting an interlocutory appeal will 'speed up the litigation.'" *Ryan*, 444 F. Supp. 2d at 723 (*Ahrenholz*, 219 F.3d at 676). In evaluating this criterion, "a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013) (citations omitted).

For the reasons already discussed in explaining why the legal question is controlling, the termination-of-litigation criterion is satisfied as well. *See supra* at 8–10. The requirement that an appeal may "materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 767 (S.D. Tex. 2010) (quoting Wright, Miller & Cooper, Fed. Prac. & Proc. Jurisdiction 2d § 3930). Because the question of law involved in the Order is controlling, reversal of the Order on appeal would require dismissal of the entire action and thereby terminate the litigation. For this reason, an immediate appeal may eliminate the need for trial altogether.

The termination-of-litigation criterion is also satisfied because interlocutory appeal could narrow the scope of time-consuming and costly discovery. This concern is particularly acute here because discovery in ERISA litigation is often especially burdensome:

> [T]he prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times. This burden, though sometimes appropriate, elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people,

16

>with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (brackets and quotations omitted); *cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 423–25 (2014) (acknowledging "the threat of costly duty-of-prudence lawsuits" and emphasizing that Rule 12(b)(6) is an "important mechanism for weeding out meritless [ERISA] claims"). An immediate appeal could eliminate or significantly reduce these costly discovery burdens by, for example, saving all parties (and the Court) the time and expense of discovery (including depositions and expert reports), dispositive and other motion practice, and a potential trial. *See* Wright & Miller, § 3930 ("The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling.").

## CONCLUSION

Defendants respectfully request that the Court certify its Order for interlocutory review.

Dated: October 30, 2023

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld, *Admitted Pro Hac Vice*
Attorney-In-Charge
Pennsylvania Bar No. 85955
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
*jeremy.blumenfeld@morganlewis.com*

David J. Levy
Texas Bar No. 12264850
S.D. Tex. No. 13725
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
*david.levy@morganlewis.com*

## CONFERRAL STATEMENT

Pursuant to LR7.1(D), the undersigned counsel avers that the movants attempted to confer with the respondents about the disposition of the motion but did not hear back by the time of filing. Should the respondents advise that they consent to the motion, the movants will advise the Court.

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record on October 30, 2023.

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld