# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| MARY LALIBERTE and MARIE MCKNIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the QUANTA SERVICES, INC. 401(K) SAVINGS PLAN, <br><br>              Plaintiffs, <br>    v. <br><br> QUANTA SERVICES, INC.; THE BOARD OF TRUSTEES OF QUANTA SERVICES, INC.; THE QUANTA SERVICES, INC. 401(K) SAVINGS PLAN COMMITTEE; and DOES No. 1-20, Whose Names Are Currently Unknown, <br><br>             Defendants. | Case No: 4:22-cv-03290 |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

---

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 3

III.    ARGUMENT ..................................................................................................... 4

    A.  Defendants do not Raise a Controlling Question of Law .................................... 5

    B.  There is no Substantial Ground for any Difference of Opinion........................ 10

    C.  Immediate Appeal from the Order is not Necessary and will not Materially Advance the Ultimate Termination of the Action ................................................................. 14

IV.    CONCLUSION.................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022)...........................................................................7, 12, 13

*Alex v. TMobile USA, Inc.*,
  2018 WL 11275541 (N.D. Tex. Apr. 16, 2018) .............................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................7

*Atain Specialty*,
  2023 WL 2774459 ........................................................................................................13

*Barnes v. McQueen*,
  2016 WL 3923875 (E.D. La. July 21, 2016) ...............................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................7

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)..........................................................................................7

*Clark-Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*,
  702 F.2d 67 (5th Cir. 1983)............................................................................................4

*Coates v. Brazoria County Tex.*,
  919 F. Supp. 2d 863 (S.D. Tex. 2013) ...............................................................1, 4, 14

*Coyer v. Univar Sols. USA Inc.*,
  1:22-cv-00362, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022)......................................7

*Davis v. Salesforce.com, Inc.*,
  2022 WL 1055557 (9th Cir. Apr. 8, 2022)...................................................................12

*Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*,
  448 F.3d 825 (5th Cir. 2006).........................................................................................4

*Fifth Third Bancorp. v. Dudenhoeffer*,
  573 U.S. 409 (2014) .........................................................................................2, 6, 7, 13

*FTC ex rel. Yost v. Educare Centre Servs., Inc.*,
  2020 WL 4334955 (W.D. Tex. Jan. 21, 2020) ..............................................................6

*Gieringer v. Cincinnati Ins. Cos.*,

   3:08-cv-267, 2010 WL 2572054 (E.D. Tenn. June 18, 2010) ..................................................... 5

*Gonzalez v. CoreCivic, Inc.*,

   1:18-cv-169-LY, 2019 WL 13150080 (W.D. Tex. June 10, 2019)............................................ 6

*Hughes v. Northwestern Univ.*,

   595 U.S. 170 (2022) ....................................................................................................... 2, 6, 7, 12

*In re ASARCO LCC*,

   513 B.R. 499 (S.D. Tex. Nov. 19, 2012)..................................................................................... 9

*In re Babcock & Wilcox*,

   2004 WL 626288 (E.D. La. Mar. 19, 2004).............................................................................. 10

*In re Text Messaging Antitrust Litig.*,

   630 F.3d 622 (7th Cir. 2010) ...................................................................................................... 6

*Jackson v. City of Atlanta, Tex.*,

   73 F.3d 60 (5th Cir. 1996)........................................................................................................... 1

*Jones v. Robinson Prop. Grp., L.P.*,

   427 F.3d 987 (5th Cir. 2005)....................................................................................................... 9

*La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana*,

   495 F. Supp. 3d 400 (M.D. La. 2020)......................................................................................... 6

*L.L.P. & D. Marine*,

   1998 WL 66100 (E.D. La. Feb. 13, 1998) .................................................................................. 4

*Locascio v. Fluor Corp.*,

   2023 WL 320000 (N.D. Tex. Jan. 18, 2023)............................................................................. 11

*Louisiana Patients' Comp. Fund Oversight Bd. v. St. Parul Fire & Matine Ins. Co.*,

   411 F.3d 585 (5th Cir. 2005) ...................................................................................................... 5

*Matney v. Barrick Gold of N.Am.*,

   80 F.4th 1136 (10th Cir. 2023).............................................................................................. 7, 12

*Matousek v. MidAmerican Energy Co.*,

   51 F.4th 274 .............................................................................................................................. 7, 13

*Maverick Field Servs., LLC v. Emaxx Ins. Servs., LLC*,

   2023 WL 6162757 (S.D. Tex. Sept. 21, 2023) ........................................................................ 13

iii

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018)..................................................................... 12

*Ramirez v. Escajeda*,
   921 F.3d 497 (5th Cir. 2019).......................................................................5

*Ryan v. Flowserve Corp.*,
   444 F. Supp. 2d 718 (N.D. Tex. 2006)............................................. 1, 5, 6, 8

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022)......................................................... 7, 12, 13

*Solis v. Universal Project Mgmt., Inc.*,
   2009 WL 2018260 (S.D. Tex. July 6, 2009) ............................................. 13

*Stoffels ex rel. SBC Tele. Concession Plan v. SBC Comms., Inc.*,
   572 F. Supp. 2d 809 (W.D. Tex. 2008) ........................................................5

*Swint v. Chambers Cnty. Comm'n*,
   514 U.S. 35 (1995) .....................................................................................4

*Tesco Corp. v. Weatherford Intern., Inc.*,
   722 F. Supp. 2d 755 (S.D. Tex. 2010) .................................................. 8, 15

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015) ...................................................................................7

*Tucker Energy Servs., Inc. v. Ricoh Americas Corp.*,
   2012 WL 2403513 (S.D. Tex. Jun. 25, 2012) ..............................................8

*U.S. ex rel. Banigan v. Organon USA, Inc.*,
   2013 WL 4786323 (S.D. Tex. Sept. 6, 2013) ............................................ 10

*United States ex rel. Steury v. Cardinal Health, Inc.*,
   625 F.3d 262 (5th Cir. 2010).......................................................................9

*Villafranca v. Ticor Title Ins. Co.*,
   2008 WL 11425704 (N.D. Tex. Nov. 25, 2008) .......................... 1, 4, 10, 14

**Statutes**

28 U.S.C. § 1291.................................................................................................1

28 U.S.C. § 1292(b) ............................................................................... 1, 4, 5, 8

29 U.S.C. § 1001.................................................................................................2

Plaintiffs, Mary Laliberte and Marie McKnight (collectively, "Plaintiffs"), individually and on behalf of the Quanta Services, Inc. 401(k) Savings Plan ("Plan") and a proposed class of participants and beneficiaries in the Plan, submit this opposition to Defendants' Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (Dkt. 58, the "Motion").

I.    **<u>INTRODUCTION</u>**

The Court's Order denying Defendants' motion to dismiss (Dkt. 53, the "Order") is well-reasoned and thoroughly supported.  Yet rather than proceed with this litigation as the Federal Rules of Civil Procedure contemplate, Defendants seek a second bite at the apple through an extraordinary interlocutory appeal of the Court's Order.  The Motion, however, fails to establish that such an appeal is warranted.  Indeed, "[Section] 1292(b) is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion." *Villafranca v. Ticor Title Ins. Co.*, No. 3:08-cv-118-K, 2008 WL 11425704, at *1 (N.D. Tex. Nov. 25, 2008) (citing *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006)).[1]

An interlocutory appeal must be granted only in "limited circumstances," where all three criteria for certification have been met and a defendant can demonstrate the "necessity" of an immediate appeal.  *Coates v. Brazoria County Tex.*, 919 F. Supp. 2d 863, 866 (S.D. Tex. 2013) (internal citations omitted).  The grounds for Defendants' Motion do not come close to justifying such an extraordinary exception.  Instead, their Motion is little more than an attempt to challenge the Court's careful consideration of well-settled applicable law and relitigate their motion to dismiss, which was properly denied.

---

[1] Of course, Courts of Appeals "generally" do not have interlocutory jurisdiction over the denial of a motion to dismiss, "as such pretrial orders are not 'final decisions' for the purposes of 28 U.S.C. § 1291."  *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 62 (5th Cir. 1996).

Defendants posit that whether Plaintiffs must plead a "meaningful benchmark" to plausibly allege an ERISA fiduciary-duty claim is a legitimate question of law necessitating immediate review by the Fifth Circuit.  *See* Motion, at 1.  As an initial matter, this ignores that the Court's findings in the Order "that Plaintiffs' allegations regarding the underperformance, high risk, and costs of the Challenged Investments, in addition to Plaintiffs' suggested comparisons between the TDFs, permit the Court to reasonably infer imprudence by the Defendants."  Order, at 5.  Moreover, the Supreme Court has already issued its guidance on this issue: the applicable pleading standard for fiduciary breach claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, is "context-specific" and requires courts to "[]evaluate the allegations as a whole" under all circumstances.  *Hughes v. Northwestern Univ.*, 595 U.S. 170, 173 (2022) (citing *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).  Given this guidance, there is no ground—let alone substantial ground— on which to find a difference of opinion.  Consequently, the actual issue is Defendants' dispute with the Court's application of settled law to the particular facts of this case.  Such an attack, however, cannot be considered a "controlling question of law" and is an improper basis for interlocutory review.  Nor is resolving a non-existent issue likely to materially advance the ultimate termination of this action or have the sweeping, substantial effect on this case—and others—that Defendants desire.

In sum, review of this Court's well-reasoned application of the uncontroversial, context-driven pleading standard in ERISA breach of fiduciary duty claims is unnecessary.  As such, interlocutory appeal is unwarranted, and the Court should deny the Motion.

## II.    **BACKGROUND**

Plaintiffs, who are former participants in the Plan, filed their Complaint on September 26, 2022.  Dkt. 1 ¶¶ 1, 9–10.  Plaintiffs allege that Defendants, as fiduciaries of the Plan, breached their fiduciary duties to the Plan by failing to appropriately monitor investments in the Plan, replace unsuitable investments, offer suitable alternative investments that were readily available throughout the Class Period.  Specifically, Plaintiffs allege that Defendants employed a fundamentally irrational decision-making process to select and monitor the Plan's investment options, as shown by the Plan's retention of the unsuitable Fidelity Freedom funds (the "Active Suite") (*id.* ¶¶ 24–25) and other objectively imprudent investments such as the American Beacon Small Cap Value Fund Class R5 ("American Beacon") (*id.* ¶¶ 50–54) and the DFA International Small Cap Value Fund Class I ("DFA") (*id.* ¶¶ 55–58).  Plaintiffs assert fiduciary breach claims (*id.* ¶¶ 78–82) (Count I), failure to monitor fiduciaries and co-fiduciary breach claims (*id.* ¶¶ 83–91) (Count II), and in the alternative, liability for knowing breach of trust claims (*id.* ¶¶ 92–94) (Count III) against Defendants.

Defendants initially moved to dismiss under Rule 12(b)(6) on December 13, 2022, re-filing their motion on December 30, 2022.  Dkt. 32, 36.  Plaintiffs filed their opposition on January 12, 2023 (Dkt. 40), and Defendants filed their reply on January 31, 2023 (Dkt. 42).  The parties later filed several decisions as supplemental authorities related to the motion to dismiss. *See* Dkt. 43, 45, 47, 52.

On September 29, 2023, the Court issued the Order denying the motion to dismiss in its entirety.  *See* Dkt.53.  The Court concluded that "Plaintiffs' allegations regarding the underperformance, high risk, and costs of the Challenged Investments, in addition to Plaintiffs' suggested comparisons between the TDFs, permit the Court to reasonably infer imprudence by

3

the Defendants." *Id.* at 5.  The Court also found that "Plaintiffs' failure to monitor and knowing breach of trust claims," which are predicated on the underlying claim for breach of fiduciary duties, must survive a motion to dismiss with the underlying claim.  *Id.* at 5–6.

## III.   ARGUMENT

"Any order denying a motion to dismiss generally is not a final, appealable order." *Villafranca*, 2008 WL 11425704, at *1 (citing *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 828–29 (5th Cir. 2006)).  Under 28 U.S.C. § 1292(b), a district court may authorize an order for appeal only if three criteria are met: (1) the question involves a controlling issue of law; (2) as to which there is a substantial ground for a difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. 1292(b).  Such appeals "represent a rarely used exception to the strong judicial policy disfavoring piecemeal appeals" and are granted only in "limited circumstances." *Coates*, 919 F. Supp. 2d at 866 (citation omitted); *see Clark-Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional.").  As such, "[t]he decision to permit such an appeal is within the district court's sound discretion." *Coates*, 919 F. Supp. 2d at 867 (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)).  "The burden of demonstrating the *necessity* of an interlocutory appeal is on the moving party." *Id.* (quoting *L.L.P. & D. Marine*, Nos. 97-1668, 97-2992, 97-3349, 1998 WL 66100, at *1 (E.D. La. Feb. 13, 1998)) (emphasis added).

Defendants fail to meet this burden.  Indeed, Defendants cannot satisfy the three criteria for certification under 28 U.S.C. § 1292(b), nor can they demonstrate any necessity that warrants the Court's approval of such a rare and exceptional request.

### A.     Defendants do not Raise a Controlling Question of Law

Although Defendants suggest that orders that qualify for interlocutory review "typically" involve a "pure question of law," Motion, at 8, the standard—in line with the "exceptional" circumstances required for certification—is higher.  Indeed, "[t]he Fifth Circuit *requires* that the question of law be a *pure* question of law; permissive interlocutory appeals are not proper for determinations that involve applications of law to fact."  *Stoffels ex rel. SBC Tele. Concession Plan v. SBC Comms., Inc.*, 572 F. Supp. 2d 809, 811 (W.D. Tex. 2008) (citing *Louisiana Patients' Comp. Fund Oversight Bd. v. St. Parul Fire & Matine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005)) (emphasis added).  It is not sufficient to label this issue a question of law merely because it involves a "legal principle"—rather, Defendants must also demonstrate that it is a *pure* question of law, which they cannot do.

"[A] question of law does *not* mean the application of settled law to disputed facts." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (emphasis in original); *see Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (denying certification of an appeal based on factual implausibility as "merely an attack on the district court's denial of [Defendant's] motion to dismiss for failure to state a claim"); *Gieringer v. Cincinnati Ins. Cos.*, 3:08-cv-267, 2010 WL 2572054, at *3 (E.D. Tenn. June 18, 2010) ("Defendant is challenging this Court's application of law to the facts because of its own disagreement with the outcome, rather than presenting a situation where there are substantial disputes as to the applicable law.").  Defendants must do more than merely "question the correctness of [the Court's] ruling or seek to obtain a second bite at the apple" to establish an issue appropriate for interlocutory appeal.  *FTC ex rel. Yost v. Educare Centre Servs., Inc.*, No. EP-19-cv-196-KC, 2020 WL 4334955, at *2 (W.D. Tex. Jan. 21, 2020) (quoting *Ryan*, 444 F. Supp. 2d at 722) (internal quotation marks omitted).

Though Defendants insist otherwise, challenging the Court's application of the well-established, fact-based, and context-driven pleading standard for fiduciary breach claims does not constitute a "question of law."  It is, rather, a clearcut demonstration of Defendants questioning the Court's application of law to the facts.[2]

The pleading standard for ERISA fiduciary breach claims is settled law.  As recognized by the Supreme Court in *Hughes*, "the content of the duty of prudence turns on the 'circumstances … prevailing' at the time the fiduciary acts," such that "the appropriate inquiry will necessarily be context specific."  595 U.S. at 173 (citing *Dudenhoeffer*, 573 U.S. at 425). Indeed, the authorities relied on by Defendants do not dispute this standard.  *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) ("Nudging the complaint past the plausibility threshold depends on the "totality of the specific allegations."); *Matney v. Barrick*

---

[2]Defendants cite several "authorities" to imply that the appropriate pleading standard at the motion-to-dismiss stage is "routinely" considered a question of law, but in doing so they ignore significant context.  *See* Motion, at 8–9.  For instance, while *Alex v. TMobile USA, Inc.* does certify an appeal from an order denying a motion to dismiss, it does so on a narrow controlling question of law that concerns statutory immunities and *not* pleading standards: "whether, as a matter of law, the use of property that hinders or delays treatment, without other intervening causes, can never be the proximate cause of an injury."  No. 3:17-cv-1532-M, 2018 WL 11275541, at *2 (N.D. Tex. Apr. 16, 2018).  Similarly, *Gonzalez v. CoreCivic, Inc.* examines "[w]hether the TVPA applies to work programs in federal immigration detention facilities," *not* pleading standards.  No. 1:18-cv-169-LY, 2019 WL 13150080, at *1 (W.D. Tex. June 10, 2019). Further, the court in *La. State Conf. of Nat'l Ass'n for the Advancement of Colored People v. Louisiana* is concerned with exclusive subject matter jurisdiction, *not* a pleading standard, and clarifies that the significant impact of a reversal in that matter would be the resulting change of venue, *not* the dismissal itself.  *See* 495 F. Supp. 3d 400, 413–415 (M.D. La. 2020).  Defendants fail to recognize that the fact that an interlocutory appeal is certified from the procedural posture of a motion to dismiss does not, in and of itself, transform the issue into a question of the "appropriate pleading standard at the motion-to-dismiss stage."  Nor is reliance on *In re Text Messaging Antitrust Litig.* appropriate: the Seventh Circuit clarified that it was performing an interlocutory review of the application of a pleading standard because, at the time, "*Twombly* [was] a recent decision, and its scope unsettled . . ."  630 F.3d 622, 626 (7th Cir. 2010).  Indeed, the Seventh Circuit expressly prefaced, "[n]ot that routine applications of well-settled legal standards to facts alleged in a complaint are appropriate for interlocutory appeal."  *Id.*

*Gold of N.Am.*, 80 F.4th 1136, 1146 (10th Cir. 2023) (citing the same standard from *Hughes*);

*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164–65 (6th Cir. 2022) (same); *Albert v. Oshkosh*

*Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) ("Courts apply a 'careful, sensitive scrutiny of a

complaint's allegations to 'divide the plausible sheep from the meritless goats.'"); *Coyer v.*

*Univar Sols. USA Inc.*, No. 1:22-cv-00362, 2022 WL 4534791, at *3 (N.D. Ill. Sept. 28, 2022)

("Such an inquiry is necessarily context specific[.]) (citing *Dudenhoeffer*, 573 U.S. at 425).  It is

similarly well-settled that courts must "[]evaluate the allegations as a whole" and "consider

whether [the plaintiff] plausibly allege[s] a violation of the duty of prudence as articulated in

*Tibble* [*v. Edison Int'l*, 575 U.S. 523 (2015)], applying the pleading standard discussed in

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007)."  *Hughes*, 595 U.S. at 176 (citations shortened); *see also Braden v. Wal-Mart Stores, Inc.*,

588 F.3d 585, 596 n.7 (8th Cir. 2009) ("[A]pplication of Rules 8 and 12(b)(6) is a 'context-

specific task,' and our ultimate conclusions rest on the totality of the specific allegations in this

case." (citation omitted)).

      Defendants' attempt to re-litigate their motion to dismiss, then, inherently rests on their

own disagreement over how the Court applied the settled pleading standard for ERISA actions to

the specific facts of this case.  Such a challenge is an improper attack on the Court's judgment

and cannot be certified as a "question of law."  Defendants' counsel recently made the exact

same argument in seeking interlocutor appeal of a motion to dismiss order in an analogous case

in the District of Massachusetts, and that court correctly rejected their argument:

> Although Defendants maintain that the Order involves a controlling question of
> law, namely, the pleading standard applicable to ERISA breach-of-duty claims, it is
> clear that Defendants' true issue is this Court's application of the pleading standard
> to the particular facts of this case.

*Monteiro v. The Children's Hospital Corp.*, No. 1:22-cv-10069-AK, Dkt. 66 (D. Mass,

July 20, 2023) (denying motion to certify interlocutory appeal of order denying motion to

dismiss).

Importantly, even if the Court were to consider this issue a *pure* question of law,

Defendants cannot demonstrate that it is a *controlling* question for purposes of § 1292(b)

certification.  Whether an issue of law is controlling "generally hinges upon its potential to have

some impact on the course of the litigation."  *Tesco Corp. v. Weatherford Intern., Inc.*, 722 F.

Supp. 2d 755, 766 (S.D. Tex. 2010) (citing *Ryan*, 444 F. Supp. at 723).  "[A]n issue is not

seen as controlling if its resolution on appeal would have little or no effect on subsequent

proceedings."  *Id.*  Defendants may be under the mistaken impression that reversal would be

"wholly dispositive of this litigation," Motion, at 11, but in all likelihood, Plaintiffs would be

granted leave to amend the Complaint to address any ostensible factual deficiencies.[3]  *See Tucker*

*Energy Servs., Inc. v. Ricoh Americas Corp.*, No. H-12-0417, 2012 WL 2403513, at *1 (S.D. Tex.

Jun. 25, 2012) ("[A] district court must possess a substantial reason [such as undue delay, bad

faith, or dilatory motive] to deny a request for leave to amend[.]") (quoting *Jones v. Robinson*

*Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), and *United States ex rel. Steury v. Cardinal*

*Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010)).

---

[3]Ironically, Defendants provide "examples" of how Plaintiffs could address alleged deficiencies
in the Complaint.  *See* Motion, at 11.  Not only are these suggestions needless, as the Complaint
already contains such information, but they demonstrate that Plaintiffs allege sufficient facts to
survive a motion to dismiss *and* that amending the Complaint to strengthen these allegations,
should it be necessary, would be entirely feasible.  *See* Dkt. 1 at ¶ 31, 50, 55 (explaining why it is
appropriate to measure active funds against their own manager-chosen benchmark index funds);
¶ 36 (comparing glide paths, risk profiles, and investment strategies); ¶ 54 (comparing the
American Beacon Fund to similar "active domestic small cap value funds"); ¶ 58 (comparing the
DFA Fund to similar "active foreign small cap value funds").

Further, this Court has already ruled on Defendants' motion to dismiss after reviewing the facts and applicable law.  Not only is an interlocutory appeal unnecessary, but, as one court in this District explained in *In re ASARCO LCC*, it would be a costly drain on judicial efficiency:

> There is no reason to grant an interlocutory appeal unless the Court were in a position to also grant the actual appeal and dismiss the case. Otherwise, instead of simplifying matters, this Court would be adding an additional law of needless costs and expense. This Court **DENIES** the appeal because it cannot grant the Motion to Dismiss based upon the record before it. Keeping in mind that this Court at the dismissal stage must consider all factual allegations made by the Trust to be true, this Court cannot say the matter must be dismissed.

513 B.R. 499, 504 (S.D. Tex. Nov. 19, 2012).  As in *ASARCO*, resolving an appeal in Defendants' favor in this matter would have no substantial effect on proceedings and, therefore, such an appeal cannot be said to concern a *controlling* question.

Nor can Defendants give their attempt to relitigate the Court's decision greater significance by framing it as a grand opportunity to influence a "tidal wave" of ERISA cases. *See* Motion, at 11–12.  Defendants are off-base in suggesting that this is an "opportunity" for the Fifth Circuit to "clarify the proper pleading standard for fiduciary-duty claims under ERISA." Motion, at 12.  The pleading standard for fiduciary breach claims is well-established and not reasonably disputed, leaving nothing to "clarify."  *See* Section I, *supra*, and II, *infra*.  In light of this, and the context-specific inquiry required of courts reviewing pleadings asserting breach of fiduciary duty claims under ERISA, any immediate appellate review here would have minimal impact on other cases.[4]

Accordingly, Defendants present no "controlling question of law" and fail to establish the necessity of an interlocutory appeal.

---

[4]Further, even in the unlikely even that an appeal was to have some influence on other cases, "[certification] would undoubtedly delay justice in other pending cases as other courts await a possible ruling at the Fifth Circuit's discretion."  *Villafranca*, 2008 WL 11425704, at *4.

**B.      There is no Substantial Ground for any Difference of Opinion**

Once again, Defendants mistake their dissatisfaction with this Court's ruling for evidence that there is a substantial difference of opinion among courts.  Of course, "[d]isagreement with a court's ruling does not constitute a substantial difference, nor does disagreement with applicable precedent."  *U.S. ex rel. Banigan v. Organon USA, Inc.*, No. H-08-3314, 2013 WL 4786323, at *2 (S.D. Tex. Sept. 6, 2013); *see Barnes v. McQueen*, No. 14-2636, 2016 WL 3923875, at *2 (E.D. La. July 21, 2016) ("Difference of opinion refers to an unsettled state of law or judicial opinion, not mere discontent by the appealing party.") (quoting *In re Babcock & Wilcox*, No. 03-01065, 2004 WL 626288, at *2 (E.D. La. Mar. 19, 2004)).  As previously discussed, Section I, *supra*, the applicable pleading standard is well-settled law.  As such, Defendants cannot identify any true "difference of opinion," much less a "substantial ground" for that difference.

Defendants manufacture a "split on the matter" by reducing the established pleading standard to one that categorically requires a "meaningful benchmark"—or, rather, the trumped up and overly-restrictive interpretation of a "meaningful benchmark" that Defendants proffer, in contradiction to established precedent.  *See* Motion, at 14.  Defendants' misleading cherry-picking of authorities is demonstrated well by the full context of the court's reasoning in *Locascio v. Fluor Corp.*:

> Now, meaningful benchmarks for comparison are important, and, in similar cases, *some* courts have required plaintiffs alleging breach of fiduciary duty to "provide a sound basis for comparison—a meaningful benchmark" to show that a prudent fiduciary in like circumstances would have acted differently. So what is a meaningful benchmark? The Fifth Circuit has yet to define it exactly, but clues that guide the definition exist in different courts. For example, courts have reasoned that distinguishing between actively and passively managed accounts is important to determine a meaningful benchmark. Additionally, benchmark funds with similar investment strategy can aid in an analysis of a meaningful benchmark. *The crux of [Plaintiff]'s pleading issue lies in the fact that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful*

10

> *benchmarks against which to compare the performance of"* the allegedly imprudent
> *funds.* [Plaintiff] needs to provide meaningful comparison in his pleadings to
> demonstrate that his selected funds are sufficiently similar benchmarks. From here,
> [Plaintiff] can more accurately analyze the process by which the Defendants
> selected and retained the Fluor TDFs and the other Challenged Investments.

No. 3:22-cv-0154-X, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (emphasis added). The

*Locascio* court acknowledges that *some* courts have analyzed particular benchmarks when their

context-specific inquiries benefited from such analysis, but it does not find that one is required in

*all* circumstances. *Id.* Nor do the court's suggestions as to what might be evidence of a

meaningful benchmark amount to actually *requiring* certain showings in *every* situation.[5]

Rather, the *Locascio* court emphasizes that the "crux" of fiduciary breach pleadings is that

plaintiffs must do more than "simply labeling languages as 'comparable'"—which *may* be

achieved by identifying certain characteristics of benchmarks. *Id.* This premise aligns with the

well-settled pleading standard that Defendants try to ignore: the "context-specific inquiry"

performed by courts will vary across unique fact patterns and will dictate what, in any given

case, constitutes a "meaningful benchmark" (or whether, for that matter, one would be useful).

*See Matney*, 80 F.4th at 1148 ("What makes a cost comparison meaningful? The answer to this

question will depend on context because 'the content of the duty of prudence' is necessarily

'context specific.'") (quoting *Hughes*, 595 U.S. at 173).

---

[5]Regardless, Plaintiffs' allegations do, in fact, align with the *Locascio* court's suggestions. Plaintiffs explain that, in this context, it is reasonable to compare actively managed funds to passively managed funds when using an index as a benchmark is one way in which managers evaluate their own performance (and when it is an appropriate way for prudent fiduciaries to determine whether a plan is getting additional returns to justify the increased expense and risk of active investments). *See* Dkt. 1 at ¶¶ 31, 50, 55. Plaintiffs also use actively managed funds as benchmarks and clearly distinguish them from the passive investments. *Id.* at ¶¶ 47, 53–54, 58. Further, Plaintiffs plead that the benchmark funds have similar (or even identical) investment strategies to the challenged funds. *Id.* at ¶¶ 30, 36, 53–54, 58. Thus, even if the context here called for the *Locascio* court's specific approach, the Complaint would be sufficient to survive a motion to dismiss.

The misinterpretations of Defendants' authorities persist. The court in *Smith*, where (unlike here) the actively-managed challenged funds were not compared to any other actively managed funds, for example, finds that a "fund's underperformance, as compared to a 'meaningful benchmark,' *may* offer a building block for a claim of imprudence"—not that a benchmark is *required* or that there are certain requirements for that benchmark. *Smith*, 37 F.4th at 1167 (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)) (emphasis added). Rather, the court surmised that "side-by-side comparison of how two funds performed in *a narrow window of time*, *with no consideration of their distinct objectives*, will not tell a fiduciary which is the more prudent long-term investment option." *Id.* (emphasis added). Similarly, the *Meiners* court's decision turned on the fact that it was not enough for the plaintiff to rely on *one* comparator fund with a *different* investment strategy, based on the "totality of the specific allegations" in that case. 898 F.3d at 822–23. In *Albert*, the court reiterated that a fiduciary merely offering actively managed funds as an option is not evidence *on its own* of imprudence. *See* 47 F.4th at 581–82; *see also Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) (finding that imprudence cannot be shown based *only* on defendants' not considering passively managed funds). The bottom line, even of the cases that Defendants rely on, is that "there is no one-size-fits-all approach" for courts to follow, as fiduciary breach claims are context-specific and depend on the "totality of the specific allegations." *Matousek*, 51 F.4th at 280–81 (finding that "on its own" raw performance data fell short of establishing imprudence). Addressing these same authorities in its denial of a materially identical motion for certification of an interlocutory appeal, the court in *Monteiro* aptly explained:

> Indeed, even the out-of-circuit authority the Defendants cite to in support of their request for interlocutory appeal acknowledge the need for a "careful, context-

specific scrutiny of a complaint's allegations." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022) (citing *Fifth Third Bancrorp*, 573 U.S. at 425); see *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022) (citation omitted). Each of those cases engaged in the requisite context-specific inquiry, as the Court did here. None of those cases created bright-line rules regarding the pleading standard in ERISA breach-of-duty cases. Any difference in outcomes is easily explained by the particular facts pleaded in particular complaints—not by a difference in the applicable pleading standard. This is an insufficient basis for certifying interlocutory appeal.

No. 1:22-cv-10069-AK, Dkt. 66 (D. Mass, July 20, 2023).

Defendants are also mistaken that interlocutory appeal is warranted simply because the Fifth Circuit has not yet seen the need to "weigh in" on a matter of well-settled law. *See* Motion, at 14. "The mere fact that a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Atain Specialty*, 2023 WL 2774459, at *1 (quoting *Solis v. Universal Project Mgmt., Inc.*, 2009 WL 2018260, at *3 (S.D. Tex. July 6, 2009)) (internal citation mark omitted). Nor is it enough for Defendants to claim that there is a "divergence of views among district courts," Motion, at 14, which—aside from being incorrect—does not rise to the level of substantial differences of opinion. *See Maverick Field Servs., LLC v. Emaxx Ins. Servs., LLC*, No. H-23-2513, 2023 WL 6162757, at *1 (S.D. Tex. Sept. 21, 2023) ("The threshold for establishing a substantial difference of opinion is higher than mere disagreement or even the existence of some contrary authority.") (quoting *Coates*, 919 F. Supp. 2d at 868); *Villafranca*, 2008 WL 11425704, at *3 ("Some mixed precedent from other circuit courts cannot be read to create a substantial disagreement where none exists.").

Thus, the Court was required only to analyze the specific facts before it, consider the different approaches courts have taken within the bounds of the pleading standard, and decide whether Plaintiffs sufficiently pled fiduciary breach claims in this particular context. That the Court decided to follow Judge Ezra's reasoning in *Blackmon* and did not scrutinize the factual

weight of the benchmarks pled in the complaint in the exact same way as courts in Defendants' preferred authorities does *not* mean that the Court has failed to apply the pleading standard appropriately to these specific facts. Rather, it demonstrates that the Court carefully considered the contours of this case and ruled accordingly.

Defendants can establish no significant ground for a difference of opinion and therefore are unable to establish that an immediate appeal is necessary. Defendants' challenge runs up against a settled pleading standard that all of Defendants' own authorities adopt. Further, even if it were proper for the Court to consider the application of settled law to facts in an interlocutory appeal, Defendants cannot demonstrate that the deficiencies some courts have found in different factual pleadings exist in Plaintiffs' Complaint.

### C.  Immediate Appeal from the Order is not Necessary and will not Materially Advance the Ultimate Termination of the Action

"The requirement that an appeal should materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Tesco*, 722 F. Supp. 2d at 767. For many of the same reasons discussed before, Section I, *supra*, an immediate appeal from the Court's Order would not materially advance the ultimate termination of the action precisely because the appeal would not concern a controlling question of law. Not only is there already applicable, settled, and controlling precedent setting the pleading standard for fiduciary breach claims under ERISA, but dismissal would not preclude Plaintiffs from amending the Complaint nor signal any significant change in the law.

Defendants' invocation of discovery costs, Motion, at 16–17, is largely irrelevant to the ultimate termination of the action, given that Defendants would likely be subjected to discovery

following an amended complaint, were an amended complaint necessary (it is not).[6]  Far from

"saving all parties (and the Court) the time and expense of discovery (including depositions and

expert reports), dispositive and other motion practice, and a potential trial," Motion, at 17,

Defendants are merely burdening the Court with this meritless bid for interlocutory appeal.

Thus, not only are discovery costs irrelevant to the termination of the action, but Defendants'

assertion that an appeal would reduce such costs is wholly inaccurate.

In sum, Defendants fail to present a controlling question of law, let alone one that is

subject to substantial difference of opinion or capable of speeding along the ultimate termination

of this action.  Defendants, therefore, failed to establish any of the three criteria for certification

under § 1292(b), showing that such an appeal is not necessary.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion and refuse to certify its Order for interlocutory review.

Date: November 20, 2023                             Respectfully submitted,

*/s/ John S. "Jack" Edwards*
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex. No. 38095
Thomas R. Ajamie
Texas Bar No. 00952400
S.D. Tex. No. 6165
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Fascimile: (713) 860-1699
Email: jedwards@ajamie.com
            tajamie@ajamie.com

---

[6]Indeed, there is no stay of discovery pending the Motion; thus, Defendants are presently required to engage in discovery.

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

*Attorneys for Plaintiffs, the Plan,
and the Proposed Class*

16

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record on November 20, 2023.

/s/ *John S. "Jack" Edwards*
John S. "Jack" Edwards, Jr.
