# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| MARY LALIBERTE and MARIE MCKNIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the QUANTA SERVICES, INC. 401(K) SAVINGS PLAN,<br><br>               Plaintiffs,<br><br>v.<br><br>QUANTA SERVICES, INC.; THE BOARD OF TRUSTEES OF QUANTA SERVICES, INC.; THE QUANTA SERVICES, INC. 401(K) SAVINGS PLAN COMMITTEE; and DOES No. 1-20, Whose Names Are Currently Unknown,<br><br>               Defendants. | Civil Action: 4:22-cv-03290 |

## STIPULATED ESI PROTOCOL

The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

## I.    Purpose

This Stipulation will govern discovery of ESI (including scanned hard-copy documents) in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

## II.     Cooperation

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter with respect to the discovery of ESI.

## III.     Resource Person

The Parties have identified to each other the resource persons who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each ESI resource person will be, or will have access to those who are, knowledgeable about the technical aspects of ESI, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The Parties will rely on the resource persons, as needed, to confer about ESI and to help resolve disputes without court intervention.  The resource person is not necessarily the person who would be designated to testify related to a person or entity's preservation efforts, document retention policies, collection efforts, or other related matters.

## IV.     General

A.     The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.     This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

C.     To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

D.      Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.  This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.  Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and any binding Confidentiality and Protective Order that may be entered by the Court, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

E.      Confidential Information. "Confidential Information" has the meaning provided in Section B.1. of the Parties' Stipulated Protective Order.

F.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent compliance with this

Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

G.      Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail), or by telephone, disputes regarding the issues set forth herein in conjunction with each parties' resource person prior to filing a motion with the Court or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

H.      Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  If there is a dispute concerning the scope of a Party's preservation or collection efforts, the burden is on the Receiving Parties to fully explain their reasons for believing that additional efforts are reasonable and proportionate.  In particular, before initiating discovery about preservation, collection, or review, the Parties shall confer concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information.  Discovery into such matters may be compelled only on a showing of good cause considering at least the aforementioned factors.

## V.      Production Format – Hardcopy

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should

not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images.  To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**VI.     Production Format – Electronically Stored Information**

Unless specifically addressed elsewhere in this protocol, ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format.  All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data.  The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with Section II.  An .opt image cross-reference file should also be provided for all TIFF images.  Specifications for the load files are listed in Appendix 2.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line, and comments and presenter's notes in PowerPoint files

should be visible.  Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color, but only to the extent that the Requesting Party demonstrates that the loss of color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorial or wholesale requests are deemed invalid.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph, or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

## VII.   Previously Collected and Produced Data

The Parties agree that there is no obligation to re-collect or re-produce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation.  This includes not

requiring either Party to re-produce productions in the production format outlined in this ESI Stipulation.

**VIII.    Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents**

In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive.  For all attachments withheld as non-responsive, the Producing Party agrees to produce as part of the metadata load files the ESI metadata listed in Appendix A (with the exception of text).  When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.  Nothing in the section shall be construed to limit any Parties' right to challenge the appropriateness of the non-responsive designation.

**IX.    Production Format - Structured Data**

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

**X.    Production Format – Text and/or Chat Messaging**

Text or chat messages may be produced by capturing information through "screen shots" or "screen captures" and converting the same into images along with corresponding extracted text or OCR.

**XI.    Production Format - Media**

Documents shall be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, or where not practicable to do so, may be provided in an accompanying letter.  Any document production that may contain Confidential information shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable, consistent with Section 13.7 of the Parties' Stipulated Protective Order.  If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

**XII.    Processing and Other Specifications**

A.    <u>On-Site Inspections</u>: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties.  As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions it deems appropriate.

B.    <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document.  Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique, sequential, and maintains a constant length across the entire document production.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

C.      <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using Coordinated Universal Time (UTC). If either Party processes ESI using a different time zone, the time zone must be consistent across all processing and must be disclosed to the Receiving Party.

D.      <u>Global or Horizontal Deduplication</u>:  Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

E.      <u>Email Thread Suppression</u>:  Each Party may also deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain.

F.      <u>Embedded Objects</u>:  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access, and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

G.      <u>Compressed Files</u>:  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

H.    <u>Redactions</u>:  The Producing Party can redact documents for privilege or otherwise Confidential Information, personally identifiable information, and protected health information within a responsive document.  The Parties may, at their own expense, apply redactions to non-responsive highly sensitive or confidential data within relevant documents.  If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding such redactions before they are made.  If the issue cannot be resolved, the Parties will seek resolution from the Court.

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format).  The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction.  For redacted items that were originally ESI, non-redacted metadata fields will be provided.

I.    <u>No Designation of Discovery Requests</u>:  Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

J.    <u>Foreign Language Documents</u>: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

**XIII.  Identification and Collection of Documents**

A.    Except as otherwise agreed upon in this Stipulation, the Parties can meet and confer in an effort to agree upon the following:

1.      List of records custodians;

2.      Search methodology to be applied, including, but not limited to, search terms and date restrictions, and technology-assisted review;

3.      Location of relevant data sources, including custodial and non-custodial; and

4.      Access to Confidential Information and the means by which the Parties agree to preserve and collect relevant, unique, non-personal information.

B.      <u>Search Methodology</u>:

1.      Email and Non-Email: The Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.  The Parties acknowledge and agree that there may be exigent circumstances that make collection of certain types of documents (e.g., hard copy documents) overly burdensome if not impossible and therefore not reasonably accessible.

2.      The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.  Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

**XIV.   Preservation**

A.      The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B.      The Parties agree that data, including Confidential Information, should be preserved for only the time for which this litigation is pending or is reasonably anticipated.  All Confidential Information shall be maintained and/or destroyed pursuant to normal business practice and/or local Data Protection Laws and/or as agreed to by the parties at the completion of this litigation.

C.      The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain relevant information additional to other sources such that the associated burden and costs outweigh any benefit:

     i.      Data maintained or duplicated in any electronic backup system;

     ii.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives;

     iii.      Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems;

     iv.      On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located;

     v.      Data stored on photocopiers, scanners and fax machines;

     vi.      Data in metadata fields that are frequently updated automatically, such as last-opened dates;

vii.      Instant messages such as messages sent on Lync Online, Microsoft Communicator, or any other instant message platform;

viii.      Chat or instant messages such as messages sent via Teams private channels or group chats;

ix.      Server, system, or network logs;

x.      Logs of calls made from cellular or land-line phones, including voicemails;

xi.      Social media;

xii.      Legacy data or data remaining from systems no longer in use that is unintelligible on the systems currently in use;

xiii.      Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments; and

xiv.      Protected Material that is currently located in a foreign jurisdiction that maintains a data protection regime which impedes the cross-border transfer of personal information and which is not proportional to the claims or defenses of this matter.

## XV.   Privilege and Privilege Logs

A.      The Parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications to or from outside legal counsel for Defendants; (b) communications to or from inside counsel after the commencement of this litigation; (c) work product of outside counsel and parties; (d) any internal communications within a law firm; and (e) any communications regarding litigation holds or preservation, collection, or review in this or any Litigation.

B.      The Parties agree that redacted documents do not need to be included on the privilege log.

C.      The Parties agree that for documents withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document (except those exempted above) claimed as privileged, an export of all or an agreed-upon subset of the metadata fields listed below to the extent such information exists and has not been suppressed or redacted for privilege.  The export should include, at a minimum, the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- NUMBER_OF_ATTACHMENTS
- CUSTODIAN(S)
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- FILEXT
- DOCTYPE
- AUTHOR
- CREATEDDATE
- HASH (MD5 OR SHA-1)
- REDACTED
- PRIVILEGED PERSON (only provided if not already identified in other metadata fields)
- PRIV_TYPE (e.g., Attorney-Client; Attorney Work Product)

Alternatively, the Parties are willing to discuss the use of categorical privilege logs as a means of reducing the expense and burden associated with traditional "document by document" privilege logs.

D.      The Parties further agree that this summary log satisfies the Producing Party's obligations under Federal Rule of Civil Procedure 26(b)(5).

E.      If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information.  Thereafter, the Parties shall promptly meet and confer in an effort to resolve any dispute.

F.      The Parties shall enter into a separate agreement with respect to the logging of hard-copy privileged documents, to the extent such documents exist.

## XVI.   Production of Privileged Material

A.      Production of Privileged Material is governed by Section 12 of the Parties' Stipulated Protective Order.

B.      Rule 502(b)(2).   The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Stipulation.

## XVII.  Third Party Documents

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third Parties to object to a subpoena.

XVIII. **Good Faith**

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fifteen (15) days after so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with the other affected Parties to the action.

XIX. **No Effect on Discovery or Admissibility**

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except objections to the authenticity of the documents produced and stipulated as authentic by a Party, are preserved and may be asserted at any time.

XX. **Costs and Burden**

Defendants believe that the burdens placed on them during this litigation, including during discovery, must be proportional to the litigation itself, including the nature of the claims and the amount in controversy.  *See* Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b)(2)(C).  All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

## XXI.   Authenticity

A document produced in this litigation shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used.  Extracted text files shall not be used in any proceeding as a substitute for the image of any document.  This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

## XXII.  Confidentiality and Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Stipulated Protective Order.

## XXIII. Rolling Productions

The Parties understand that this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Stipulation waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations as prescribed in the Federal Rules of Civil Procedure, the Parties' obligations under Federal Rule of Evidence 502(d), and other obligations pursuant to the Stipulated Protective Order entered in this case.

**XXIV.  Discovery Deficiency**

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1.  As used in this section, "good cause" requires more than mere speculation. The Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process and explain their reasons for believing that additional efforts are reasonable and proportional.

2.  Upon a showing of good cause, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional production criteria to cure the deficiency.

3. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in the form of a joint discovery letter.

**XXV.  Modification**

This Stipulation may be modified by a Stipulation of the Parties or by the Court for good cause shown.

| /s/ John C. Roberts | /s/ Jeremy P. Blumenfeld |
|---|---|
| Alec J. Berin<br>James C. Shah<br>John C. Roberts<br>**Miller Shah LLP**<br>1845 Walnut Street<br>Suite 806<br>Philadelphia, PA 19103<br>Tel.: (866) 540-5505<br>ajberin@millershah.com | Jeremy P. Blumenfeld<br>**Morgan, Lewis & Bockius LLP**<br>1701 Market Street<br>Philadelphia, PA 19103<br>Tel: (215) 963-5000<br>Fax: (215) 963-5001<br>jeremy.blumenfeld@morganlewis.com |

jcshah@millershah.com
jcroberts@millershah.com

James E. Miller
Laurie Rubinow
**Miller Shah LLP**
65 Main Street
Chester, CT 06412
Tel: (866) 540-5505
jemiller@millershah.com
lrubinow@millershah.com

Kolin C. Tang
**Miller Shah LLP**
19712 MacArthur Blvd.
Irvine, CA 92612
Tel: (866) 540-5505
Fax: (866) 300-7367
kctang@millershah.com

John S. "Jack" Edwards, Jr.
Thomas R. Ajamie
**Ajamie LLP**
711 Louisiana, Suite 2150
Houston, TX 77002
Tel: (713) 860-1600
Fax: (713) 860-1699
jedwards@ajamie.com
tajamie@ajamie.com

Mark K. Gyandoh
**Capozzi Adler, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel.: (610) 890-0200
markg@capozziadler.com

Donald R. Reavy
**Capozzi Adler, P.C.**
2933 North Front Street
Harrisburg, PA 17110
Tel.: (717) 233-4101
donr@capozziadler.com

**Counsel for Plaintiffs**

Keri L. Engelman
**Morgan, Lewis & Bockius LLP**
One Federal Street
Boston, MA  02110-1726
Tel: (617) 341-7828
Fax: (617) 341-7701
keri.engelman@morganlewis.com

Samuel Block
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive
Chicago, IL 60601
Tel: (312) 324-1715
Fax: (312) 324-1001
samuel.block@morganlewis.com

Mathew McKenna
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 739-5412
Fax: (202) 739-3001
mathew.mckenna@morganlewis.com

**Counsel for Defendants**

Dated: January 31, 2024

Dated: _____, 2024            IT IS SO ORDERED:


_____
Hon. Alfred H. Bennett
United States District Judge

## APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |

| | | |
|---|---|---|
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source should be the start of the relative path. |
| AUTHOR | Jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |

| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
|---|---|---|
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields.  These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

## Appendix 2: Load File Formats

**Image Load Files**
- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

**Metadata Load Files**
- The metadata load file must use the following delimiters: Column delimiter:
  - ASCII 020
  - Text qualifier: ASCII 254
  - New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- All date/time fields must be produced in "MM/DD/YYYY  HH:MM:SS AM/PM (UTC)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of January, 2024 I electronically filed the forgoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld