**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| MARY LALIBERTE, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>QUANTA SERVICES, INC.,<br><br>     Defendant. | Case No. 4:22-cv-03290 |

---

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND**
**MEMORANDUM OF LAW IN SUPPORT**

---

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ................................................................................................ 1

II.    **FACTUAL BACKGROUND** ............................................................................ 2

   **A.**  **The Plan and the Parties** .................................................................... 3

   **B.**  **Plaintiffs' Claims** ............................................................................... 4

   **C.**  **The Plan's Losses** ............................................................................... 5

   **D.**  **The Proposed Class** ........................................................................... 5

III.   **LEGAL STANDARD** ...................................................................................... 6

IV.   **ARGUMENT** ..................................................................................................... 7

   **A.**  **The Proposed Class is Readily Ascertainable** ................................ 7

   **B.**  **Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(a)** ............. 7

      **1.**  **The Class is Sufficiently Numerous** ...................................... 7

      **2.**  **Common Questions of Law and Fact Abound** ...................... 8

      **3.**  **Plaintiffs' Claims are Typical of the Class** ......................... 10

      **4.**  **Plaintiffs and Class Counsel Will Protect the Interests of the Class** ...................... 13

   **C.**  **Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(b)(1)** ....... 16

      **1.**  **The Class satisfies the requirements of Rule 23(b)(1)(A)** ................... 16

      **2.**  **The Class satisfies the requirements of Rule 23(b)(1)(B)** ................... 19

V.    **CONCLUSION** ................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Allianz Asset Mgmt. of Am., L.P.*,
2017 WL 2655678 (C.D. Cal. June 15, 2017) ................................................................... 12, 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................................... 7, 13, 17

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 445 (2013) ................................................................................................................. 6

*Angell v. GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023) .................................................................................................. 10

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ....................................................................... 13

*Boley v. Universal Health Servs., Inc.*,
337 F.R.D. 626 (E.D. Pa. 2021) ............................................................................................ 12

*Brieger v. Tellabs, Inc.*,
245 F.R.D. 345 (N.D. Ill. Sept. 19, 2007) ............................................................................ 11

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ................................................................................................... 1

*Casa Orlando Apartments, Ltd. v. Federal National Mortgage Association*,
624 F.3d 185 (5th Cir. 2010) ................................................................................................. 18

*Chavez v. Plan Benefit Servs., Inc*,
2022 WL 1493605 (W.D. Tex. Mar. 29, 2022) ..................................................................... 18

*Chavez v. Plan Benefit Servs., Inc*,
108 F.4th 297 (5th Cir. 2024) ................................................................................................ 18

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ...................................................................... 17

*Coppel v. SeaWorld Parks & Ent., Inc.*,
2024 WL 3086701 (S.D. Cal. May 8, 2024) .......................................................................... 18

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ............................................................. 11, 13, 18, 20

iii

*DeBremaecker v. Short*,
   433 F.2d 733 (5th Cir. 1970) ................................................................................. 7

*DiFelice v. US Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) ........................................................................ 5, 11

*Douglin v. GreatBanc Trust Co., Inc.*,
   115 F.Supp.3d 404 (S.D.N.Y. 2015) ...................................................................... 20

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ................................................................................ 13

*Frey v. First Nat'l Bank Sw.*,
   602 F. App'x 164 (5th Cir. 2015) ........................................................................... 7

*Garthwait v. Eversource Energy Co.*,
   2022 WL 1657469 (D. Conn. May 25, 2022) ...................................................... 1, 18

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ................................................................................ 15

*Harmon v. Shell Oil Co.*,
   2023 WL 5758889 (S.D. Tex. Sept. 6, 2023) .................................................... 17, 19

*Henderson v. Emory Univ.*,
   2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ....................................................... 17

*Huang v. TriNet HR III, Inc.*, (M.D. Fla. Oct. 21, 2022)
   2022 WL 13631836 (M.D. Fla. Oct. 21, 2022) ..................................................... 18

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ............................................................................................ 9

*Iannone v. AutoZone, Inc.*,
   2022 WL 17485953 (W.D. Tenn. Dec. 7, 2022) ..................................................... 9

*Iannone v. AutoZone, Inc.*,
   2022 WL 5432740 (W.D. Tenn. Aug 12, 2022) ..................................................... 17

*In re 2014 RadioShack ERISA Litig.*,
   2016 WL 6561597 (N.D. Tex. Jan. 25, 2016) ......................................................... 7

*In re Citigroup Pension Plan ERISA Litig.*,
   241 F.R.D. 172 (S.D.N.Y. 2006) .......................................................................... 17

iv

*In re Deepwater Horizon*,
   739 F.3d (5th Cir. 2014) ................................................................... 8

*In re Enron Corp.*,
   2006 WL 1662596 (S.D. Tex. June 7, 2006) ........................... 2, 11, 13, 19

*In re Jeld-wen Holding, Inc. Sec. Litig.*,
   2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ................................. 7

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ......................................................... 10

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ......................................................... 6

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ................................................. 17

*Kennedy v. United Healthcare of Ohio, Inc.*,
   206 F.R.D. 191 (S.D. Ohio 2002) ................................................ 19

*Knight v. Lavine*,
   2013 WL 427880 (E.D. Va. Feb. 4, 2013) ................................. 11, 13

*Langbecker v. Electronic Data Systems Corp*
   476 F.3d 299 (5th Cir. 2007) ....................................................... 19

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ......................................................... 8

*Maldonado v. Oschner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ......................................................... 6

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ........................................................................ 5

*McWhorter v. Serv. Corp. Int'l*,
   2024 WL 4165074 (S.D. Tex. Sept. 11, 2024) ...................... 12, 15, 17

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ......................................................... 8

*Munro v. Univ. of S. California*,
   2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) .............................. 17

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................ 20

*Pizarro v. Home Depot, Inc.*,
  2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) .......................................................... 17

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  2019 WL 2428631 (S.D.N.Y. June 11, 2019) .......................................................... 13

*Ramirez v. J.C. Penney Corp.*,
  2017 WL 6462355 (E.D. Tex. Nov. 30, 2017) ........................................................... 2

*Ramos v. Banner Health,*
  325 F.R.D. 382 (D. Colo. 2018). ............................................................................. 17

*Rodriguez v. Hy-Vee, Inc.*,
  2023 WL 4358705 (S.D. Iowa Apr. 26, 2023) ......................................................... 17

*Sacerdote v. New York Univ.*,
  2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ...................................................... 17, 20

*Sims v. BB & T Corp.*,
  2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ......................................................... 15

*Slade v. Progressive Sec. Ins. Co.*,
  856 F.3d 408 (5th Cir. 2017) .................................................................................. 13

*Slipchenko v. Brunel Energy, Inc.*,
  2013 WL 4677918 (S.D. Tex. Aug. 30, 2013) ............................................................ 8

*Spence v. Am. Airlines, Inc.*,
  2024 WL 3635309 (N.D. Tex. May 22, 2024) .................................................. *passim*

*Stegemann v. Gannet Co., Inc.*,
  2022 WL 17067496 (E.D. Va. Nov. 17, 2022) ......................................................... 20

*Stirman v. Exxon Corp.*,
  280 F.3d 554 (5th Cir. 2002) .................................................................................. 12

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966) .......................................................................................... 14, 15

*Sweda v. Univ. of Pennsylvania,*
  2021 WL 2665722 (E.D. Pa. June 29, 2021) ........................................................... 17

*Tatum v. R.J. Reynolds Tobacco Co.*,
　254 F.R.D. 59 (M.D.N.C. 2008) ........................................................................ 11, 20

*Tussey v. ABB, Inc.*,
　2007 WL 4289694 (W.D. Mo. 2007) .................................................................... 10

*Vellali v. Yale Univ.*,
　333 F.R.D. 10, 17 (D. Conn. 2019) ...................................................................... 17

*Wal-Mart Stores Inc. v. Dukes*,
　564 U.S. 338 (2011) ................................................................................. 6, 8, 10

*Wildman v. Am. Century Servs., LLC*,
　2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ....................................................... 18

**Statutes**

29 U.S.C. § 1001 ........................................................................................... 6, 1

29 U.S.C. § 1002 ........................................................................................... 6, 3

29 U.S.C. § 1002(7) ...................................................................................... 6, 4

29 U.S.C. § 1102 .............................................................................................. 6

29 U.S.C. § 1104 ........................................................................................... 6, 4

29 U.S.C. § 1109(a) ...................................................................................... 6, 5

29 U.S.C. § 1132(a)(2) .................................................................................. 7, 1

29 U.S.C. §§ 1109 and 1132(a)(2) ..................................................................... 9

**Rules**

Fed. R. Civ. P. 23(a)(1) .................................................................................. 7, 8

Fed. R. Civ. P. 23(a)(2) .................................................................................. 7, 8

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................... *passim*

Fed. R. Civ. P. 23(b)(1)(B) ........................................................................... 7, 20

Fed. R. Civ. P 23(g)(1) ..................................................................................... 7

Federal Rule of Civil Procedure 23 .................................................................*passim*

Federal Rules of Civil Procedure 23(a) ........................................ 2, 8, 13, 16

Federal Rules of Civil Procedure 23(a)(3)................................................ 10

Federal Rules of Civil Procedure 23(b) ..................................................... 16

Federal Rules of Civil Procedure 23(b)(1)...............................................*passim*

Federal Rules of Civil Procedure 23(b)(1)(A) ........................................... 17

Federal Rules of Civil Procedure 23(b)(1)(B) ........................................... 17

Federal Rules of Civil Procedure 23(g) ..................................................... 16

**Other Authorities**

2 *Newberg and Rubenstein on Class Actions* § 4:21 (West 6th ed 2023) .................................... 17

## I.  <u>INTRODUCTION</u>

Plaintiffs Mary Laliberte and Marie McKnight (collectively, "Plaintiffs"), individually and on behalf of the Quanta Services, Inc. 401(k) Savings Plan ("Plan") and as representatives of a proposed class of similarly situated plan participants and beneficiaries defined below ("Class"), respectfully submit this Memorandum of Law in support of their Motion for Class Certification ("Motion") and hereby move this Court, pursuant to Federal Rule of Civil Procedure 23, for an Order certifying this action ("Action") as a class action, appointing Plaintiffs as representatives of the Class ("Class Representatives"), and appointing Plaintiffs' counsel as counsel for the Class ("Class Counsel").

In this Action, Plaintiffs claim that Defendant Quanta Services, Inc. ("Quanta" or "Defendant") breached fiduciary duties owed to the Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, a standard that is "the highest known to the law." *Bussian v. RJR Nabisco, Inc*., 223 F.3d 286, 294 (5th Cir. 2000) (citation omitted). Specifically, Plaintiffs contend that Quanta and the fiduciaries it appointed to manage the Plan failed to appropriately monitor the Plan's investments and consequently retained imprudent investments in the Plan.  To redress breaches of fiduciary duty, ERISA authorizes any plan participant to bring an action in a representative capacity on behalf of a plan to enforce ERISA's fiduciary duties and remedial provisions.  *See* 29 U.S.C. §§ 1132(a)(2), 1109(a).

Courts in this Circuit and around the country have recognized that "[c]lass certification is routine in ERISA cases because it 'furthers the purpose of ERISA section 502(a)(2), acting as a procedural safeguard to ensure that recovery inures to the benefit of the [P]lan as a whole.'" *Spence v. Am. Airlines, Inc.*, No. 4:23-CV-00552-O, 2024 WL 3635309, at *2 (N.D. Tex. May 22, 2024) (quoting *Garthwait v. Eversource Energy Co.*, No. 20-cv-00902, 2022 WL 1657469, at

*9 (D. Conn. May 25, 2022)); *In re Enron Corp.*, No. 01-3913, 2006 WL 1662596, at *14 (S.D. Tex. June 7, 2006); *Ramirez v. J.C. Penney Corp.*, No. 14-601, 2017 WL 6462355, at *3 (E.D. Tex. Nov. 30, 2017)*, report and rec. adopted*, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017). Plaintiffs' claims fall squarely within this paradigm, as their claims arise from the Plan-level conduct of Defendant and its appointees and Plaintiffs seek remedies for the Plan on behalf of all participants. Indeed, the conduct of the Plan's fiduciaries challenged by Plaintiffs was entirely directed at the Plan as a whole and did not differ in any material respect as it relates to individual participants and beneficiaries in the Plan. This is consistent with the structure of the Plan, which provides one menu of investment options and one qualified default investment alternative ("QDIA") to all participants and beneficiaries. There is no credible argument that the prerequisites of Rule 23 are not satisfied.

Plaintiffs also have demonstrated steadfast commitment to serving as class representatives and pursuing redress on behalf of the Plan and the Class. No unique defenses or conflicts exist that could prevent Plaintiffs from serving effectively as Class Representatives. Similarly, Plaintiffs' counsel have, since the commencement of this action, used their experience and resources to advance the interests of the proposed class, and should be appointed as Class Counsel. For these reasons and all those apparent in the record, the Court should certify this Action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1).

## II.      FACTUAL BACKGROUND

The facts of this Action are recited in detail in the Class Action Complaint ("Complaint") filed on September 26, 2022. Accordingly, this memorandum will only restate facts relevant to the Motion.

A.     <u>**The Plan and the Parties**</u>

The Plan is a large 401(k) defined contribution retirement plan for eligible employees of

Quanta.  *See* Declaration of John C. Roberts ("Roberts Decl.") Ex. A., Quanta Summary

Plan Description, at QUANTA_000039.  During the Class Period, the Plan had more than 16,000

participants and account balances and assets totaling approximately $1.21 billion, placing it in

the top 0.1% of all defined contribution plans by plan size.  *See* Roberts Decl. Ex. B.,

Quanta Services, Inc. Retirement and Savings Plan 2016 Annual Return/Report of Employee

Benefit Plan Form 5500 at QUANTA _001756 Part II, item 6(g) and QUANTA _001769

Schedule H, Part I, item 1l.  Plan management and administration was applied uniformly to all

participants.  *See* Roberts Decl. Ex. C., 2015 Quanta Services, Inc. 401(k) Savings Plan

Investment Policy Statement ("IPS"), at QUANTA_001406-411 (describing Plan investment

objectives and roles and responsibilities of parties involved in Plan management and

administration).

Defendant is a fiduciary of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002 and

1102.[1]  *Id.*  Quanta appointed the Committee and its members to administer the plan on its

behalf.  *Id.*, at QUANTA_001406.  The Committee was charged with the selection and periodic

monitoring of investment alternatives under the Plan and retaining service providers on behalf of

the Plan, among other significant responsibilities for Plan management and administration.  *Id.*

at QUANTA_001408.  As a fiduciary of the plan, Defendant is obligated to act for the exclusive

---

[1]Plaintiffs originally also named the Board of Directors a/k/a the Board of Trustees of Quanta
Services, Inc. ("Board") and its members and the Investment Committee of Quanta Services, Inc.
(the "Committee") as defendants in this case, but the parties stipulated to dismiss these entities
without prejudice and also agreed that, in the event any final judgment is entered in this case on
the basis of the conduct of the Board, the Committee, or their individual members, Quanta will
assume any liability and satisfy damages on behalf of the Plan fiduciaries.  Dkt. 55.

benefit of participants, offer participants prudent investment choices, and ensure such choices remain appropriate for continued investment.  *See* 29 U.S.C. §1104.

Plaintiffs are former employees of Quanta and former participants in the Plan under 29 U.S.C. § 1002(7).  *See* Declaration of Mary Laliberte ("Laliberte Decl."), ¶ 5; Declaration of Marie McKnight ("McKnight Decl."), ¶ 5.  During the proposed class period ("Class Period"), Plaintiffs' Plan investments included several different vintages of the Fidelity Freedom Funds' Active suite ("Freedom Funds"), as well as the American Beacon Small Cap Value Fund ("America Beacon Fund") and DFA International Small Cap Value Fund ("DFA Fund") (together with Freedom Funds and American Beacon Fund, the "Challenged Investments").  Defendant's conduct – or, perhaps more accurately, inaction – in failing to monitor and imprudently retaining the Challenged Investments occurred at the Plan level, without distinction among participants. In other words, individual Plan participants who invested in the Challenged Investments during the Class Period are similarly, if not identically, situated with respect to the conduct underlying the claims at issue in this action.

### B.      Plaintiffs' Claims

Plaintiffs claim Defendant breached its fiduciary duty by failing to appropriately monitor the Plan's investments, resulting in the imprudent retention of the Challenged Investments in the Plan throughout the Class Period.  Defendant's misconduct underlying this claim was Plan-wide, and Plaintiffs seek to recover losses stemming from this imprudent retention on behalf of the Plan, making Plaintiffs' claim ideally suited for class treatment under Rule 23.  Indeed, a class action is superior to all other feasible alternatives for managing and resolving this matter.  Given the nature of these Plan-wide ERISA claims, separate actions concerning Defendant's conduct risk consistent adjudications and resulting enforcement of incompatible standards.  Management

4

of this Action will also be straightforward, as proof and defenses of liability and damages can and will be proffered on a Class-wide (and Plan-wide) basis.  Similarly, Plaintiffs' claims on behalf of the Plan are ideally suited for class treatment.

**C.      The Plan's Losses**

Plaintiffs claim that the imprudent retention of the Challenged Investments caused losses to the Plan as a result of substantially reduced capital appreciation.  The losses resulting from the breaches of fiduciary duty can be measured on a Plan-wide basis, consistent with methods of measuring Plan-wide losses routinely accepted in similar ERISA actions.  Specifically, the Plan's losses can be determined by measuring the difference between the terminal balances in the Challenged Investments and the terminal balances that the Plan would have experienced if the Challenged Investments had been replaced by a suitable alternative investment.  *See DiFelice v. US Airways, Inc.*, 235 F.R.D. 70, 75 (E.D. Va. 2006).  All of the data necessary to perform these calculations exists in the Plan's records – namely, the quarterly reports provided by the Plan's investment advisor and data concerning the Plan's asset balances, contributions and withdrawals, and the performance of the Plan's investments.  *See* Roberts Decl., Ex. D, Fourth Quarter 2015 Investment Review, QUANTA_100812.

**D.      The Proposed Class**

ERISA authorizes plan participants to bring an action on behalf of a plan to enforce the statute's fiduciary obligations and remedial provisions and to recover all losses to a plan caused by a breach of fiduciary duty.  *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).  Plaintiffs bring this action "in a representative capacity on behalf of the [P]lan as a whole" to recover losses to the Plan caused by Defendant's breaches and to obtain equitable relief.  *Mass. Mut. Life Ins. Co. v.*

*Russell*, 473 U.S. 134, 142 n.9 (1985).  Plaintiffs seek certification of the following proposed

Class:

> All participants and beneficiaries in the Quanta Services, Inc. 401(k) Savings Plan
> at any time on or after September 26, 2016 and continuing to the date of
> judgment, or such earlier date that the Court determines is appropriate and just,
> including any beneficiary of a deceased person who was a participant in the Plan
> at any time during the Class Period.

Members of the Class can be readily identified from participant account records in the custody of

Defendant or the Plan's recordkeepers.

### III.   <u>LEGAL STANDARD</u>

The class certification analysis under Rule 23 has two primary components: (1) the Court

must find that the claims and proposed class meet the four requirements of Rule 23(a); and (2)

the Court must find that the action meets the requirements of at least one subsection of Rule

23(b).  *See Maldonado v. Oschner Clinic Found.,* 493 F.3d 521, 523 (5th Cir. 2007).  In addition,

the "ascertainability requirement" found by the Fifth Circuit to be implicit in Rule 23 requires

the proposed class to be "adequately defined and clearly ascertainable."  *See John v. Nat'l Sec.*

*Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007).

While the court must conduct a "rigorous analysis" to determine whether the elements of

Rule 23 have been satisfied, *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011), "Rule

23 grants courts no license to engage in free-ranging merits inquiries at the class certification

stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 445, 466 (2013).  "Merits

questions may be considered to the extent – but only to the extent – that they are relevant to

determining whether Rule 23 prerequisites for class certification are satisfied."  *Id.*  District

courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of

flexibility in application which will in the particular case 'best serve the ends of justice for the

affected parties and … promote judicial efficiency.'" *In re Jeld-wen Holding, Inc. Sec. Litig.*, No 3:20-CV-112-JAG, 2021 WL 1186326, at *2, n.6 (E.D. Va. Mar. 29, 2021) (quotation omitted).

## IV.   ARGUMENT

### A.   The Proposed Class is Readily Ascertainable

So long as the Court can ascertain the identity of class members "at some stage of the procedure," the ascertainability requirement is satisfied. *Frey v. First Nat'l Bank Sw.,* 602 F. App'x 164, 168 (5th Cir. 2015). The Fifth Circuit has articulated that this threshold is met given that class members can be ascertained based on a set of objective criteria. *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970). In ERISA cases, the proposed class is clearly defined based on participation (or beneficiary status) in the Plan. Given that the proposed Class's membership status during the Class Period, including Plaintiffs, can be determined from the Plan's own records, there can be no serious argument that this threshold requirement is not met. This is consistent with rulings throughout the Fifth Circuit concluding that the ascertainability requirement is met when the identity of class members is "ascertainable from records kept with respect to the Plans and from other objective criteria." *In re 2014 RadioShack ERISA Litig.* No. 4:14-cv-00959-O, 2016 WL 6561597 7, at *1 (N.D. Tex. Jan. 25, 2016).

### B.   Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(a)

The requirements of Rule 23(a) are often referred to as numerosity, commonality, typicality, and adequacy of representation. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997). Plaintiffs and the proposed Class satisfy each of the Rule 23(a) prerequisites.

#### 1.   The Class is Sufficiently Numerous

The numerosity requirement of Rule 23 requires that a proposed class be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The requirement is easily

met here.  Courts in the Fifth Circuit have certified classes in the context of ERISA litigation with notably fewer members than the proposed Class.  *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("[T]he size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement."); *Slipchenko v. Brunel Energy, Inc.,* No. 11-1465, 2013 WL 4677918, at *6 (S.D. Tex. Aug. 30, 2013).  As evidenced by the Plan's Form 5500 filings, the Plan contained upwards of 16,000 participants and beneficiaries during the Class Period.  Roberts Decl., Ex. B, at QUANTA_001756.  Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirement.

### 2.     Common Questions of Law and Fact Abound

The commonality requirement of Rule 23 requires that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation."  *Wal-Mart,* 564 U.S. at 350 (internal quotations omitted).  There need not be a litany of attainable common questions or answers; "'[E]ven a single common question will do.'"  *In re Deepwater Horizon,* 739 F.3d at 812 (5th Cir. 2014) (quoting *Wal-Mart,* 564 U.S. at 359).  Establishing commonality is predicated on the ability of the proposed Class to "prove that the claims of every class member 'depend upon a common contention … that is capable of class-wide resolution.'" *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012) (quoting *Wal-Mart,* 564 U.S. at 350).  Even if the damages are diverse, finding in favor of Plaintiffs on their ERISA claims would also resolve the ERISA claims of the class.  *See In re Deepwater Horizon*, 739 F.3d at 810–12 (explaining that commonality exists when class members suffered the same injury from the alleged injurious conduct even when the resulting damages are diverse).

The proposed Class clearly meets this requirement, as actions involving breaches of fiduciary duty under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2) involve legal and factual questions that are inherently common to all participants and beneficiaries of a plan. *See Hughes v. Nw. Univ.,* 142 S. Ct. 737, 724 (2022). Thus, commonality is inherent to Plaintiffs' claims. The nature of this case involves uniform conduct executed by the fiduciaries of the Plan, and the question of whether such conduct breached a fiduciary duty is enough to satisfy the commonality requirement, as "a breach of fiduciary duty affects all participants and beneficiaries." *Iannone v. AutoZone, Inc.,* No. 19-cv-02779, 2022 WL 17485953, at *6 (W.D. Tenn. Dec. 7, 2022). Determining whether a defendant's retention of an underperforming investment breached a fiduciary duty will rely on common evidence that will lead to common answers driving the resolution of the claim. This circumstance has led courts to find that ERISA breach of fiduciary duty claims satisfy the commonality requirement. *Spence*, 2024 WL 3635309, at *6. The uniformity of such conduct was corroborated by fiduciaries of the Plan, who confirmed that their actions were not tailored to participants, but, rather, that all fiduciary action was taken and considered at the Plan level. Roberts Decl., Ex. E, Excerpts of Deposition of Richard Eagar, at 57:7-14.

Questions regarding a breach of fiduciary duty are not the only commonalities shared by the proposed Class. Other common questions include: (1) whether Defendant breached its duties to the Plan by failing to appropriately monitor the Challenged Investments; (2) whether Defendant was imprudent in retaining the Challenged Investments despite consistent underperformance; (3) whether Defendant appropriately monitored and reviewed the performance and advice provided to them by its retained third-party advisor; (4) and whether its breaches caused plan losses. Such common questions are sufficient to meet the commonality

requirement, as they will "generate common answers apt to drive the resolution" of Quanta's liability. *Wal-Mart,* 564 U.S. at 350.

The focus of any claim regarding an ERISA breach of fiduciary duty is that of the actions and conduct of Defendant. *Tussey v. ABB, Inc.,* 2007 WL 4289694, at *5 (W.D. Mo. 2007). Defendant's actions were taken at the Plan level and impacted all participants and beneficiaries of the Plan during the Class Period, meaning that determining whether a fiduciary duty was breached at the Plan level would resolve all claims made by members of the proposed Class. *See Spence*, 2024 WL 3635309, at *6. Given that the claim of the proposed Class poses at least one common question – whether Defendant properly carried out its fiduciary duties – and given that any determination made will provide equal resolution to all members of the proposed Class, the commonality prerequisite is satisfied. *Id.*

### 3.     Plaintiffs' Claims are Typical of the Class

Rule 23(a)(3) mandates that the claims of the representative parties be typical of the claims of the class. Typicality is satisfied when "the named plaintiff's claims have the same essential characteristics of the putative class." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) (internal quotation marks omitted) (quoting 5 James WM. Moore et al., Moore's Federal Practice P 23.24[4] (3d ed. 2000)).

The nature of claims relating to breach of ERISA fiduciary duties satisfy the typicality requirement, as the representative nature of ERISA litigation means that Plaintiffs' claims are "necessarily typical of those of the rest of the class." *Enron Corp.,* 2006 WL 1662596, at *11 (citation omitted); *see also Cunningham v. Cornell Univ.,* No. 16-cv-6625-PKC, 2019 WL

10

275827, at *7 (S.D.N.Y. Jan. 22, 2019) (finding typicality requirement to be met when plaintiffs "alleged that the defendants' failure to manage the Plans affected all proposed members of the class"). This case is brought on behalf of the Plan as a whole entity, and "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 66 (M.D.N.C. 2008). Thus, one participant's fiduciary breach claim applies to all participants and beneficiaries of the Plan. *See Spence*, 2024 WL 3635309, at *7 ("By the very nature of claims and underlying misconduct alleged, Plaintiff's claims "arise from the same course of events and turn on the same legal issues as the claims of class members: the [D]efendant[s'] alleged breach of fiduciary duty harming the Plan.") (cleaned up); *see also Knight v. Lavine,* No. 1:12-CV-611, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013) ("The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class."); *DiFelice*, 235 F.R.D. at 79 (same); *Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 350 (N.D. Ill. Sept. 19, 2007) (finding that plaintiffs' "claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan").

Indeed, both participants and beneficiaries of the Plan were not treated as distinct by Defendant and were instead subject to the same alleged fiduciary mismanagement by Defendant throughout the Class Period. Testimony from Plan fiduciaries confirms this, as fiduciary action was taken not on a participant-to-participant basis, but exclusively on the Plan level. Roberts Decl., Ex. E, at 57:7-14.[2]

---

[2] Any argument that Plaintiffs' claims are rendered atypical based on their risk tolerance, level of investment in the each of the Challenged Investments, or the timing of their investment in the Challenged Investments, holds no water. Even if these claims were to be substantiated by the

"The Fifth Circuit holds 'Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *McWhorter v. Serv. Corp. Int'l*, No. 4:22-CV-02256, 2024 WL 4165074, at *9 (S.D. Tex. Sept. 11, 2024) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Plaintiffs' claims are inherently typical of all members of the proposed Class: "Defendants either breached their fiduciary duties, or they did not." *Spence*, 2024 WL 3635309, at *7. Plaintiffs' claims "have the same essential characteristics" of the entirety of the proposed Class, and such claims are connected in a manner that ensures the fair protection of all Class Members. *Id.*, at *8. Such class action claims invoking ERISA are inherently representative; the asserted causes of action are typical of the proposed Class. *Enron Corp.,* 2006 WL 1662596, at *11; *Cunningham*, 2019 WL 275827, at *7.

---

record (which they are not), they remain irrelevant in the context of the typicality of Plaintiffs' claims. That is because these claims are brought on behalf of the Plan as a whole. The Challenged Investments were monitored and retained by the Plan's fiduciaries for the Plan as a whole. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,* 2017 WL 2655678, at *5 (C.D. Cal. June 15, 2017) ("That the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), does not change the nature of their claims or the legal arguments they would make to prove Defendants' liability."); *see also Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 634–36 (E.D. Pa. 2021), aff'd, 36 F.4th 124, 134 (3d Cir. 2022) (finding these purported participant-oriented "differences relate to degree of injury and level of recovery" and do not defeat typicality). Defendant may contend that Plaintiffs' claims are rendered atypical of the Class based on their risk tolerance, level of investment in the each of the Challenged Investments, or the timing of their investment in the Challenged Investments, among other immaterial differences between the various participants in a participant-directed 401(k) plan. Even if these claims were to be substantiated by the record (which they are not), they remain irrelevant in the context of the typicality of Plaintiffs' claims. These claims are brought on behalf of the Plan as a whole.

4.      __Plaintiffs and Class Counsel Will Protect the Interests of the Class__

The adequacy requirement of Rule 23 mandates that Plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem,* 521 U.S. at 625.  Plaintiffs and Class Counsel satisfy all three requirements laid out by Rule 23: "(1) the zeal and competence of the representatives' counsel"; "(2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees"; and "(3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent."  *Slade v. Progressive Sec. Ins. Co.,* 856 F.3d 408, 412 (5th Cir. 2017) (cleaned up) (citing *Feder v. Elec. Data Sys. Corp.,* 429 F.3d 125, 130 (5th Cir. 2005)).

> i.      Plaintiffs have no conflicts with other Class members and will vigorously prosecute this action on behalf of the Class

It is inherent to ERISA claims that Plaintiffs' interests are entirely tethered to and tightly aligned with those of all other members of the proposed Class; indeed, it is the "general rule that there is a 'relatively low likelihood of intra-class conflict'" in fiduciary breach actions "because the recovery is to the Plan, not to the individual Plaintiffs."  *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-563 (JMF), 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (citation omitted).  Plaintiffs bring this case on behalf of the entire Plan and therefore share the same interests as all other Plan participants and beneficiaries.  *See Knight*, 2013 WL 427880, at *4. The proposed Class's interests are unified.  *See Spence*, 2024 WL 3635309, at *8 ("The shared legal position, objective in establishing Defendant's liability, and ultimate relief sought eliminate any conflicts between Plaintiff's individual interests and the interests of the class.").

13

A class representative need only demonstrate a basic understanding of the claims and a willingness to engage in the case, requirements that Plaintiffs undoubtedly surpass. *See Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 367 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of the Class and their understanding of the nature of their claims and duties as proposed Class Representatives. *See* Laliberte Decl., ¶¶ 6-11; McKnight Decl., ¶¶ 6-11. Further, Plaintiffs have affirmed that they have and will continue to represent the interests of the other Class members as they would their own. *Id*.

Plaintiffs have and will continue to vigorously prosecute this Action on behalf of all members of the proposed Class. To date, Plaintiffs have met and exceeded their duty to the proposed Class by, *inter alia*: (a) providing information to counsel prior to and throughout the litigation of the Action; (b) reviewing pleadings and other filings; (c) providing documents and assisting counsel in discovery matters; (d) maintaining communication with counsel, including regular conference calls and email exchanges, to monitor the progress of the Action; and (e) sitting for their depositions. *See* Laliberte Decl., ¶ 9; McKnight Decl., ¶ 9. Plaintiffs are also committed to seeing this Action through to its conclusion and undertaking any responsibilities required of them as class representatives, including continuing to assist counsel in discovery matters, participating in any mediation or other proceedings, and testifying at deposition and trial. *See* Laliberte Decl., ¶ 10; McKnight Decl., ¶ 10. Evidence of this type has supported class representative appointments in similar ERISA actions. *See Urakhchin,* 2017 WL 2655678, at *6.

Additionally, Plaintiffs understand the nature of their claims and their duties as class representatives. *See* Laliberte Decl., ¶¶ 4, 10; McKnight Decl., ¶¶ 4, 10; *see also Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 430 (4th Cir. 2003). "In a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and

discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Id.* (citations omitted); *McWhorter*, 2024 WL 4165074, at *14 (citation omitted) ("'ERISA itself represents a highly dense regulation, and claims arising from it are equally complex. That a plaintiff might not fully understand the facts and legal theories of this complex ERISA action is understandable.'").

This guidance is particularly relevant here, where "the complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make the plaintiffs inadequate representatives." *Sims v. BB & T Corp.,* 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017) (citing *Surowitz,* 383 U.S. at 372– 73).  Not only have Plaintiffs adequately demonstrated their understanding of the claims at issue, but proposed Class Counsel, as described *infra*, have extensive experience and knowledge of complex ERISA class action litigation.  S*ee* Roberts Decl., ¶¶ 19-24.

ii.     Plaintiffs' counsel have no conflicts with the Class, are qualified and experienced, and will vigorously prosecute the action on behalf of the Class

Plaintiffs have engaged qualified and capable counsel, who have and will continue to vigorously prosecute this Action on behalf of the proposed Class.  Plaintiffs are represented by Miller Shah LLP ("Miller Shah"), Capozzi Adler PC ("Capozzi Adler"), and Ajamie LLP ("Ajamie"), firms with extensive experience litigating complex class actions, including ERISA actions, and the ability and resources to vigorously prosecute this Action.  *See* Roberts Decl., ¶¶ 19-24.

To date, Miller Shah, Capozzi Adler, and Ajamie have pursued and protected the interests of the Class, as evidenced by their advancement of this Action, including the filing of detailed, comprehensive pleadings, briefing on several motions, and substantial discovery efforts.  *See*

Roberts Decl., ¶¶ 9-13.  Miller Shah, Capozzi Adler, and Ajamie satisfy Rule 23(g) and should be appointed as Class Counsel.

### C.     Plaintiffs' Claims and the Proposed Class are Certifiable Under Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b).  *See* Fed. R. Civ. P. 23(b) (identifying three types of class actions that must apply to maintain a class action if Rule 23(a)'s requirements are also met).  Alleged breaches by a fiduciary to a large class of beneficiaries present a "paradigmatic" example of a Rule 23(b)(1) class.  *Spence*, 2024 WL 3635309, at *10.  Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and . . . prosecuting separate actions by or against individual class members would create risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed R. Civ. P. 23(b)(1).  As explained below, certification is appropriate under either subpart of Rule 23(b)(1).

### 1.     The Class satisfies the requirements of Rule 23(b)(1)(A)

Rule 23(b)(1)(A) facilitates class certification in cases where "prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  This is applicable to "cases where the party is obligated by law to treat the members of the class alike[.]"  *Amchem,* 521 U.S. at 614 (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A) ("One person may have rights against, or be

under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct.").  Indeed, courts have found that the "language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike."  *Spence,* 2024 WL 3635309, at *10 (quoting *In re Citigroup Pension Plan ERISA Litig.,* 241 F.R.D. 172, 179 (S.D.N.Y. 2006)).

As this Court explained in *McWhorter v. Serv. Corp. Int'l*, No. 4:22-CV-02256, 2024 WL 4165074, at *15–16 (S.D. Tex. Sept. 11, 2024), just nine days ago:

> A respected treatise on class actions states that the "derivative nature of ERISA [breach of fiduciary duty] claims" makes them "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." William B. Rubenstein, 2 *Newberg and Rubenstein on Class Actions* § 4:21 (West 6th ed 2023) (internal quotations and citation omitted); see also *Kanawi*, 254 F.R.D. at 111: "Most ERISA class action cases are certified under Rule 23(b)(1)."
>
> Certification under Rule 23(b)(1)(A) or (B) is thus frequently found to be appropriate for claims like those asserted here under ERISA.  *See Harmon*, 2023 WL 5758889 at *8–9 (certifying recordkeeping fees claim under Rule 23(b)(1)(A)); *Munro*, 2019 WL 7842551 at *10 (certifying recordkeeping fees claim under Rule 23(b)(1)(A) or, alternatively, (B)); *Henderson*, 2018 WL 6332343 at *9–10 (same); *Ramos*, 325 F.R.D. at 397 (same); *Sacerdote*, 2018 WL 840364 at *6 (same); *Vellali*, 333 F.R.D. at 18 (same); *Pizarro*, 2020 WL 6939810 at *12–15 (same); *Rodriguez*, 2023 WL 4358705 at *2–3 (same); *Sweda*, 2021 WL 2665722 at *4–5 (same); *Iannone*, 2022 WL 5432740 at *13–14 (same); *Clark*, 2018 WL 1801946 at *9–10 (certifying recordkeeping fees claim and share class claim under Rule 23(b)(1)(A) or, alternatively, (B)); *Huang*, 2022 WL 13631836 at *10 (same); *Cunningham*, 2019 WL 275827 at *7–8 (same); *Garthwait*, 2022 WL 1657469 at *15 (same); *Coppel*, —— F.R.D. at ——, 2024 WL 3086701 at *19–21; *Wildman*, 2017 WL 6045487 at *5–6 (same).
>
> Defendants argue that the class shouldn't be certified as such because the Fifth Circuit has held that certification under (b)(1)(A) is inappropriate "when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different

17

plaintiffs." Dkt 52 at 21, citing *Casa Orlando Apartments, Ltd. v. Federal National Mortgage Association*, 624 F.3d 185, 197 (5th Cir. 2010); see also *Chavez*, 108 F.4th 297, 314–16 (declining to certify ERISA class under Rule 23(b)(1)).[3]

That concern isn't present here. To the extent that Clark and Hartshorn seek monetary relief, it's sought only as to the Plan. Specifically, the relief sought includes declaration that Defendants breached their fiduciary duties, removal of fiduciaries, surcharge against Defendants and in favor of the Plan for all amounts involved in any improper transactions, reformation of the Plan to pay only reasonable recordkeeping expenses, and attorney fees. Dkt 26 at 38–39. As such, in adjudicating this action, no award of varying levels of money damages will be made to different class members. As noted above, any award will be of a surcharge in favor of the Plan itself, which will then be allocated to individual accounts by Defendants according to their ongoing fiduciary duties. See Dkt 51 at 8.

This again places emphasis on the fact that Clark and Hartshorn seek Plan-wide relief. Because this is so, allowing various, individual participants to pursue separate actions could result in conflicting standards for Defendants in operating the Plan, which would no doubt prove untenable in practice. Indeed, the Fifth Circuit, when noting in *Langbecker v. Electronic Data Systems Corp.* that certification of ERISA class action under 23(b)(1) is likely appropriate for injunctive and plan-wide monetary relief, observed, "A judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay." 476 F.3d 299, 318 (5th Cir. 2007); see also *Harmon*, 2023 WL 5758889 at *8 (certifying recordkeeping fee claim under 23(b)(1)(A) because of risk of inconsistent judgments across individual cases that would result in "conflicting and incompatible standards of conduct" for plan administrator) (internal quotations and record citation omitted).

Certification under Rule 23(b)(1)(A) is appropriate.

---

[3]In *Chavez v. Plan Benefit Servs., Inc.*, the Fifth Circuit Court of Appeals reversed certification under 23(b)(1)(B) and not under 23(b)(1)(A), in a multi-plan class case where the "district court's analysis completely fail[ed] to account for the central fact that this proposed class involves vastly different plans and fees." 108 F.4th 297, 314–15 (5th Cir. 2024). Here, of course, as in *McWhorter*, there is only one plan and all relief is sought on behalf of that unitary plan. Of course, if the Court determines that certification under Rule 23(b)(1) is inappropriate for any reason, it should certify under 23(b)(3), for the reasons that was deemed appropriate in *Chavez*. *Chavez v. Plan Benefit Servs., Inc*, No. 1:17-CV-659-LY, 2022 WL 1493605, at *22 (W.D. Tex. Mar. 29, 2022), *aff'd sub nom. Chavez v. Plan Benefit Servs., Inc.*, 77 F.4th 370 (5th Cir. 2023), *opinion withdrawn and superseded on reh'g*, 108 F.4th 297 (5th Cir. 2024), *and aff'd in part, rev'd in part and remanded sub nom. Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297 (5th Cir. 2024) (confirming superiority and predominance elements).

The representative capacity within which ERISA litigation operates makes ERISA suits a sort of paradigmatic' example of a Rule 23(b)(1) class, such that courts in the Fifth Circuit have certified classes under Rule 23(b)(1)(A) in cases regarding improper investment allegations similar to those levied by Plaintiffs. *Enron Corp.,* 2006 WL 1662596, at *15. It is, therefore, appropriate to certify the proposed Class under Rule 23(b)(1)(A). All members of the proposed Class have suffered the same injury – Defendant's breach of fiduciary duty in its management and administration of the Plan – and are entitled to the same forms of relief. Separate actions run the risk of inconsistent adjudications and the application of incompatible standards. Indeed, allowing more than 16,000 individual Class members to pursue action on behalf of the Plan would undoubtedly result in varying adjudications on: (a) whether Defendant breached its fiduciary duties and committed other violations of ERISA as alleged; (b) whether Defendant is liable for these actions; and (c) how to measure damages to the Plan and other relief. *See Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 198 (S.D. Ohio 2002).

The Plan and its administrators treated all Plan participants uniformly. Roberts Decl., Ex. E, at 57:7-14. Members of the proposed Class, therefore, uniformly incurred the same injuries due to Defendant's breach of its fiduciary duties. Because "duties rise and fall with all plaintiffs," all members of the proposed Class would be entitled to identical forms of relief from independent judgments as dictated by Fifth Circuit standards. *Cunningham,* 2019 WL 275827. There is no reason to risk inconsistent adjudications and incompatible standards through the pursuit of separate actions. *Sacerdote*, 2018 WL 840364, at *6.

### 2. The Class satisfies the requirements of Rule 23(b)(1)(B)

"Rule 23(b)(1)(B) covers class action suits in which 'individual adjudications as a practical matter [] would be dispositive of the interests of the other members not parties to

individual actions." Fed. R. Civ. P. 23(b)(1).  "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders of beneficiaries, and which requires an accounting or like measures to restore the subject of the trust," is a typical Rule 23(b)(1)(B) action.  Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee Note).  Indeed, "the structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants."  *See Stegemann v. Gannet Co., Inc.*, No. 118CV325AJTJFA, 2022 WL 17067496, at *11 n.11 (E.D. Va. Nov. 17, 2022) (quoting *Douglin v. GreatBanc Trust Co., Inc.*, 115 F.Supp.3d 404, 412 (S.D.N.Y. 2015).  Certifying the proposed Class under Rule 23(b)(1)(B) is appropriate here, where Plaintiffs bring their claims on behalf of the Plan and seek recovery to the Plan, because resolving the Action [will] "as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan."  *Stegemann*, 2022 WL 17067496, at *11 (quoting *Tatum*, 254 F.R.D. at 67).

## V.  <u>CONCLUSION</u>

For the foregoing reasons and all those apparent on the record, the Court should certify this Action as a class action under Rules 23(a) and 23(b)(1), appoint Plaintiffs as Class Representatives, and appoint Miller Shah, Capozzi Adler, and Ajamie as Class Counsel.

DATED: September 20, 2024                    Respectfully Submitted,

<u>/s/ John S. "Jack" Edwards, Jr.</u>
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex. No. 38095
Thomas R. Ajamie
Texas Bar No. 00952400

S.D. Tex. No. 6165
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
Email: jedwards@ajamie.com
       tajamie@ajamie.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
       lrubinow@millershah.com

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
       ajberin@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

21

*Attorneys for Plaintiffs, the Plan,*
*and the Proposed Class*

**CERTIFICATE OF CONFERENCE**

The undersigned counsel certifies that counsel for the parties have conferred via email regarding Plaintiffs' Motion for Class Certification and that Defendant opposes the motion.

*/s/ John S. "Jack" Edwards, Jr.*
John S. "Jack" Edwards, Jr.

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record on September 20, 2024.

*/s/ John S. "Jack" Edwards, Jr.*
John S. "Jack" Edwards, Jr.