**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARY LALIBERTE and MARIE MCKNIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the QUANTA SERVICES, INC. 401(K) SAVINGS PLAN,** | § § § § § § § § | |
| | § | **Case No: 4:22-cv-03290 (AHB)** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **QUANTA SERVICES, INC.,** | § § | |
| **Defendant.** | § | |

---

**DEFENDANT'S BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    RELEVANT BACKGROUND ........................................................... 2

III.   ARGUMENT ...................................................................................... 4

    A.   Legal Standards.......................................................................... 4

        1.   Article III Standing ......................................................... 4

        2.   Class Certification Pursuant to Fed. R. Civ. P. 23(a) ............... 5

    B.   Plaintiffs Lack Article III Standing To Seek Injunctive Relief Or Pursue Any Claims Regarding The DFA or American Beacon Funds............................ 6

        1.   Plaintiffs Cannot Seek Prospective Injunctive Relief As To Any Of The Challenged Investments.................................. 6

        2.   Plaintiffs Have No Article III Injury In Fact Or Redressability Attributable To The American Beacon Fund And DFA Fund ................. 7

    C.   Plaintiffs' Class Definition Is Overbroad ............................................. 8

    D.   Plaintiffs Have Not Established They Meet the Rule 23(a) Requirements of Typicality or Adequacy ................................ 11

        1.   Plaintiffs Are Atypical And Inadequate Class Representatives Because They Covenanted Not To Sue Quanta ..................... 11

    E.   ERISA Section 404(c)'s Safe-Harbor Defeats Commonality And Typicality ................ 16

IV.    CONCLUSION.................................................................................. 19

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alfonso v. Cumulus Media, Inc.*,
  2021 WL 5033479 (N.D. Ga. Oct. 15, 2021) ..........................................................13

*Barnhardt v. Sigmon Coal Co.*,
  534 U.S. 438 (2002)..................................................................................................18

*Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of America-College Retirement
  & Equities Fund*,
  290 F.R.D. 452 (D. Vt. May 9, 2013)........................................................................9

*Beldock v. Microsoft Corp.*,
  2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)..........................................................7

*In re Bellsouth Corp.*,
  2005 WL 8154294 (N.D. Ga. Sept. 30, 2005) ..........................................................15

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008) .......................................................................7

*Bertulli v. Indep. Ass'n of Continental Pilots*,
  242 F.3d 290 (5th Cir. 2001) .....................................................................................4

*Bowling v. Johnson & Johnson*,
  2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019)...........................................................13

*In re BP p.l.c. Sec. Litig.*,
  2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ............................................................11

*Braidwood Mgmt., Inc. v. Equal Emp't Opportunity Comm'n*,
  70 F.4th 914 (5th Cir. 2023) ....................................................................................11

*Brown v. Medtronic, Inc.*,
  628 F.3d 451 (8th Cir. 2010) ......................................................................................8

*Carr v. Int'l Game Tech.*,
  2012 WL 909437 (D. Nev. Mar. 16, 2012) ..............................................................15

*Chaplin v. NationsCredit Corp.*,
  307 F.3d 368 (5th Cir. 2002) ................................................................12, 13, 14, 15

*Chavez v. Plan Benefit Services*,
  108 F.4th 297 (5th Cir. 2024) ....................................................................................5

*Chavez v. Plan Benefit Servs., Inc.*,
  957 F.3d 542 (5th Cir. 2020) ............................................................5, 6

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)......................................................................5, 7

*DeFazio v. Hollister Emp. Share Ownership Tr.*,
  612 F. App'x 439 (9th Cir. 2015) .....................................................6, 7

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)...........................................................10, 11

*In re Elec. Data Sys. Corp. ERISA Litig.*,
  224 F.R.D. 613 (E.D. Tex. Nov. 8, 2004), *vacated and remanded sub nom.*
  *Langbecker*, 476 F.3d 299 ...............................................................14

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014)..........................................................................18

*Estates of Van Coley v. Hillenbrand Indus., Inc.*,
  2007 WL 9761346 (S.D. Tex. Aug. 27, 2007) ..................................5, 8

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ............................................................15

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ..........................................................4, 10

*Fox-Quamme v. Health Net Health Plan of Oregon, Inc.*,
  2017 WL 1034202 (D. Or. Mar. 9, 2017).............................................9

*Garcia v. Glob. Dev. Strategies Inc.*,
  44 F. Supp. 3d 666 (W.D. Tex. 2014)................................................13

*Garthwait v. Eversource Energy Co.*,
  2022 WL 1657469 (D. Conn. May 25, 2022).........................................7

*Halvorson v. Auto-Owners Ins. Co.*,
  718 F.3d 773 (8th Cir. 2013) ............................................................10

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ............................................................15

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ................................................... *passim*

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004).......................................................11

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024)...............................................................................18

*Lubrizol Corp. v. Exxon Corp.*,
   957 F.2d 1302 (5th Cir. 1992) ...................................................................12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................4

*McWhorter v. Serv. Corp. Int'l*,
   2024 WL 4165074 (S.D. Tex. Sept. 11, 2024) .......................................6, 7

*Myers v. Admin. Committee, Seventy Seven Energy, Inc. Ret. and Savs. Plan*,
   2021 WL 4471613 (W.D. Okla. Sept. 29, 2021) ......................................15

*Nat'l. Am. Ins. Co. v. Melancon*,
   1999 WL 600372 (E.D. La. Aug. 9, 1999) ...............................................12

*Neese v. Becerra*,
   342 F.R.D. 399 (N.D. Tex. 2022) .............................................................11

*Prop. Disclosure Techs. LLC v. Homes*,
   2015 WL 11618242 (E.D. Tex. Jan. 21, 2015)..........................................13

*Pullen v. Farmers Grp, Inc.*,
   2006 WL 8445280 (S.D. Tex. Mar. 27, 2006)...........................................11

*Rogers v. General Elec. Co.*,
   781 F.2d 452 (5th Cir. 1986) .....................................................................12

*Russell v. Harman Int'l Indus.*,
   945 F. Supp. 2d 68 (D.D.C. 2013), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014)............................13

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)...........................................................12, 14, 15

*Silva v. Evonik Corp.*,
   2020 WL 12574912 (D.N.J. Dec. 30, 2020)................................................7

*Singh v. RadioShack Corp.*,
   882 F.3d 137 (5th Cir. 2018) .......................................................................5

*Spano v. The Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ...................................................................9, 11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................4, 7, 9

*Stanley v. George Wash. Univ.*,
   394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020)........................15

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020)..........................................................................................................4

*Thomas v. Aris Corp. of Am.*,
   219 F.R.D. 338 (M.D. Pa. 2003)..................................................................................16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)...............................................................................................5, 8, 10

*Trauernicht v. Genworth Fin. Inc.*,
   2023 WL 5961651 (E.D. Va. Sept. 13, 2023)........................................................7, 11

*In re UBS ERISA Litig.*,
   2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*, *Taveras v. UBS
   AG*, 612 F. App'x 27 (2d Cir. 2015).............................................................................7

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996)....................................................................................17, 18

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000).......................................................................................................4

*Vuyanich v. Republic Nat'l Bank of Dallas*,
   723 F.2d 1195 (5th Cir. 1984) ...............................................................................5, 8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).........................................................................................5, 6, 10, 11

*Walker v. Asea Brown Boveri, Inc.*,
   214 F.R.D. 58 (D. Conn. 2003).....................................................................................14

*Warren v. Reserve Fund, Inc.*,
   728 F.2d 741 (5th Cir. 1984) .........................................................................................13

*Wiseman v. First Citizens Bank & Tr. Co.*,
   212 F.R.D. 482 (W.D.N.C. 2003) ..............................................................................1, 16

**Statutes**

29 U.S.C. § 1104(c)(1)(A) ...............................................................................................16

**Other Authorities**

29 C.F.R. § 2550.404c-1(d)(2)(iv), 74 Fed. Reg. 64,910 (Oct. 20, 2010)......................18

Fed. R. Civ. P. 23(a)(2)-(4)...............................................................................................6

I.      **<u>INTRODUCTION</u>**

Plaintiffs are two former participants in the Quanta Services, Inc. 401(k) Savings Plan ("Plan") who claim Defendant breached its fiduciary duties under ERISA by offering three allegedly imprudent investment options: (1) the actively-managed Fidelity Freedom Funds ("Freedom Funds"), (2) the American Beacon Small Cap Value Fund ("American Beacon Fund"), and (3) the DFA International Small Cap Value Fund ("DFA Fund" and, together with the Freedom Funds and American Beacon Fund, the "Challenged Investments"). *See* Dkt. 53 at 2. Plaintiffs now seek to represent an overly broad class including *anyone* who ever participated in the Plan since September 26, 2016, regardless of whether they invested in the Challenged Investments. Their motion should be denied for several, independent reasons.

*First*, Plaintiffs lack Article III standing to seek injunctive relief or to press claims regarding the American Beacon and DFA Funds. Plaintiffs are both *former* participants in the Plan, so they have no standing to seek injunctive or other non-monetary prospective relief. And Plaintiffs' own expert opines that there are no losses associated with the American Beacon or DFA Funds, so Plaintiffs have no Article III injury in fact or redressability to press claims challenging those funds.

*Second*, Plaintiffs' proposed class is overbroad. Although Plaintiffs are correct, as a general matter, that courts often certify *some* class in ERISA Section 502(a)(2) breach of fiduciary cases, the class definition must still be tethered to the claims alleged. Here, Plaintiffs only challenge the three Challenged Investments. Yet they seek to certify a class consisting of *all* participants and beneficiaries in the Plan over the putative class period—including participants who never invested in *any* of the Challenged Investments.

*Third*, Plaintiffs' claims are not typical of the putative class, and they are not adequate representatives. Plaintiffs each signed covenants not to sue, which preclude them—but not other

1

putative class members—from bringing the very claims they press in this lawsuit. The same is true with respect to the general releases they each executed. These defenses are specific and central to each named Plaintiff's ability to press their claims here and are likely to become the focus of the litigation, while irrelevant to other putative class members.

For each of these reasons, and those expressed below, Plaintiffs' motion should be denied.

## II.   RELEVANT BACKGROUND

The Plan is a participant-directed 401(k) plan. Compl. ¶ 19. Over the putative class period, the Plan offered a diverse menu of investment options which, at any given point in time, consisted of approximately 17 funds covering different asset classes, investment styles, and risk-reward profiles.[1] *E.g.*, Ex. A (2020 Form 5500) at QUANTA_001828. Each participant can choose which investments to allocate their retirement savings to from among those options. Compl. ¶ 19. The value of each participant's retirement benefit thus depends on the amount they contribute and the performance of the investments they select. As relevant here, Plaintiff Laliberte invested in the 2055 Fidelity Freedom Fund, *id*. ¶ 9, and Plaintiff McKnight invested in the American Beacon Fund and the DFA Fund. *Id.* ¶ 10.

Plaintiffs are both former employees of Quanta and former Plan participants. Compl. ¶¶ 9-10. Plaintiff McKnight and Plaintiff Laliberte each executed severance agreements with Quanta in exchange for the payment of severance benefits. Ex. B (McKnight Severance Agreement) at Ptf-MCKNIGHT_000001; Ex. C (Laliberte Severance Agreement) at QUANTA_002023. In exchange for their respective severance payments, Plaintiffs each covenanted not to sue Quanta, agreeing "not to commence, file, voluntarily aid or in any way prosecute or cause to be commenced

---

[1] For these purposes, Defendant is counting the 14 individual vintages of the Freedom Funds as one "fund."

or prosecuted against the Released Parties [including Quanta] any action, charge, complaint or other proceeding." *Id*. Ex. B at Ptf-MCKNIGHT_000003; Ex. C at QUANTA_002025. Plaintiffs each also executed general releases, agreeing to release Quanta, including all "present and former officers, directors, supervisors, managers, employees, stockholders, agents, attorneys and representatives" from "any and all claims." Ex. B at Ptf-MCKNIGHT_000002; Ex. C at QUANTA_002024. The release expressly includes "any and all claims arising under. . . the Employee Retirement Income Security Act of 1974." *Id*. Plaintiffs also agreed to give up "any and all claims for monetary recovery." Ex. B at Ptf-MCKNIGHT_000003; Ex. C at QUANTA_002025. And, to the extent any claim is determined to be "not releasable," Plaintiffs agreed that "the payments and consideration received hereunder more than offset any monetary sums owing to Employee from any non-releasable claim." *Id*. Each Plaintiff further acknowledged that "the Company has advised Employee of Employee's right to consult with an attorney concerning this Agreement" and that "Employee has executed this Agreement voluntarily, knowingly and with such advice of an attorney as Employee has deemed appropriate." Ex. B at Ptf-MCKNIGHT_000006; Ex. C at QUANTA_002028.

Notwithstanding the covenant not to sue, Plaintiffs have sued Quanta and now seek to certify the following class:

> All participants and beneficiaries in the Quanta Services, Inc. 401(k) Savings Plan at any time on or after September 26, 2016 and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Dkt. 71 at 6.

Plaintiffs' experts have opined that the Freedom Funds were "imprudent" investment options as of the fourth quarter of 2016 and that the American Beacon Fund and DFA Fund were imprudent investment options as of the fourth quarter of 2019. Ex. D

3

(Expert Report of Dr. Adam Werner ("Werner Report")) ¶¶ 1(a), (b), (c). Accordingly, Plaintiffs contend that the Freedom Funds should have been removed from the Plan in the first quarter of 2017 and the American Beacon and DFA Funds should have been removed from the Plan in the first quarter of 2020. *Id.*

## III.   ARGUMENT

### A.   Legal Standards.

#### 1.   Article III Standing.

Article III "[s]tanding is an inherent prerequisite to the class certification inquiry" that "must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Rule 23." *Bertulli v. Indep. Ass'n of Continental Pilots*, 242 F.3d 290, 294 (5th Cir. 2001); *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise"). Importantly, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). To establish Article III standing, Plaintiffs must demonstrate (1) they suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury-in-fact element requires showing the plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation and citation omitted). The causation prong requires that the injury in fact "is fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation and quotations omitted). Redressability means there is "a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).

Standing must be established for "each claim" and "for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quotation and citation omitted). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotation and citation omitted). In a class action, "named plaintiffs 'must allege and show that *they personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1200 (5th Cir. 1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added))); *see also Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018); *Chavez v. Plan Benefit Services*, 108 F.4th 297, 307 (5th Cir. 2024) ("The Supreme Court has repeatedly explained that 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.' The Court has also cautioned us against dispensing standing 'in gross' in a class-action context—instead instructing us to ensure that plaintiffs 'demonstrate standing for each claim that they press and for each form of relief that they seek[.]'") (citations omitted). "[I]t has long been settled that named plaintiffs who lack standing cannot bring claims on behalf of absent class members." *Estates of Van Coley v. Hillenbrand Indus., Inc.*, 2007 WL 9761346, at *8 (S.D. Tex. Aug. 27, 2007).

### 2.    Class Certification Pursuant to Fed. R. Civ. P. 23(a).

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation and citation omitted). Courts must undertake a "rigorous analysis" of each Rule 23 prerequisite before certifying a class. *Id*. at 351; *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020). A court with doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory

committee's note to 2003 amendment; *accord Chavez*, 957 F.3d at 547 ("certification 'can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit'").

Plaintiffs bear the burden of proving "there are questions of law or fact common to the class," "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and the named Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(2)-(4)[2]; *Dukes*, 564 U.S. at 345. Rule 23 is not merely a pleading standard. *Dukes*, 564 U.S. at 350. Rather, Plaintiffs must "affirmatively demonstrate" compliance with Rule 23(a)—that is, they must "prove that there are *in fact*. . . common questions of law or fact, etc." *Id.*; *see also Chavez*, 957 F.3d at 547 ("If some of the determinations. . . cannot be made without a look at the facts, then the judge must undertake that investigation.") (internal quotation omitted).

### B.   Plaintiffs Lack Article III Standing To Seek Injunctive Relief Or Pursue Any Claims Regarding The DFA or American Beacon Funds.

#### 1.   Plaintiffs Cannot Seek Prospective Injunctive Relief As To Any Of The Challenged Investments.

Plaintiffs, in their Complaint, request "prospective injunctive and declaratory relief" to address the purported breaches of fiduciary duty. Compl. ¶ 82. However, as *former* Plan participants who have cashed out of the Plan, Plaintiffs lack Article III standing to pursue such relief. *DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015) ("The Plan Participants, who have already cashed out of the Plan, lack Article III standing as to redressability vis-à-vis their claims for prospective equitable relief."). Indeed, another court in this District just recently applied *DeFazio* in the context of a motion for class certification.   In *McWhorter v. Serv. Corp. Int'l*, Judge Eskridge aptly held that former participants in an ERISA

---

[2] Defendant does not dispute that the putative class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

plan lack Article III standing to pursue injunctive relief because they cannot "show that such relief would redress any continuing injury that either has suffered." 2024 WL 4165074, at *7 (S.D. Tex. Sept. 11, 2024); *accord Trauernicht v. Genworth Fin. Inc.*, 2023 WL 5961651, at *6 (E.D. Va. Sept. 13, 2023) ("In neither the SAC nor the briefs have the Plaintiffs shown how they would benefit from any prospective relief because they no longer invest in the [challenged fund], so any changes to the process in the future would not affect them, making their claim for prospective injunctive relief non-redressable.").[3] So too here. Absent Article III standing, there is no basis to certify Plaintiffs' claims for prospective relief on a classwide basis and Plaintiffs cannot serve as class representatives for any putative class seeking prospective injunctive relief. *See DeFazio*, 612 F. App'x at 441; *McWhorter*, 2024 WL 4165074 at *7; *Genworth*, 2023 WL 5961651 at *6, *supra*.

> **2.      Plaintiffs Have No Article III Injury In Fact Or Redressability Attributable To The American Beacon Fund And DFA Fund**.

Separately, Plaintiffs bear the burden of demonstrating, among other things, that they suffered an injury in fact associated with each of the Challenged Investments that would be redressable to them. *Spokeo*, 578 U.S. at 338; *Davis*, 554 U.S. at 734. But Plaintiffs' own damages expert, Dr. Adam Werner, opines that "there were no losses attributable to Plan participants" in connection with the Plan's offering of the American Beacon Fund or DFA Fund. Ex. D ¶ 16. On the contrary, Dr. Werner calculated *negative* damages of approximately $3.9 million associated with the American Beacon Fund and DFA Fund. Ex. E (Deposition of Dr. Adam Werner) at 97:5-10, 99:11-100:4, 101:2-8. In other words, Plan participants were *better off* to the tune of nearly $4

---

[3] *See also Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *5 (W.D. Wash. Feb. 7, 2023) (former plan participants had no Article III standing to pursue prospective relief); *Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *6 (D. Conn. May 25, 2022); *Silva v. Evonik Corp.*, 2020 WL 12574912, at *2 (D.N.J. Dec. 30, 2020); *In re UBS ERISA Litig.*, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*, *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 267 (D. Mass. 2008).

million due to Quanta's decisions to offer the American Beacon Fund and DFA Fund. *Id*. Given that participants earned more money in the Challenged Investments than they would have in Plaintiffs' purported prudent alternatives, there can plainly be no injury in fact and no redressability. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) ("[Alt a minimum, a plaintiff must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions [in an ERISA action]."). In the words of Plaintiff McKnight, "if he [Dr. Werner] was saying that there's no damages from it [the American Beacon Fund and DFA Fund], why are we at this point now?" Ex. F (Deposition of Marie McKnight) at 98:3-8.

As such, Plaintiffs have not suffered any Article III injury related to these funds, nor would any injury be redressable to them personally. Because Plaintiffs need Article III standing in order to serve as a class representative, class certification regarding the American Beacon Fund and DFA Fund should be denied. *See supra* at 4-5; *TransUnion,* 594 U.S. at 431; *Vuyanich*, 723 F.2d at 1200; *Van Coley*, 2007 WL 9761346 at *8. Moreover, since Plaintiff McKnight only invested in the American Beacon Fund and DFA Fund out of the Challenged Investments, she lacks Article III standing entirely to pursue her claims and should be dismissed from the case.

## C. <u>Plaintiffs' Class Definition Is Overbroad</u>.

Plaintiffs challenge the prudence of just three Challenged Investments in the Complaint, and their expert has since opined that there are no losses associated with two of the three (the American Beacon and DFA Funds). Dkt. 71 at 4. This leaves just one Challenged Fund with any purported losses or that could have caused any Article III injury, the actively managed Fidelity Freedom Funds. Yet Plaintiffs seek to certify a class consisting of "[a]ll participants and beneficiaries" in the Plan. *Id*. at 6. This is an overreach: Plaintiffs' proposed class seeks to sweep in putative class members who *never* invested in any of the Challenged Investments, or invested only in the two Challenge Funds they now contend suffered no losses. The Seventh Circuit

addressed this precise issue in *Spano v. The Boeing Co*. There, the Court vacated the certification decision where the plaintiffs sought to represent all plan participants even though they invested in two discrete investment options. 633 F.3d 574, 586 (7th Cir. 2011). It held: "a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." *Id.*; *see also Fox-Quamme v. Health Net Health Plan of Oregon, Inc.*, 2017 WL 1034202 (D. Or. Mar. 9, 2017) ("A proposed class is overly broad when the class definition includes those who have not been harmed by a defendant's alleged wrongful conduct."); *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of America-College Retirement & Equities Fund*, 290 F.R.D. 452 (D. Vt. May 9, 2013) ("The class definition should exclude members who have not suffered damages as a result of the Defendants' conduct.").  The same is true here.

Courts have assessed this issue both in the context of the named Plaintiffs' Article III standing or the absent putative class members' Article III standing (which, in turn, implicates Rule 23's commonality requirement). Either way, Plaintiffs' class definition is too broad. From the perspective of the named Plaintiffs, they do not allege—much less offer proof—that any of the *un*challenged investments caused them harm. *See generally* Compl. Because Plaintiffs do not plead any injury associated with the unchallenged investments, they lack Article III standing to pursue any claim involving them.[4] *Spokeo*, 578 U.S. at 339. It follows that because Plaintiffs lack Article III standing to pursue claims involving the unchallenged funds, they are precluded from representing a class comprised of participants who *only* invested in those investment options. *Vuyanich*, 723 F.2d at 1200.

From the perspective of the absent putative class members, "[e]very class member must

---

[4] To be clear, Plaintiffs are *not* challenging any investment options other than the Challenged Investments. *See generally* Compl. This merely highlights the dichotomy between their claims and the proposed class definition.

have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431; *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing."). Relatedly, "[c]ommonality requires the plaintiff to demonstrate that the class members suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quotation and citation omitted). Plaintiffs' proposed class—which would include every participant or beneficiary in the Plan since September 26, 2016—includes many participants or beneficiaries who (i) never invested in *any* of the Challenged Investments or (ii) like Plaintiff McKnight, only invested in Challenged Investments that Plaintiffs admit caused no loss to the Plan (i.e., the American Beacon Fund and the DFA Fund). In other words, the harm allegedly suffered by Plaintiff Laliberte—poor investment performance associated with the Freedom Funds—is not a universal injury shared by every member of the putative class. This defeats commonality. *See Dukes*, 564 U.S. at 349-50. Plaintiffs should not be permitted to represent a class consisting of unharmed Plan participants. *See Denney*, 443 F.3d at 264; *Halvorson v. Auto-Owners Ins. Co*., 718 F.3d 773, 778 (8th Cir. 2013) (affirming denial of certification of class containing absent class members who were not injured).[5]

In short, Plaintiffs' proposed class is plainly overbroad. Absent class members who never invested in the Freedom Funds are not alleged to have suffered any Article III injury and, therefore,

---

[5] While Plaintiffs may argue that the Fifth Circuit in *Flecha* declined to decide whether standing must be proven for unnamed class members, that is a red herring. 946 F.3d at 762. *Flecha* was decided before the Supreme Court's admonition in *TransUnion* that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, *class action or not*." *TransUnion*, 594 U.S. at 431 (emphasis added). And here, there is no fact dispute or individualized inquiry about whether unnamed putative class members who did not invest in the Freedom Funds have been injured. These individuals are not injured even under Plaintiffs' theory of the case and their expert's conclusions. Under *TransUnion*, the Court may not certify a class—like the one Plaintiffs propose—that includes uninjured class members. And *TransUnion* controls.

lack Article III standing.[6] At a minimum, then, any certified class must be limited to participants or beneficiaries who invested in the Freedom Funds. *See*, *e.g.*, *Genworth*, 2024 WL 3835067 at *9 (limiting ERISA class definition to "those Plan participants and beneficiaries who were invested in the [challenged target-date investment] during the Class Period"); *see also Braidwood Mgmt., Inc. v. Equal Emp't Opportunity Comm'n*, 70 F.4th 914, 935-36 (5th Cir. 2023) ("we police the definitions of class actions" and courts may "determine a more appropriate, limited class definition" that complies with the requirements of Rule 23).

> **D.      Plaintiffs Have Not Established They Meet the Rule 23(a) Requirements of Typicality or Adequacy.**

> > **1.      Plaintiffs Are Atypical And Inadequate Class Representatives Because They Covenanted Not To Sue Quanta**.

"[T]he key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants claims." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005)). "[C]lass certification is not appropriate where a class representative is subject to unique defenses that threaten to become the focus of the litigation." *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004); *accord Pullen v. Farmers Grp, Inc.*, 2006 WL 8445280, at *5 (S.D. Tex. Mar. 27, 2006).[7] Plaintiffs here are atypical because they covenanted not to sue Quanta and also

---

[6] Courts have interchangeably addressed this issue under the umbrellas of standing (*e.g.*, *Denney*, 443 F.3d at 264), commonality (*e.g.*, *Dukes*, 564 U.S. at 350), typicality (*e.g.*, *Spano* 633 F.3d at 586 (incongruence between "investments held by the named plaintiff and those held by members of the class he or she wishes to represent" violated Rule 23(a)(3)'s typicality requirement)), and even predominance (*e.g.*, *Neese v. Becerra*, 342 F.R.D. 399, 412 (N.D. Tex. 2022) ("courts have held Rule 23(b)(3)'s predominance requirement demands a class cannot contain *any* uninjured class members")). Regardless of which theory the Court applies, such an overbroad class containing numerous indisputably uninjured putative class members cannot be certified.

[7] Some courts address the issue of unique defenses in the context of adequacy rather than typicality. *See*, *e.g.*, *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *10 (S.D. Tex. Dec. 6, 2013) ("Although typicality and adequacy are separate components of the analysis, they overlap to the extent that a

executed general releases of claims including those under ERISA. Each is an independent, unique defense Quanta will raise to defeat their claims in entirety.

In the Fifth Circuit, "[p]ublic policy favors. . . enforcement of releases" and covenants not to sue so long as they are "knowing" and "voluntary." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 & n.3 (5th Cir. 2002) (citing *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)); *see also Rogers v. General Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) ("A general release, or a covenant not to sue, is not ordinarily against public policy.") (quoting *Monyei v. Dresser Indus.*, 701 F.2d 171 (5th Cir. 1983)). As a matter of law, a covenant not to sue is distinct from a release and must be analyzed independently. Indeed, "[t]he Fifth Circuit has recognized that a release differs from a covenant not to sue; while a covenant not to sue preserves the cause of action, a release destroys it." *See Nat'l. Am. Ins. Co. v. Melancon*, 1999 WL 600372, at *3 (E.D. La. Aug. 9, 1999) (collecting cases).

Here, while Plaintiffs have covenanted "not to commence, file, voluntarily aid or in any way prosecute. . . any action, charge, complaint or other proceeding" against Quanta, they have breached those agreements by filing this lawsuit. *Supra* at 2-3; *see e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1307 (5th Cir. 1992) (party who files a lawsuit that is within the scope of a covenant not to sue commits an "obvious" breach). The covenant precludes Plaintiffs from suing in this action, but does not impact the claims of other putative class members to sue in their own right or on behalf of the Plan. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 600 (3d Cir. 2009) ("even if a release does not bar an individual from bringing an ERISA § 502(a)(2)

---

proposed representative subject to unique defenses may prove an inadequate representative for the class.") (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)). Under whichever prong the Court is inclined to analyze this issue, Plaintiffs' proposed class cannot be certified in the face of the covenants not to sue that Plaintiffs executed.

claim on behalf of a plan, it could be argued that the covenant not to sue bars [plaintiff] from filing a lawsuit and serving as a lead plaintiff"); *Alfonso v. Cumulus Media, Inc.*, 2021 WL 5033479, at *2 (N.D. Ga. Oct. 15, 2021) ("even if the Plaintiff did not actually waive the Plan's ERISA claims, he nonetheless gave up his ability to bring those claims on behalf of the Plan" by signing a covenant not to sue).[8] That is, the covenant merely determines *who* can (or cannot) bring a claim on behalf of the Plan.  The named Plaintiffs, here, cannot.

Presumably, Plaintiffs disagree that the covenants bar their ERISA claims. But if the covenants apply, Plaintiffs cannot pursue this litigation. *Chaplin*, 307 F.3d at 373. And that issue has no bearing on the claims of *other* putative class members who did not execute covenants not to sue and thus have the ability to pursue such claims on behalf of the Plan. The Court of course need not decide whether the covenant applies at this stage, only whether it is a defense that may "preoccupy" Plaintiffs. *Warren v. Reserve Fund, Inc*., 728 F.2d 741, 747 (5th Cir. 1984).  It is. Indeed, courts have found that a "covenant not to sue is the type of 'unique defense' that could 'unacceptably detract from the focus of the litigation to the detriment of absent class members.'" *Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *6 (S.D.N.Y. Apr. 22, 2019) (quoting *In re Omnicom Grp. Inc. Securities Litig.*, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007)).[9]

---

[8] Alternatively, the Court could address Plaintiffs' covenants not to sue as an issue of Article III standing. *See Russell v. Harman Int'l Indus.*, 945 F. Supp. 2d 68, 80 (D.D.C. 2013) (plaintiff lacked standing to bring claim on behalf of ERISA plan participants because he "released his right to any recovery even if his plan claims are successful"), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014); *Prop. Disclosure Techs. LLC v. Homes*, 2015 WL 11618242, at *3 (E.D. Tex. Jan. 21, 2015) (finding "[p]laintiffs covenant not to sue eliminates any actual controversy. . ."); *Garcia v. Glob. Dev. Strategies Inc.*, 44 F. Supp. 3d 666, 671 (W.D. Tex. 2014) ("holding that a covenant not to sue for purported trademark violations was sufficient to render an Article III controversy moot") (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 93 (2013)). Under either approach, Plaintiffs' proposed class cannot be certified.

[9] Moreover, if the Court determines that the covenants prohibit Plaintiffs from bringing this lawsuit and serving as named representatives, then Plaintiffs may raise issue with the extent to which the covenants were "knowing and voluntary" which would entail a further individualized and fact-

Apart from the covenants not to sue, Plaintiffs each also executed general releases. *Supra* at 2-3. This is a separate, unique defense the defeats typicality. Indeed, the Fifth Circuit favors "a rule allowing litigants to settle all claims with a plain and simple statement that the release covers any and all claims." *Chaplin*, 307 F.3d at 373. In *Langbecker*, the Fifth Circuit addressed the impact of a general release in a plan-wide breach of fiduciary duty class action under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), like the case Plaintiffs pursue here. The Fifth Circuit vacated the district court's grant of class certification and remanded to the district court because "[t]he impact of the releases should not have been excluded from the district court's certification analysis." *Langbecker*, 476 F.3d at 313. In so doing, the Fifth Circuit implicitly rejected the district court's reasoning that "the releases are inapplicable to the Prudence Claims because Plaintiffs have brought this action on the Plan's behalf and do not advance individual claims, to which the releases may be applicable." *In re Elec. Data Sys. Corp. ERISA Litig.*, 224 F.R.D. 613, 624 (E.D. Tex. Nov. 8, 2004), *vacated and remanded sub nom. Langbecker*, 476 F.3d 299. As the Fifth Circuit correctly noted, "courts have regularly found standing, typicality, or adequacy lacking where the defense of a release of claims was not shared by the named plaintiffs and the purported class." *Id*. at 313 n.26 (quoting Jayne E. Zanglein & Susan J. Stabile, *ERISA Litigation* 479–80 (2d ed. 2005)).

To be sure, some courts outside the Fifth Circuit have concluded that individual releases cannot bar participants from bringing suit under ERISA Section 502(a)(2) because such claims are derivative claims brought on behalf of the plan. *E.g.*, *Schering Plough*, 589 F.3d at 594.[10]

---

specific inquiry. *See Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 65 (D. Conn. 2003) (denying class certification because "a fact-specific inquiry will be necessary to determine whether either of the named plaintiffs knowingly and voluntarily waived their rights to pension benefits under the Plan").

[10] Notably, even those courts that have held an individual release may not serve as a total bar to an ERISA Section 502(a)(2) claim acknowledge that the release may still preclude an individual

But the Fifth Circuit has not squarely addressed this question, and based on the reasoning in *Chaplin* and *Langbecker*, would likely align with those courts that hold a general release of claims *does* bar a plaintiff from pursuing claims under ERISA Section 502(a)(2) on behalf of a plan.[11] *E.g.*, *Stanley v. George Wash. Univ.*, 394 F. Supp. 3d 97, 107-11 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020); *Howell v. Motorola, Inc.*, 633 F.3d 552, 560-61 (7th Cir. 2011).[12]

Regardless, again, the Court does not need resolve the applicability of the general release now. That Quanta's defense will inevitably preoccupy Plaintiffs is enough to render them atypical of the putative class they seek to represent. *See Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005) (*quoting Lehocky*, 220 F.R.D. 491 at 501-502) ("the key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims"). And regardless of whether the release bars Plaintiffs' claims, the separate covenant not

---

plaintiff from serving as a lead plaintiff and render her atypical of the putative class. *See Schering Plough*, 589 F.3d at 599-600 ("[w]e have not found a single case in which a class was certified where the only proposed representative signed a release and a covenant not to sue and then attempted to represent a class consisting primarily of members who had not signed releases or covenants not to sue."). Thus, even if Plaintiffs' releases do not serve as a total bar on their claims, they still render them atypical such that the Court may not certify the proposed class.

[11] For clarity, the issue is not whether the individual participant can release the Plan's claim. Rather, the issue is whether the individual participant can release their own right under ERISA Section 502(a)(2) to bring a claim on behalf of the Plan. Other Plan participants who have not released their right to bring a claim may still sue on behalf of the Plan.

[12] *See also Myers v. Admin. Committee*, *Seventy Seven Energy, Inc. Ret. and Savs. Plan*, 2021 WL 4471613, at *5 (W.D. Okla. Sept. 29, 2021) (denying class certification where named plaintiff executed a release of claims due to concerns over "what incentive she has to advocate on behalf of a Plan in which she is no longer a participant and from which she appears to have released any right of individual recovery"); *Carr v. Int'l Game Tech.*, 2012 WL 909437, at *6 (D. Nev. Mar. 16, 2012) ("Plaintiffs' claims cannot [be] said to be typical of class members who have not signed releases and/or covenants not to sue."); *In re Bellsouth Corp.*, 2005 WL 8154294, at *9 (N.D. Ga. Sept. 30, 2005) ("Plaintiffs who signed such releases clearly cannot bring claims on behalf of the class with the same vigor and interest as someone who had not signed such releases.").

to sue independently precludes Plaintiffs from pursuing this lawsuit. Because these issues affect these Plaintiffs, but not the members of the putative class, class certification should be denied.

E.   **ERISA Section 404(c)'s Safe-Harbor Defeats Commonality And Typicality**.

ERISA Section 404(c), 29 U.S.C. § 1104(c), absolves fiduciaries from "any loss" resulting from a participant's exercise of "control." More specifically:

> (1) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary). . .
>
> (ii) no person who is otherwise a fiduciary shall be liable under this part for *any loss*, or *by reason of any breach*, which results from such participant's or beneficiary's exercise of control.

29 U.S.C. § 1104(c)(1)(A) (emphasis added). As explained by the Fifth Circuit, in the context of an ERISA § 502(a)(2) action, the 404(c) defense "limits the amount of 'plan losses' for which a fiduciary may be held liable" and "bears on the susceptibility of this case to class action treatment, because § 404(c) individualizes the consequences of fiduciary duty violations." *Langbecker*, 476 F.3d at 312 (vacating grant of class certification for failure to consider the impact of § 404(c)).

In *Langbecker*, the Fifth Circuit explained that Section 404(c) "recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments. . . and they are furnished with risk-diversified investment options. . . Section 404(c) contemplates an *individual, transactional defense* in these situations." *Langbecker*, 476 F.3d at 312 (emphasis added). That individualized defense thus "renders the potential class members' claims significantly different from and atypical of" the claims of proposed class representatives. *Thomas v. Aris Corp. of Am.*, 219 F.R.D. 338, 342 (M.D. Pa. 2003); *see also Wiseman v. First Citizens Bank & Tr. Co.*, 212 F.R.D. 482, 487 (W.D.N.C. 2003) (finding that "the issue of independent control [under 404(c)] will require an individual analysis for each class member" and

16

that "[e]xamining the issue . . . for each of hundreds or thousands of Plaintiffs will make a class action unwieldy and impracticable").

Similarly, the Third Circuit has explained that the defense is grounded in the causation principles set forth in ERISA Section 409(a), 29 U.S.C. § 1109(a), which only "holds fiduciaries. . . liable for *resulting losses*." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996) (emphasis added). More to the point:

> [T]he statute's unqualified instruction that a fiduciary is excused from liability for "any loss" which "results from [a] participant's or [a] beneficiary's exercise of control" clearly indicates that a fiduciary may call upon section 1104(c)'s protection where a causal nexus between a participant's or a beneficiary's exercise of control and the claimed loss is demonstrated.

*Id*. at 445. Over the course of the putative class period, each of the individual investment options in the Plan had unique returns and those returns varied considerably depending on the time frame. Even the different vintages of the Freedom Funds had different risks and returns from each other, and those differences also varied over time. Whether, and to what extent, each participant suffered a loss and whether that loss resulted from the participant's exercise of control over the assets in his or her account within the meaning of Section 404(c) cannot be determined on a classwide basis because each participant's investments and investment experience differs. And application of Section 404(c) is particularly problematic for class certification here based on the manner in which Plaintiffs have pressed their claims. Plaintiffs, through their experts, contend that each of the Challenged Investments *became* imprudent at some point during the putative class period. Ex. D ¶¶ 1(a), (b), (c). Thus, the extent to which each participant may have been harmed by the Challenged Investments (and whether such harm was caused by Quanta's actions or the participant's own exercise of control over their account) will vary significantly from participant to participant depending on when they invested in the Challenged Investments, whether such investment choice was before or after they allegedly became imprudent, and what each participant

17

did with their account once there was sufficient information available to demonstrate the alleged imprudence of the Challenged Investments. These individualized inquiries render class certification inappropriate.

Plaintiffs will likely argue that Section 404(c) does not apply to their claims, based on a provision added to the Section 404(c) regulations in 2010 reflecting the Department of Labor's ("DOL") view that the safe harbor provision "does not serve to relieve a fiduciary from its duty to prudently select and monitor any service provider or designated investment alternative offered under the plan." 29 C.F.R. § 2550.404c-1(d)(2)(iv), 74 Fed. Reg. 64,910 (Oct. 20, 2010). But that argument—and the DOL's position—contradicts the plain statutory language at issue. *See Unisys*, 74 F.3d at 445 (finding, based on the statute's "plain language" that "[t]here is nothing in section 1104(c) which suggests that a breach on the part of a fiduciary bars it from asserting section 1104(c)'s application"). The Court cannot adopt a regulatory interpretation contrary to the statute's plain text. *Barnhardt v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (courts cannot "alter the [statutory] text in order to satisfy the policy preferences of [an agency]."); *see also, e.g.*, *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 508-09 (2014) (a reviewing court's "task is to apply the text of the statute, not to improve upon it") (internal alteration and citation omitted).

But even if the statute's language were ambiguous, the DOL's interpretation is not entitled to any deference by the Court. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and holding that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Rather, the Court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Id*. The Fifth

Circuit has already rejected a similar argument based on the DOL's position as asserted in the preamble to the prior version of the Section 404(c) regulations, explaining:

> [T]he [Secretary's] footnote does not reasonably interpret § [1104(c)] itself, because it contradicts the governing statutory language in cases where an individual account plan fully complies with the regulations' disclosure, diversification and participant-control provisions, and loss is caused, notwithstanding some other fiduciary duty breach, by the participants' investment decisions. The DOL footnote would render the § [1104(c)] defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary.

*Langbecker*, 476 F.3d at 311. The DOL's position would read the "any loss" and "any breach" language right out of the statute. By its terms, Section 404(c) does not differentiate one form of fiduciary breach from another. *See* 29 U.S.C. § 1104(c). Construing the statute to provide that fiduciaries could avoid fiduciary liability for losses resulting from participants' choices only when there could be no fiduciary liability in the first instance is both illogical and inconsistent with the statute. *See Langbecker*, 476 F.3d at 311 ("The footnote is at odds with these provisions by appearing to eliminate a § 404(c) defense altogether, rather than determining its scope on a transactional, case-by-case basis.").

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification.

Dated: November 1, 2024                        Respectfully submitted,

19

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld, *Admitted Pro Hac Vice*
Attorney-In-Charge
Pennsylvania Bar No. 85955
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
*jeremy.blumenfeld@morganlewis.com*

David J. Levy
Texas Bar No. 12264850
S.D. Tex. No. 13725
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 890-5000
*david.levy@morganlewis.com*
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record who are deemed to have consented to electronic service on November 1, 2024.

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld