# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| MARY LALIBERTE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>QUANTA SERVICES, INC.,<br><br>Defendant. | Case No. 4:22-cv-03290<br><br><br>Date: November 22, 2024 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

I. ARGUMENT ................................................................................................................... 1

   A. Plaintiffs Have Article III Standing to Seek Injunctive Relief and Pursue Claims Regarding the DFA and American Beacon Funds .................................................... 1

       1. Plaintiffs May Seek Prospective Injunctive Relief ......................................... 1

       2. Plaintiffs Proffer a Plan-Wide Damages Model that Supports Certification of Their Claims ........................................................................................................... 1

   B. Plaintiffs are Entitled to Assert Each of Their Claims for Plan-Wide Relief ........................ 3

   C. Plaintiffs' General Release and Promise Not To Sue Do Not Destroy Typicality or Adequacy of Representation ...................................................................................... 4

       1. The Release Does Not Prevent Plaintiffs' Claim on Behalf of the Plan ....................... 4

       2. The "No Claims" Provision Does Not Bar These Claims ............................................ 6

       3. Releases Do Not Render Named Plaintiffs Atypical ..................................................... 8

   D. ERISA §404(c) Defenses Do Not Require Individualized Inquiries .................................. 9

II. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anastos v. IKEA Property, Inc.*,
    526 F. Supp. 3d 1353 (N.D. Ga. Mar. 17, 2021) ........................................................................... 7

*Arnold v. Paredes*,
    2024 WL 356751 (M.D. Tenn. Jan. 31, 2024) ........................................................................... 5, 6

*Boley v. Universal Health Servs., Inc.*,
    36 F.4th 124 (3d Cir. 2022) ............................................................................................................. 3

*Bowles v. Reade*,
    198 F.3d 752 (9th Cir. 1999) ....................................................................................................... 5, 7

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ........................................................................................................... 1

*Buster v. Compensation Comm. of Bd. of Directors of Mechanics Bank*,
    2017 WL 2999990 (N.D. Cal. July 14, 2017) ............................................................................... 8

*Cedeno v. Sasson*,
    100 F.4th 386 (2d Cir. May 1, 2024) .......................................................................................... 5, 6

*Cockerill v. Corteva, Inc.*,
    345 F.R.D. 81 (E.D. Pa. 2023) .................................................................................................... 8, 9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ........................................................................................................................... 3

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) ..................................................................................................... 3

*Hawkins v. Cintas Corp.*,
    32 F.4th 625 (6th Cir. 2022) ........................................................................................................... 5

*Hay v. Gucci Am., Inc*,
    2018 WL 4815558 (D.N.J. Oct. 3, 2018) ...................................................................................... 1

*Henry on behalf of BSC Ventures Holdings, Inc. ESOP v. Wilmington Tr. NA*,
    72 F.4th 499 (3d Cir. 2023) ............................................................................................................. 5

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ......................................................................................................... 10

*Huu Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) .................................................................................. 2, 3

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005) ................................................................................ 6

*In re JDS Uniphase Corp. ERISA Litig.*,
   2006 WL 2597995 (N.D. Cal. Sept. 11, 2006) ........................................................... 7

*In re Schering Plough Corp.*,
   589 F.3d 585 (3d Cir. 2009) ....................................................................................... 4

*In re Suntrust Banks, Inc. Erisa Litig.*,
   2015 WL 12734077 (N.D. Ga. Oct. 8, 2015) ........................................................ 9, 10

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996) ....................................................................................... 10

*In re YRC Worldwide, Inc. ERISA Litig.*,
   2011 WL 1303367 (D. Kan. Apr. 6, 2011) ........................................................... 9, 10

*Juliam v. City of Houston*,
   314 F.3d 721 (5th Cir. 2002) ...................................................................................... 8

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ................................................................................ 9

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) ................................................................................................... 8

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ............................................................................ 5, 9

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ............................................................................................. 10

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) ...................................................................................... 1

*Matassarin v. Lynch*,
   174 F.3d 549 (5th Cir.1999) ....................................................................................... 6

*Moore v. Comcast Corp.*,
   268 F.R.D. 530 (E.D. Pa. 2010) .................................................................................. 8

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ................................................................. 8

*Munro v. Univ. of Southern California*,
   896 F.3d 1088 (9th Cir. 2018) ...................................................................................... 5

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021) ................................................................................. 1, 2, 3

*Pfahler v. Nat'l Latex Products Co.*,
   517 F.3d 816 (6th Cir. 2007) ........................................................................................ 6

*Cryer v. Franklin Templeton Res., Inc.*,
   2017 WL 4023149 (N.D. Cal. July 26, 2017) ............................................................... 1

*Reighard v. Limbach Co., Inc.*,
   157 F. Supp. 2d 730 (E.D. Va. 2001) ........................................................................... 7

*Richards v. FleetBoston Fin. Corp.*,
   235 F.R.D. 165 (D. Conn. 2006) .................................................................................. 1

*Stanford v. Foamex L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) ................................................................................. 10

*Sullivan v. AT & T, Inc.*,
   2010 WL 905567 (N.D. Tex. March 12, 2010) ........................................................... 8

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ....................................................................................... 10

*Taylor v. United Techs. Corp.*,
   2008 WL 2333120 (D. Conn. June 3, 2008) ................................................................ 9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................................................. 4

*Union Pump Co. v. Centrifugal Tech. Inc.*,
   404 F. App'x 899 (5th Cir. 2010) ................................................................................. 2

*Wright v. Sw. Bell Tel. Co.*,
   925 F.2d 1288 (10th Cir. 1991) .................................................................................... 7

**Statutes**

29 U.S.C. § 1132(a)(2) ........................................................................................................ 5

**<u>Rules</u>**

FED. R. CIV. P. 26 ............................................................................................................... 2

**<u>Regulations</u>**

29 C.F.R. § 2550.404c-1(d)(2)(iv) ................................................................................... 10

Plaintiffs respectfully submit this Reply in support of class certification.[1]

## I.    ARGUMENT

### A.    Plaintiffs Have Article III Standing to Seek Injunctive Relief and Pursue Claims Regarding the DFA and American Beacon Funds

#### 1.    Plaintiffs May Seek Prospective Injunctive Relief

Quanta argues that Plaintiffs, as former participants, lack standing to pursue injunctive relief for the Plan. *See* ECF No. 77 ("Opp."), at 6-7. This ignores that actions under ERISA § 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). Numerous courts disagree with Quanta. *See Hay v. Gucci Am., Inc*, 2018 WL 4815558, at *5 (D.N.J. Oct. 3, 2018) (plaintiff had standing to seek prospective relief even though she had "cashed out of the Plan"); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) (same); *cf. Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 175 (D. Conn. 2006) (same with respect to statutory standing). In fact, multiple Circuits have found ERISA plaintiffs need not demonstrate individualized injury to seek injunctive relief for a *plan* (let alone where they suffered an earlier injury based on the same conduct). *See Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021) (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 610 (6th Cir. 2007)).

#### 2.    Plaintiffs Proffer a Plan-Wide Damages Model that Supports Certification of Their Claims

Quanta argues that Plaintiffs lack standing to pursue claims regarding the DFA and American Beacon funds. *See* Opp., at 7-8. This argument hinges entirely on Quanta's cramped view of the report issued by one of Plaintiffs' experts, Dr. Adam Werner, who offered evidence

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Memorandum") (ECF No. 71).

1

that the Plan's losses—and, therefore, the losses of the entire class—can be calculated using a common model. Dr. Werner used this model to calculate the Plan's losses attributable to each of the allegedly imprudent investments selected pursuant to the flawed monitoring process employed by the Plan's fiduciaries. This model shows that the Plan suffered losses because of the conduct at issue: fiduciary's flawed monitoring process. That is because replacing certain of the allegedly imprudent investments with suitable alternative investments would have resulted in substantially greater retirement savings for participants. This confers on Plaintiffs standing to pursue their breach of fiduciary duty claims. Quanta, however, attempts to parse Plaintiffs' claims per investment to argue a lack of standing as it relates to the DFA and American Beacon funds. ERISA and underlying trust law, however, do not permit this sort of parsing or netting of injury to limit standing. *See, e.g.*, *Peters*, 2 F.4th at 218 (citation omitted) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury.").

Yet, even if Quanta's argument that Plaintiffs' claim should be parsed per investment could be credited, its assertions fail to recognize that the calculations regarding the DFA and American Beacon funds only represent the losses in those funds (or lack thereof) as of the period-end closest to the issuance of Dr. Werner's report—not when the action was filed, when Plaintiffs moved for class certification, or when proof is offered at trial (before which Dr. Werner can update his calculations).[2] *See* Ex. D ¶ 16. When Quanta boldly suggests "there can plainly

---

[2]Federal Rule of Civil Procedure 26(a)(2) provides that parties must disclose any expert opinions they intend to offer at trial, and Rule 26(e)(2) provides parties with an ongoing duty to supplement expert reports. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 909 (5th Cir. 2010). Thus, when Dr. Werner updates his report to run damages through the date of

be no injury in fact and no redressability," *see* Opp., at 8, it ignores the other investments at issue and that these calculations may be updated for trial.

Quanta is asking Plaintiffs to actually *prove loss*, which is more than is required at this stage. "At the class certification stage, [] plaintiffs need only present a workable method for calculating damages on a classwide basis that is consistent with their theory of liability." *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 446 (D. Ariz. 2019); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (finding damages model at class certification stage must be consistent with its liability case). Critically, "uncertain damages calculations do not alone defeat certification." *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019).

### B. Plaintiffs are Entitled to Assert Each of Their Claims for Plan-Wide Relief

Quanta argues that Plaintiffs lack Article III standing to challenge Plan funds in which they did not invest, and that the class definition is overbroad. *See* Opp., at 8-11. Again, the structure of plans and ERISA's remedial scheme support plan-wide relief in participant suits:

> Courts have recognized that a plaintiff with Article III standing may proceed under § [502](a)(2) on behalf of the plan or other participants . . . [S]ince Peters has standing under Article III, we conclude that § [502](a)(2) provides her a cause of action to seek relief for the entire Plan . . . Peters has a personal stake in the litigation because her requested relief will stand or fall with that of the Plan.

*Peters v. Aetna Inc.*, 2 F.4th 199, 221 (4th Cir. 2021) (citations and alterations omitted). As in *Peters*, Plaintiffs have "adequately demonstrated that [they] and the Plan suffered a financial injury." *Peters*, 2 F.4th at 219; *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 132 (3d Cir. 2022) ("Article III does not prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly imprudent due to the same decisions or [conduct.]").

---

trial, his analysis may show damages associated with both the DFA and American Beacon funds. This uncertainty need not be resolved at this stage. *See Nissan*, 932 F.3d at 817.

Quanta relies heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), but, critically, omits its context. *TransUnion* involved claims that a credit reporting agency violated the Fair Credit Reporting Act when it allegedly provided misleading credit reports to third-party businesses indicating the associated consumers were terrorists, drug traffickers, and other serious criminals. *See* 141 S. Ct. at 2200. The Court recognized that, in a defamation case, those consumers whose inaccurate reports were actually disseminated suffered concrete harm. As for consumers whose inaccurate reports were not disseminated by the agency or who received mailings with a formatting defect, the Court found such consumers suffered no concrete harm. *See id*. at 2213. Here, there is no legitimate question that Plaintiffs allege all class members suffered the type of harm sufficient to establish standing Article III.

## C. Plaintiffs' General Release and Promise Not To Sue Do Not Destroy Typicality or Adequacy of Representation

Quanta argues that Plaintiffs are atypical and inadequate class representatives because they signed severance agreements that include a purported release and covenant not to sue. *See* Opp., at 11–15. Since actions under ERISA § 502(a)(2) are brought in a derivative capacity on behalf of a plan, courts around the country have routinely found that individual agreements related to employment cannot impair a participant's right to bring an action on behalf of a plan. The Court should not deviate from this well-reasoned approach.

### 1. The Release Does Not Prevent Plaintiffs' Claim on Behalf of the Plan

Quanta argues that Plaintiffs are inadequate and atypical class representatives because the release specifically bars ERISA claims. *See* Opp., at 14-15. It fails to acknowledge, however, "[t]he vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2)." *See In re Schering Plough Corp.*, 589 F.3d 585, 594 (3d Cir. 2009).

4

In fact, courts have found that agreements of various kinds signed by participants in a retirement plan do not preclude them from bringing suit on behalf of a plan. *See Munro v. Univ. of Southern California*, 896 F.3d 1088 (9th Cir. 2018). In *Munro*, the Ninth Circuit affirmed denial of a motion to compel arbitration of plan-wide breach of fiduciary duty claims based on an arbitration agreement in employment contracts signed by individual participants. *See id.*, at 1090-93 (citing *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999)). Similarly, the Sixth Circuit recently found that "[a]lthough § 502(a)(2) claims are brought by individual plaintiffs, it is the plan that takes legal claim to the recovery, suggesting that the claim really 'belongs' to the Plan." *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022). In *Hawkins*, the Sixth Circuit held that, "because § 502(a)(2) claims 'belong' to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration." *Id.* At least one subsequent court has held that the Sixth Circuit's reasoning in *Hawkins* applies to release agreements. *See Arnold v. Paredes*, 2024 WL 356751, at *7 (M.D. Tenn. Jan. 31, 2024); *see also Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) (collecting cases) ("In cases brought on behalf of a plan, most courts have held that 'individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty'; the consent of the plan is required for a release of 29 U.S.C. § 1132(a)(2) claims."). Likewise, the Second and Third Circuits each recently held that provisions of an employment agreement purporting to waive a participant's right to seek remedies for a plan are unenforceable. *See Henry on behalf of BSC Ventures Holdings, Inc. ESOP v. Wilmington Tr. NA*, 72 F.4th 499, 507–08 (3d Cir. 2023); *accord Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. May 1, 2024).

Ignoring the weight of authority, Defendant stakes its argument on *Chaplin v. NationsCredit Corp.*, erroneously drawing a parallel between plaintiffs seeking individual relief

and plaintiffs seeking plan-wide relief. *See* Opp., at 13-15. Although the Fifth Circuit in *Chaplin* enforced a release, it only did so for individuals seeking recovery on their own behalf— *not* on behalf of a plan. On the contrary, courts in the Fifth Circuit and nationwide recognize that claims brought on behalf of plans under ERISA § 502(a)(2) are derivative in nature. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 556 (S.D. Tex. 2005) (quoting *Matassarin v. Lynch*, 174 F.3d 549 (5th Cir.1999)) (allowing plan participants to sue for breach of fiduciary duty under § 502(a)(2) for the plan as a whole); *Arnold*, 2024 WL 356751, at *5 (plaintiffs had standing despite a general release as "the fact that Plaintiffs have explicitly brought their claims under ERISA §§ 502(a)(2) and (a)(3) is another sign that they intended to bring their claims on behalf of the plan."); *Cedeno*, 100 F.4th at 394.

Quanta also makes a public policy argument releases in the abstract, but again fails to address derivative claims under ERISA. *See* Opp., at 7–8. Courts have routinely found general releases preventing the right to pursue a remedy provided by ERISA to be *against* public policy. *See, e.g.*, *Pfahler v. Nat'l Latex Products Co.*, 517 F.3d 816, 836–37 (6th Cir. 2007) (quotation omitted); *Arnold*, 2024 WL 356751, at *11. Under prevailing interpretations across circuits and public policy, the release does not bar Plaintiffs from bringing claims on behalf of the Plan.

### 2. The "No Claims" Provision Does Not Bar These Claims

Similarly, Quanta argues that the agreements' "No Claims" provision renders Plaintiffs atypical and inadequate representatives. But Quanta conflates the covenant's general effect with specific effect on ERISA claims on behalf of a Plan.[3] As with release agreements, courts have

---

[3] Notably, both the "General Release" and "No Claims" provisions specifically reference Paragraph 8(c), which states that the terms of the paragraph "shall not apply" to claims "not releasable as a matter of law." ECF No. 77-3, at Ptf-MCKNIGHT_00003; ECF No. 77-4, at QUANTA_002025. This independent reason requires Quanta's argument to be rejected.

found that covenants not to sue do not preclude actions brought on behalf of a plan under ERISA § 502(a)(2). *See In re JDS Uniphase Corp. ERISA Litig.*, 2006 WL 2597995, at *1–2 (N.D. Cal. Sept. 11, 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 759–61 (9th Cir. 1999)).[4]

Courts in several circuits have held that covenants not to sue are not effective as to unknown, future ERISA claims. There is an important distinction of known ERISA rights and future violations; while waivers of known rights do not generally usher or cause future violations, "a covenant not to sue purports to waive prospectively any future rights or claims under ERISA, the result, in effect, is to grant the employer a license to violate ERISA in the future with impunity. ERISA rights are too important to permit this result." *Reighard v. Limbach Co., Inc.*, 157 F. Supp. 2d 730, 733 (E.D. Va. 2001); *see also Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991) (covenant not to sue and release could not have constituted a knowing and voluntary waiver of right to sue for then-unknown claim under ERISA).[5] The Fifth Circuit has also distinguished between known and unknown claims. *See Sullivan v. AT & T, Inc.*, 2010 WL 905567, at *4 (N.D. Tex. March 12, 2010) (denying dismissal).[6]

The remedies available to a plan in an ERISA action differ from the remedies available for other claims mentioned in the agreement. For instance, the release also covers discrimination

---

[4]While the court in *JDS Uniphase* stylized the agreement at issue as a release, it is clear from the language of the agreement in the court's order that it was considering a release and covenant not to sue. *See* 2006 WL 2597995, at *1 (reviewing agreement stating, "you completely release from and agree not to file, cause to be filed, or otherwise pursue against the company . . . .").

[5]Courts have recognized that federal authority "suggests that releases of prospective ERISA claims may be prohibited as violating public policy." *Anastos v. IKEA Property, Inc.*, 526 F. Supp. 3d 1353 (N.D. Ga. Mar. 17, 2021).

[6]Quanta suggests that Plaintiffs have breached an agreement by filing the complaint, *see* Opp., at 12, but courts have declined to find a breach of contract under these circumstances. *See Buster v. Compensation Comm. of Bd. of Directors of Mechanics Bank*, 2017 WL 2999990, at *13 (N.D. Cal. July 14, 2017).

claims under the Age Discrimination in Employment Act, where relief is solely individualized. *See Juliam v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002). Quanta's position regarding Plaintiffs' ability to recover in a Plan-wide action is at odds with ERISA remedies principles, as any relief would necessarily flow to the Plan and Plaintiffs' allocation of any such relief comes by operation of the Plan. *See Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 WL 3868803, at *3 (S.D.N.Y. Sept. 5, 2017) (analyzing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008)) ("[T]he fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit . . . does not convert their derivative suit into an action for individual relief.").

### 3. Releases Do Not Render Named Plaintiffs Atypical

Defendant suggests that, enforceability aside, the agreements will necessarily require Plaintiffs to "devote considerable time to rebut Defendants claims." Opp., at 11. But releases do automatically defeat typicality. *See Cockerill v. Corteva, Inc*., 345 F.R.D. 81, 120 (E.D. Pa. 2023) ("[R]eleases are relevant for certification analyses only to the extent that they affect the similarity of named and unnamed plaintiffs. Any inquiry into the merits of the defense that is not necessary to determine a Rule 23 requirement, is premature.") (internal citations omitted); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 534-538 (E.D. Pa. 2010) (where class members have signed releases similar to named plaintiff, "shared interest in establishing defendants' liability [ ] vastly outweighs" individual concerns); *see also Taylor v. United Techs. Corp*., 2008 WL 2333120, at *4 (D. Conn. June 3, 2008) (releases do not affect typicality where ERISA claims allege plan-wide damages); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) (certification not precluded where employees "routinely" signed releases).

Notably, the only two releases in certification evidence contain identical language with respect to claims addressed and governing law. Quanta, which bears the burden to show the

8

likelihood of unique defenses, has not produced any releases that differ from Plaintiffs' release, or any evidence regarding the number of former employees who are subject to releases. *Cockerill*, 345 F.R.D. at 121. "So, even if the releases absorb a significant focus of litigation, [Plaintiffs are] not atypical, but incentivized in the same way as many unnamed members." *Id*.

### D. ERISA §404(c) Defenses Do Not Require Individualized Inquiries

Quanta also challenges class certification based on a potential (yet inapplicable) affirmative defense under ERISA § 404(c). While defendants have attempted to use *Langbecker* to contest class certification, "every district court to have addressed this issue since *Langbecker* has held that the assertion of a § 404(c) defense does not defeat typicality (or otherwise bar certification), in large part because the defense is not unique to the claims of certain plaintiffs or class members but presumably would apply to all Plan participants." *In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367, at *6 (D. Kan. Apr. 6, 2011) (collecting cases); *see also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109-10 (N.D. Cal. 2008) (finding § 404(c) "is not an appropriate basis to deny class certification."). In any case, "[n]umerous courts have held that § 404(c) is inapplicable to a fiduciary's selection or retention of imprudent investment options." *In re Suntrust Banks, Inc. Erisa Litig.*, 2015 WL 12734077, at *2 (N.D. Ga. Oct. 8, 2015) (citing *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011)). This is because the choice of investments on a plan menu "is not within the participant's power." *Howell*, 633 F.3d at 567.

While Quanta notes the Third Circuit previously took a different approach in *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996), this was before the Department of Labor ("DOL") amended its regulations to clarify the safe harbor "does not serve to relieve a fiduciary from its duty to prudently select and monitor any service provider or designated investment alternative offered under the plan." *Suntrust*, 2015 WL 12734077, at *2 (quoting 29 C.F.R. §

9

2550.404c-1(d)(2)(iv)) (distinguishing *Unisys*).  Plaintiffs are aware of no court since *Unisys* that has found § 404(c) precludes certification under these circumstances.  *See, e.g.*, *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 170 (E.D. Pa. 2009); *cf. Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019) (application of ERISA § 404(c) as urged "would allow a fiduciary to avoid liability by stocking a plan with hundreds of options, even if the majority were overpriced or underperforming").  Quanta desperately cites *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), to suggest that the Court need not defer to the DOL's interpretation, but fails to identify a single decision denying certification because of a purported safe harbor defense after *Langbecker* and the DOL's 2010 guidance.

## II.  CONCLUSION

The Court should grant the Motion in its entirety.

| | |
|---|---|
| DATED: November 22, 2024 | Respectfully Submitted, |
| James C. Shah<br>Alec J. Berin<br>MILLER SHAH LLP<br>1845 Walnut Street, Suite 806<br>Philadelphia, PA 19103<br>Telephone: (866) 540-5505<br>Facsimile: (866) 300-7367<br>Email: jcshah@millershah.com<br>         ajberin@millershah.com<br><br>*Attorneys for Plaintiffs, the Plan,*<br>*and the Proposed Class* | */s/ John S. "Jack" Edwards, Jr.*<br>John S. "Jack" Edwards, Jr.<br>Texas Bar No. 24040851<br>S.D. Tex. No. 38095<br>AJAMIE LLP<br>Pennzoil Place - South Tower<br>711 Louisiana, Suite 2150<br>Houston, TX 77002<br>Telephone: (713) 860-1600<br>Facsimile: (713) 860-1699<br>Email: jedwards@ajamie.com |

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing was served via the Court's ECF/CM e-filing system to all counsel of record on November 22, 2024.

> */s/ John S. "Jack" Edwards, Jr.*
> John S. "Jack" Edwards, Jr

10