UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY LALIBERTE and MARIE MCKNIGHT, individually and as representatives of a class of similarly situated persons, on behalf of the QUANTA SERVICES, INC. 401(K) SAVINGS PLAN, § § § § § § § § Plaintiffs, § § v. § § QUANTA SERVICES, INC., § § Defendant. § | | Case No: 4:22-cv-03290 (AHB)<br><br>Oral Argument Requested |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF ARTICLE III STANDING**

Defendant Quanta Services, Inc. ("Quanta" or "Defendant"),[1] by and through the undersigned counsel, respectfully requests that this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismiss Plaintiffs' Complaint for the reasons set forth below.

---

[1] Quanta is the only remaining defendant in this matter. As noted in Plaintiffs' class certification motion: "Plaintiffs originally also named the Board of Directors a/k/a the Board of Trustees of Quanta Services, Inc. ("Board") and its members and the Investment Committee of Quanta Services, Inc. (the "Committee") as defendants in this case, but the parties stipulated to dismiss these entities without prejudice[.]" Dkt. 71 at 3 n.1; *see also* Dkt. 55.

## **INTRODUCTION**

Plaintiffs Marie McKnight ("Plaintiff McKnight") and Mary Laliberte ("Plaintiff Laliberte") are two former employees of Quanta, each of whom once participated in the Quanta 401(k) Savings Plan ("the Plan") but withdrew all investments from the Plan years ago. As part of their separation from employment with Quanta, Plaintiffs knowingly and voluntarily executed materially identical severance agreements ("Severance Agreements") in exchange for valuable consideration. Therein, Plaintiffs covenanted not "to commence, file, voluntarily aid or in any way prosecute" "any action, charge, complaint or other proceeding" against Quanta.

In violation of their covenants, Plaintiffs now assert in the Complaint that Quanta breached its fiduciary duties under ERISA because the Plan offered three allegedly imprudent investment options: (1) the actively managed Fidelity Freedom Funds ("Freedom Funds"); (2) the American Beacon Small Cap Value Fund Class R5 Fund ("American Beacon Fund"); and (3) the DFA U.S. Small-Cap Value Fund ("DFA Fund") (collectively "Challenged Investments"). They seek to recover (1) monetary "losses" stemming from these allegedly imprudent investments; and (2) non-monetary, prospective declaratory and injunctive relief, requiring Quanta to "act in the best interests of the Plan and its participants." However, neither Plaintiff possesses Article III standing to challenge the Challenged Investments or recover either form of requested relief. The Complaint must therefore be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Steel Co. v. Citizen for a Better Env't*, 523 U.S. 83, 102 (1998) (Article III standing is a jurisdictional prerequisite).

Both Plaintiffs lack Article III standing for three independent reasons.

*First*, Plaintiff McKnight lacks Article III standing to seek any monetary relief. Plaintiff McKnight invested only in the American Beacon and DFA Funds, not the Freedom Funds. For the two funds in which she did invest, Plaintiff McKnight still has suffered no injury-in-fact that is redressable to her. The reason is simple: Plaintiff McKnight proffered an expert, Dr. Adam Werner ("Dr. Werner"), who opined in his Expert Report that Plan participants suffered **no losses** as a result of the Plan offering the American Beacon and DFA Funds. Indeed, there is no dispute that Plan participants—including Plaintiff McKnight—suffered no losses according to Dr. Werner both *as of* June 30, 2024 (the date Dr. Werner focuses on in his Report), and *as of* September 30, 2022 (when Plaintiffs filed this Complaint). Without any investment losses associated with the two funds in which she invested, Plaintiff McKnight suffered no concrete injury-in-fact that "is likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008).

*Second*, Plaintiff McKnight is a former Plan participant. Even so, she seeks prospective injunctive and declaratory relief, asking this Court to "prohibit the alleged practices" and to require Quanta to "act in the best interest of Plan participants." Plaintiff McKnight has no Article III standing to pursue such prospective relief because, as Judge Eskridge recently put it, former participants cannot "show that such relief would redress any continuing injury that either has suffered." *McWhorter v. Serv. Corp. Int'l*, 2024 WL 4165074, at *7 (S.D. Tex. Sept. 12, 2024); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (plaintiffs must establish Article III standing "***for each claim*** that they press and ***for each form of relief that they seek*** (for example, injunctive relief and damages)") (emphases added).

*Third*, Plaintiff McKnight covenanted not to "commence, file, voluntarily aid or in any way prosecute" "any action, charge, complaint or other proceeding" against Quanta. This lawsuit

3

breaches that agreement and strips her of Article III standing to pursue it. Indeed, the Fifth Circuit dictates that contract law governs the interpretation of severance agreements, and the Court therefore "must read the Agreement's provisions as a whole . . . giving effect to all its terms without rendering any of them meaningless or superfluous." *BP Expl. & Prod., Inc. v. Claimant Id 100281817*, 919 F.3d 284, 288 n.2 (5th Cir. 2019) (citations omitted). Applying this exact principle, Judge Rodriguez from the Western District of Texas recently enforced a materially identical covenant not to sue and dismissed an ERISA breach of fiduciary duty case like this one—brought by Plaintiffs' same counsel—for lack of Article III standing under Rule 12(b)(1). *See* Ex. I, *Esquivel v. Whataburger*, No. SA-24-CV-00310-XR (S.D.Tex.), Dkt. 31 (Nov. 8, 2024) (hereinafter "*Esquivel* Order"). This Court should do the same.

The same is true of Plaintiff Laliberte. Plaintiff Laliberte is also a former participant and also covenanted not to sue Quanta, so she lacks Article III standing for the same reasons as Plaintiff McKnight. With respect to Article III standing to seek monetary relief, Plaintiff Laliberte invested in the Freedom Funds (not the American Beacon or DFA Funds), but even so, Plaintiffs' proffered expert, Dr. Werner, admitted at deposition that Plan participants suffered no losses with respect to the Freedom Funds either. In fact, Dr. Werner concluded that the Freedom Funds *outperformed* the American Beacon Funds (the funds Plaintiffs say should have been offered instead) until the Freedom Funds were removed from the Plan in April 2021. Notably, the Freedom Funds were removed from the Plan before Plaintiffs filed this lawsuit. Quanta's motion for summary judgment, filed simultaneously herewith, Dkt. 88, explains in detail Dr. Werner's testimony in this regard. Accordingly, no redressable injury-in-fact exists vis-à-vis the Freedom Funds, and Plaintiff Laliberte lacks Article III standing as well.

For each of these reasons, and those explained further below, Plaintiffs each lack Article III standing, and the Complaint should be dismissed as a result.

## RELEVANT FACTUAL BACKGROUND

One of the ways Quanta helps its employees save for retirement is its participant-directed 401(k) plan. Compl. ¶ 19. Over the putative class period, the Plan offered a diverse menu of investment options which, at any given point in time, consisted of approximately 17 funds covering different asset classes, investment styles, and risk-reward profiles. *E.g.*, Ex. A (2020 Form 5500) at QUANTA_001828. Each participant can choose which investments to allocate their retirement savings to from among those options. Compl. ¶ 19. The value of each participant's retirement benefit thus depends on the amount they contribute and the performance of the investments they select.

***Plaintiff McKnight***. Plaintiff McKnight is a former employee and a former Plan participant. Compl. ¶ 10. Plaintiff McKnight invested in the DFA and American Beacon Funds, but she never invested in the Freedom Funds. *See* Dkt. 71-4 (McKnight Declaration) ¶ 5. On January 2, 2019, Plaintiff McKnight stopped investing in the DFA Fund; on April 15, 2020, she likewise ceased investing in the American Beacon Fund. And as of October 2020, Plaintiff McKnight withdrew all of her investments and no longer participated in the Plan as of that date. Dkt. 71-4, ¶ 5; Ex. B (McKnight Transcript) at 122:13-123:12.

***Plaintiff Laliberte***. Similarly, Plaintiff Laliberte is no longer employed with Quanta, and she has withdrawn all of her assets from the Plan. Compl. ¶ 9. Plaintiff Laliberte invested in the Fidelity Freedom 2055 Fund K but did not invest in either the American Beacon or DFA Funds. Dkt. 71-3 (Laliberte Declaration), ¶ 5. In June 2020, Plaintiff Laliberte withdrew all funds that she

5

had invested in the Plan at that time. Ex. C (Laliberte Transcript) at 35:20-36:24:13. Plaintiff Laliberte is a former Plan participant. Compl. ¶ 9; Dkt. 71-3, ¶ 5.

***Plaintiffs' Severance Agreements***. As part of their separation from employment with Quanta, both Plaintiff McKnight and Laliberte "knowingly" and "voluntarily" entered into materially identical Severance Agreements. Ex. D (McKnight Severance Agreement) at 6; Ex. E (Laliberte Severance Agreement) at 6. As consideration for their promises set forth in the Severance Agreements, Plaintiffs McKnight and Laliberte received payments of $11,425.27 and $2,843.00, respectively. Ex. D at 1; Ex. E at 1 ("Employee acknowledges and agrees that the Severance Benefits are being provided in consideration for Employee's execution of this Agreement."); *see also* Ex. B at 55:3-7; Ex. C at 29:5-7.

In the Severance Agreements, Plaintiffs each agreed not to sue Quanta. Specifically, under Section 8, titled "No Claims," Plaintiffs voluntarily agreed "not to commence, file, voluntarily aid or ***in any way*** prosecute or cause to be commenced or prosecuted against the Released Parties [including Quanta] ***any action, charge, complaint or other proceeding***. . . ." (referred to herein as "Promise Not To Sue"). Ex. D at 3; Ex. E at 3 (emphasis added).

## STANDARD OF REVIEW UNDER FRCP 12(B)(1)

"[T]he issue of standing is one of subject matter jurisdiction" and can be challenged under Rule 12(b)(1).[2] *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *see also* Ex. I, *Esquivel*

---

[2] When evaluating a motion to dismiss under Rule 12(b)(1), the Court is free to consider materials outside the pleadings. *Robinson v. TCI/U.S. W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (noting that, when deciding a motion to dismiss pursuant to Rule 12(b)(1), a court may evaluate "the complaint supplemented by undisputed facts evidenced in the record, or [] the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"); Ex. I, *Esquivel* Order at 5 (dismissing case for lack of Article III standing and relying on "documentary evidence" "outside the pleadings").

6

Order at 3 ("Rule 12(b)(1) provides for dismissal of a claim based on lack of subject matter jurisdiction."). "[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis*, 554 U.S. at 733 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Importantly, Plaintiffs "bear[] the burden of proof that jurisdiction does in fact exist," *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), which includes establishing that there is "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis*, 554 U.S. at 733. The Supreme Court has repeatedly made clear that Plaintiffs carry the burden to establish Article III standing "*for each claim* that they press and *for each form of relief that they seek* (for example, injunctive relief and damages)." *See TransUnion LLC*, 594 U.S. at 431 (emphasis added); *see also Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (same, and explaining constitutional standing is not "cumulative" or "dispensed in gross"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006) (same). This means that, for each claim and each form of relief, Plaintiffs must show they themselves suffered a "concrete injury" caused by the violation that would be redressable to them personally. *Thole v. U.S. Bank, N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III," and plaintiffs need personal Article III standing even for claims brought on behalf of an ERISA plan). Absent such a showing, the Court lacks subject-matter jurisdiction and must dismiss Plaintiffs' claims. *Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024).

# ARGUMENT

I. **Plaintiff McKnight Lacks Article III Standing**

    A. **Plaintiff McKnight Has Suffered No Redressable Injury as a Result of Investing in the American Beacon and DFA Funds.**

Plaintiff McKnight lacks Article III standing to recover any claimed monetary losses because she did not suffer any injury-in-fact redressable to her by investing in the American Beacon and DFA Funds. *See supra* at 6-7 (summarizing Supreme Court precedent requiring plaintiff to establish Article III standing as to "each form or relief"). Plaintiff McKnight alleges in the Complaint that she has Article III standing because she "maintained [challenged] investments in the Plan," and the Plan suffered millions of dollars in "losses" that are redressable to her as a result of Quanta's fiduciary breach. Compl. ¶ 18. The undisputed record evidence—including Plaintiffs' own expert evidence—shows otherwise.

To satisfy Article III's standing requirement, Plaintiff McKnight must demonstrate the existence of a "concrete injury" that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340 (2016) ("a concrete injury must be de facto; that is, it must actually exist"). As the Fifth Circuit has recognized, a concrete "injury is not alleged by reference to fiduciary misconduct under ERISA alone." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir. 2016); *see also Lucas v. MGM Resorts Int'l*, No. 2:20-cv-01750-JAD-NJK (D. Nev.), Dkt. 189 (Dec. 10, 2024) at 11 (hereinafter "*Lucas* Order") (dismissing complaint for lack of Article III standing because plaintiff alleging breach of fiduciary duty failed to demonstrate that alleged imprudence caused her "individualized injury"). Rather, Plaintiff McKnight must demonstrate "at a minimum. . . a net loss in investment value that is fairly traceable to the defendants' challenged actions." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010); *see also In re UBS ERISA Litig.*, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*,

8

*Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) ("[T]o demonstrate a constitutionally justiciable injury under ERISA, plaintiffs must allege that they suffered specific losses as a result of the alleged breach of fiduciary duty.").

Plaintiff McKnight can make no such showing here. As explained, Plaintiff McKnight invested in the DFA and American Beacon Funds. *See supra* at 5. But her own expert expressly concluded in his Report that Plan participants suffered *no losses* from those investments: Dr. Werner opined "[a]s of June 30, 2024, **there were no losses attributable to Plan participants** as a result of Quanta's failure to replace the American Beacon Fund and DFA Fund with the Janus Henderson Small Cap Value N and the Schwab Fundamental International Small Cap Equity, respectively, by 1Q2020." Ex. F (Werner Report) at 6 (emphasis added). To the contrary, Dr. Werner testified at deposition that the Plan was *better off* to the tune of approximately $4 million by offering the American Beacon and DFA Funds. Ex. G (Werner Transcript) at 103:15-21, 101:6-9; *see also* Dkt. 88. Importantly, Dr. Werner concluded that the Plan participants suffered no losses as of June 30, 2024 (the date that he focuses on in his Report), and also as of September 30, 2022 (when Plaintiffs filed this lawsuit). According to Dr. Werner, as of September 30, 2022, Plan participants were *better off* by $1,681,728 for the American Beacon Fund and *better off* by $164,714 for the DFA Fund. Ex. H (Werner Backup Materials) at Beacon_Losses, DFA_Losses. As the District Court of Nevada recently observed when dismissing a breach of fiduciary duty claim for lack of standing, a plaintiff's "theory of the case frames the standing analysis[.]" *Lucas* Order at 12. Thus, plaintiffs cannot demonstrate standing where their own expert evidence shows that they suffered no loss as a result of an alleged breach of fiduciary duty. *Id.* at 13 (finding that a plaintiff lacked standing to challenge allegedly imprudent recordkeeping fees where her own

9

expert evidence showed that she never overpaid for recordkeeping services); *accord Sabana v. CoreLogic, Inc.*, 2024 WL 755723, at *1 (C.D. Cal. Jan. 26, 2024) (same).

Those same principles warrant dismissal here. Because Plan participants earned more money in the American Beacon and DFA Funds than they would have if Plaintiffs so-called prudent alternatives been offered instead, Plaintiff McKnight suffered no injury-in-fact, and there can be no redressability. *See, e.g.*, *Brown*, 628 F.3d at 455. She acknowledges as much: Plaintiff McKnight testified that "if [Dr. Werner] was saying there's no damages from [DFA and American Beacon Funds], why are we at this point now?" Ex. B at 98:3-8. Absent any redressable injury, Plaintiff McKnight does not possess Article III standing to recover any monetary losses as a result of her investment in the American Beacon and DFA Funds. Her claims for monetary damages or losses should be dismissed for lack of Article III standing. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (participant benefits in a defined-contribution plan are determined by the investments held in their individual accounts).[3]

---

[3] Plaintiff McKnight cannot have Article III standing to seek losses or damages based on the Freedom Funds either, because she did not invest in the Freedom Funds. *See, e.g.*, *Davis on behalf of Old Dominion 401(k) Ret. Plan v. Old Dominion Freight Line, Inc.*, 2023 WL 5751524, at *6 (M.D.N.C. Sept. 6, 2023) (dismissing ERISA fiduciary-duty claim for lack of Article III standing where the named plaintiff failed to allege he "invested in the challenged funds, and he neither demonstrate[d] nor even claim[ed] that his own retirement account was harmed by the alleged imprudent investment options"); *Perkins v. United Surgical Partners Int'l, Inc.*, 2022 WL 824839, at *3-4 (N.D. Tex. Mar. 18, 2022) (same because plaintiffs who do not invest in the challenged funds cannot demonstrate an injury "to the individual plaintiffs themselves"); *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (same and noting that "[s]ince *Thole*, district courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in"); *Lange v. Infinity Healthcare Physicians, S.C.*, 2021 WL 3022117, at *2-4 (W.D. Wis. July 16, 2021) (same because a "plaintiff lacks standing if she challenges investment decisions that did not personally affect her"); *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at *3 (N.D. Ill. Mar. 16, 2020) (same because "Plaintiffs lack standing to sue regarding funds in which they did not personally invest" since they have "not suffered any individualized harm as to these funds"); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) (same because "Plaintiffs here never invested in the Non-Selected Funds and consequently

**B.     As A Former Plan Participant, Plaintiff McKnight Does Not Have Article III Standing To Pursue Declaratory Or Injunctive Relief.**

In the Complaint, Plaintiff McKnight also purports to seek "prospective" injunctive and declaratory relief, seeking to "prohibit the alleged practices" and to require Quanta to "act in the best interest of Plan participants." Compl. ¶¶ 8(a), (b). As explained, Plaintiff McKnight bears the burden to establish her Article III standing as to this specific "form of relief." *See supra* at 7. She cannot. Plaintiff McKnight is a former Plan participant who divested all investments in the Plan as of October 2020. *See supra* at 5. As a former Plan participant, she has no Article III standing to pursue non-monetary declaratory or injunctive relief.

It is axiomatic that "plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a *continuing injury*." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (emphasis added). Mere exposure to past harm is insufficient because "injunctive and declaratory relief 'cannot conceivably remedy any past wrong.'" *Id.* (quoting *Citizens for a Better Env't*, 523 U.S. at 108). Without any current investments in the Plan, Plaintiff McKnight is neither presently suffering nor at risk of suffering any injury from Quanta's ongoing management of the Plan. Said differently, Plaintiff's McKnight's claimed injuries are in the past, so any injunctive or other relief would not affect her—making her claim for non-monetary prospective declaratory and injunctive relief non-redressable to her. *See Hurrington v. Gonzalez*, 2024 WL 843920, at *2 (S.D. Tex. Feb. 28, 2024) ("The Fifth Circuit has clearly held that

---

suffered no losses as a result of the underperformance of those funds"); *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *5 (D.D.C. Jan. 8, 2019) (same because plaintiffs cannot satisfy standing requirements in regards to "an investment option neither Plaintiff selected"); *accord In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021) ("plan participants . . . can seek redress on behalf of their Plan only . . . to the extent that their own accounts have suffered injury – which is to say, they cannot sue for generalized mismanagement, only for mismanagement that caused injury to them as individual participants").

injunctive and declaratory relief are not available to remedy a past harm[.]") (citing *Stinger*, 942 F.3d at 720-21)).

This is precisely why it is well-settled that "[p]lan Participants, who have already cashed out of the Plan, lack Article III standing as to redressability vis-à-vis their claims for prospective equitable relief." *DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015). In fact, Judge Eskridge from this District just recently held that former participants in an ERISA plan lacked Article III standing to pursue injunctive relief because they cannot "show that such relief would redress any continuing injury that either has suffered." *McWhorter*, 2024 WL 4165074, at *7; *see also Trauernicht v. Genworth Fin. Inc.*, 2023 WL 5961651, at *6 (E.D. Va. Sept. 13, 2023) (finding former plan participants lacked standing to bring claims for prospective relief).[4] So too here.

That Plaintiff McKnight is pursuing claims "on behalf of the Plan" does not change the result. The Supreme Court in *Thole v. U.S. Bank* confirmed "[t]here is no ERISA exception to Article III." 590 U.S. at 547. This means a "plaintiff must demonstrate standing for himself or herself, not just for others he or she professes to represent." *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021); *see also Trauernicht*, 2023 WL 5961651, at *6 (*Thole* "reinforced the idea that plaintiffs asserting an ERISA claim must meet all requirements for constitutional standing, including that their claims are redressable"); *Lucas* Order at 11 (rejecting the argument that a named plaintiff in a breach of fiduciary duty class action can demonstrate standing by showing injury to other Plan participants because "class representatives 'still must allege and show that they

---

[4] *Peters v. Aetna, Inc.*, 2023 WL 3829407, at *7 (W.D.N.C. June 5, 2023) (same); *Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *5 (W.D. Wash. Feb. 7, 2023) (same); *Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *6 (D. Conn. May 25, 2022) (same); *Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *13 (E.D.N.C. Mar. 31, 2021) (same); *Silva v. Evonik Corp.*, 2020 WL 12574912, at *2 (D.N.J. Dec. 30, 2020) (same).

personally have been injured'") (quoting *Winsor v. Seuoia Bens. & Ins. Servs.*, 62 F.4th 517, 523 (9th Cir. 2023)). Any contrary conclusion would run counter to *Thole* and the many decisions cited *supra* holding that a plaintiff bringing fiduciary breach claims on behalf of a Plan must still satisfy the redressability requirement.

### C. Plaintiff McKnight Knowingly and Voluntarily Covenanted Not To Sue Quanta.

Plaintiff McKnight "knowingly" and "voluntarily" entered into the Severance Agreement, and she received valuable consideration—in the amount of $11,425.27—for doing so. *See supra* at 6; Ex. D at 3. Therein, Plaintiff McKnight expressly promised "not to commence, file, voluntarily aid or in any other way prosecute" "any action, charge, complaint, or other proceeding," against the "Released Parties"—which includes Quanta. Ex. D at 3 ("No Claims"). Nonetheless, Plaintiff McKnight now attempts to evade her contractual obligations and deprive Quanta of its bargained-for benefit, all while retaining thousands of dollars in severance. But the law does not permit Plaintiff McKnight to have her cake and eat it too. Because Plaintiff McKnight relinquished the right to pursue the very claims she now seeks to advance in the Complaint, she lacks Article III standing. Dismissal of Plaintiff's McKnight's claims is appropriate under Rule 12(b)(1) for this additional reason.

Contract law governs the interpretation of severance agreements like Plaintiff McKnight's, and the Court therefore "must read the Agreement's provisions as a whole . . . giving effect to all its terms 'without rendering any of them meaningless or superfluous.'" *BP Expl. & Prod., Inc.*, 919 F.3d at 288 n.2; *see also Stamps v. Univ. of Texas Sys.*, 2024 WL 2194856, at *4 (W.D. Tex. May 15, 2024) ("Settlement Agreements and Release agreements are contracts, and their construction is governed by legal principles applicable to contracts generally."); *see also infra* at 14 (discussing *Esquivel*). Likewise, in the Fifth Circuit, public policy favors enforcement of

covenants not to sue as long as they are "knowing" and "voluntary." *See e.g.*, *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 n.6 (5th Cir. 2002); *see also Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) ("A general release, or a covenant not to sue, is not ordinarily against public policy.").

Those principles compel dismissal here. The language in the Promise Not To Sue is as clear as it is broad: Plaintiff McKnight may not initiate *any* complaint or suit against Quanta. *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) ("Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law."). Necessarily, this encompasses the breach of fiduciary duty claims under ERISA that Plaintiff McKnight advances here.

Judge Rodriguez's recent decision in *Esquivel v. Whataburger*—which dismissed a similar ERISA fiduciary breach class action based on a similar promise not to sue under Rule 12(b)(1)—is instructive. Ex. I, *Esquivel* Order at 13. There, the plaintiff (represented by Plaintiffs' same counsel) sought to sue his former employer for breaching its fiduciary duties under ERISA, despite previously entering into a severance agreement that included a "promise not to sue [his employer] in court." *Id.* at 12. Judge Rodriguez correctly noted that Fifth Circuit law mandates that, when interpreting severance agreements covering ERISA claims, as here, courts must apply the federal common law of contracts. *Id.* at 11. In doing so, "courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Id.* at 12 (citing *Int'l Turbine Servs., Inc.*, 268 F.3d at 497). Judge Rodriguez found the covenant not to sue language in *Esquivel* was "clear and unambiguous": after all, the plaintiff "expressly promised not to sue any Releasee." *Id.* (noting the Agreement's definition of "Releasee" included the defendants). Accordingly, Judge Rodriguez aptly concluded:

14

> Based on the clear, unambiguous language of the Promise Not to Sue, the Court finds it encompasses the claims asserted in the Plaintiff's lawsuit. Therefore, Plaintiff's claims are barred by the Promise Not to Sue and may be dismissed under Federal Rule 12(b)(1).

*Id*. at 13.

The same result is warranted here. Exactly as in *Esquivel*, Plaintiff McKnight agreed not to "commence, file," or "in any way" "cause to be commenced" "any action, charge, complaint, or other proceeding" against Quanta. Ex. D at 3. Plaintiff McKnight breached that agreement by filing the Complaint. *See, e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1307 (5th Cir. 1992) (party who files a lawsuit that is within the scope of a covenant not to sue commits an "obvious" breach). Accordingly, there can be no "controversy" for Article III purposes. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71-72 (2013) (explaining that an Article III controversy must exist at all stages of the litigation); *see also e.g.*, *Prop. Disclosure Techs. LLC v. Homes*, 2015 WL 11618242, at *3 (E.D. Tex. Jan. 21, 2015) (finding that "[p]laintiff's covenant not to sue eliminates any actual controversy"); *Garcia v. Glob Dev. Strategies Inc.*, 44 F. Supp. 3d 666, 671 (W.D. Tex. 2014) (summarizing *Already, LLC v. Nike, Inc.*, 586 U.S. 85, 93 (2013), as "holding that a covenant not to sue for purported trademark violation was sufficient to render an Article III controversy moot").

Plaintiff McKnight will likely argue that the Promise Not To Sue is unenforceable because she purports to assert her claims in a representative capacity on behalf of the Plan. She is wrong. As a threshold legal matter, a covenant not to sue and a general release are two separate provisions and must be analyzed independently as a result. Indeed, "[t]he Fifth Circuit has recognized that a release differs from a covenant not to sue; while a covenant not to sue preserves the cause of action, a release destroys it." *Nat'l Am. Ins. Co. v. Melancon*, 1999 WL 600372, at *3 (E.D. La. Aug. 9, 1999) (citing *Foremost County Mutual Ins. Co. v. Home Indemnity Co.*, 897 F.2d 754, 761 n.11

15

(5th Cir. 1990) (collecting cases)); *see also* Ex. I, *Esquivel* Order at 10 (distinguishing between a covenant not to sue and a release, *discussed supra* at 14-15). This means that the covenant precludes Plaintiff McKnight from suing in this action, on her own behalf or on behalf of the Plan, but it does not impact the ability of others to sue in their own right or on behalf of the Plan. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 600 (3d Cir. 2009) ("[E]ven if a release does not bar an individual from bringing an ERISA § 502(a)(2) on behalf of a plan, it could be argued that the covenant not to sue bars [plaintiff] from filing a lawsuit and serving as a lead plaintiff."); *Alfonso v. Cumulus Media, Inc.*, 2021 WL 5033479, at *2 (N.D. Ga. Oct. 15, 2021) ("[E]ven if the Plaintiff did not actually waive the Plan's ERISA claims, he nonetheless gave up his ability to bring those claims on behalf of the Plan" by signing the covenant not to sue); *Wagner v. Stiefel Labs., Inc.*, 2015 WL 4557686, at *12 (N.D. Ga. June 18, 2015) (collecting cases finding that "covenants not to sue bar a plaintiff from bringing a Section 502(a)(2) claim" on behalf of a plan). That is, the covenant merely determines *who* can (or cannot) bring a claim on behalf of the Plan. Plaintiff McKnight, here, cannot.

Any attempt by Plaintiff McKnight to muddy these waters should be disregarded. Her same counsel asserted in *Esquivel* that the covenant not to sue should be treated just like a release, and both agreements were unenforceable because the plaintiff there also purported to bring claims on behalf of the Plan. *See* Ex. I, *Esquivel* Order at 10. Judge Rodriguez correctly rejected this argument. As a preliminary matter, Judge Rodriguez noted the plethora of caselaw distinguishing between releases and covenants not to sue. *Id.* at 10-11 (collecting cases, including *In re Schering Plough* and *Wagner*). He then analyzed the "text of Section 502," finding there was no "statutory stricture" on covenants not to sue. *Id*. at 11. In this regard, Judge Rodriguez noted, ERISA is unlike "other Congressional Acts." *Id*. For Article III purposes, the plaintiff in *Esquivel* did not have

16

Article III standing to bring breach of fiduciary claims on behalf of the Plan, because he promised not to sue the defendants, and the same is true here.

Because Plaintiff McKnight lacks Article III standing to press her claims based on her Promise Not To Sue, she should be dismissed from the case for this additional reason.

II. **Plaintiff Laliberte Similarly Lacks Article III Standing**.

    A. **Plaintiff Laliberte Has Suffered No Redressable Injury as a Result of Investing in the Freedom Funds.**

Plaintiff Laliberte never invested in the American Beacon or DFA Funds, so she has no Article III standing as to those two funds for the reasons described above. *See supra* at n.3 (collecting cases). And Plan participants suffered no losses from the American Beacon and DFA Funds in any event, so even if she had invested in them, she would not have Article III standing for the same reasons as Plaintiff McKnight. She fares no better with respect to the actively managed Freedom Funds. Although Plaintiff Laliberte invested in the Freedom Funds, she nonetheless suffered no monetary injury that can be redressed by this Court—stripping of her Article III standing.

As explained in Quanta's motion for summary judgment, filed simultaneously herewith (Dkt. 88), it is undisputed—based on the testimony of Plaintiff Laliberte's own expert, Dr. Werner—that Plan participants suffered no losses attributable to Freedom Funds. *Id*. at 9-14. In fact, Dr. Werner concluded that the Freedom Funds outperformed the American Funds (that Plaintiffs claim as the appropriate comparator) over the entire time period Plaintiffs challenge—from September 2016 until the Freedom Funds were removed from the Plan in April 2021. In other words, even when Plaintiffs filed this lawsuit, Plan participants suffered no losses from the Freedom Funds. *Id*; *see also e.g.*, *Royal Hospitality Corp. v. Underwriters at Lloyd's*, 2019 WL 4228490, at *4 (S.D. Tex. Aug. 20, 2019) (holding plaintiff "cannot file a case" without having

Article III "standing to litigate in federal courts," including an "injury in fact"). Plaintiff Laliberte has no injury-in-fact that is redressable to her as a result.

**B.   As a Former Plan Participant, Plaintiff Laliberte Does Not Have Article III Standing To Pursue Declaratory or Injunctive Relief.**

In the Complaint, Plaintiff Laliberte also purports to obtain non-monetary, prospective declaratory, and injunctive relief. Compl. ¶¶ 8(a), (b). Like Plaintiff McKnight, Plaintiff Laliberte asks the Court to "prohibit the practices described herein" and require Quant to "act in the best interest in the Plan and its participants." *Id*. But Plaintiff Laliberte also cashed out of the Plan years ago, Ex. C at 35:20-36:24:13, and so she has no Article III standing to obtain prospective relief of this sort for all of the reasons described *supra* in Section I.A.

**C.   Plaintiff Laliberte Also Knowingly and Voluntarily Covenanted Not To Sue Quanta.**

Like Plaintiff McKnight, Plaintiff Laliberte also must be dismissed from this action for lack of Article III standing based on her knowing and voluntary Promise Not To Sue Quanta. There is no dispute that Plaintiff Laliberte received $2,843 in exchange for her covenant "not to commence, file, voluntarily aid or ***in any way*** prosecute or cause to be commenced or prosecuted against the Released Parties [including Quanta] ***any action, charge, complaint or other proceeding***. . . ." Ex. E at 3 (emphasis added). She did so anyway and complained that the Plan should have removed the Freedom Funds no later than January 1, 2017. But black-letter contract principles—which must be applied here—dictate that Plaintiff Laliberte's Promise Not To Sue strips her of Article III standing to proceed with this Action. *See supra* at 14-15 (discussing *Esquivel*). For all the reasons explained in Section I.C, Plaintiff Laliberte's claims must be dismissed too.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs lack standing to advance their claims, and their Complaint must be dismissed in its entirety.

Dated: December 20, 2024

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld, *Admitted Pro Hac Vice*
Attorney-In-Charge
Pennsylvania Bar No. 85955
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
*jeremy.blumenfeld@morganlewis.com*

David J. Levy
Texas Bar No. 12264850
S.D. Tex. No. 13725
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 713.890.5000
*david.levy@morganlewis.com*
*Counsel for Defendant Quanta*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record on December 20, 2024.

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld