# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, ON BEHALF OF THE WHATABURGER 401(K) SAVINGS PLAN;<br>*Plaintiff* | § § § § § § § § § | |
| -vs- | § § | SA-24-CV-00310-XR |
| WHATABURGER RESTAURANTS LLC, THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS LLC, THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE, DOES NO. 1-20, WHOSE NAMES ARE CURRENTLY UNKNOWN;<br>*Defendants* | § § § § § § § § § § § | |

# ORDER

On this date, the Court considered Defendants' motion to dismiss (ECF No. 23), Plaintiff's Response in Opposition (ECF No. 25), and Defendants' Reply (ECF No. 27) along with the parties' oral arguments presented on August 1, 2024. After careful consideration the Court issues the following order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a class action suit alleging breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). Manuel Esquivel, a former Whataburger employee, brings this suit on behalf of the Whataburger 401(k) Savings Plan f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan ("Plan") and a proposed class ("Class") of participants and beneficiaries in the Plan against Whataburger Restaurants LLC, the Board of Directors of

Whataburger Restaurants LLC, the Whataburger 401(K) Savings Plan Administrative Committee and Does No. 1-20 (collectively, "Defendants") who manage the Plan.

Whataburger, a privately-owned fast food restaurant chain, is the Plan Sponsor. The Plan is a defined contribution plan (e.g., 401(k) plan) that Whataburger offers to its employees. ECF No. 1 at ¶ 9; ECF No. 23 at 1. As of December 31, 2022, the Plan had 9,796 participants with account balances and assets totaling approximately $215 million; according to Plaintiff, this amount places it in the top .9% of all U.S. defined contribution plans by total assets. ECF No. 1 at ¶ 3.

Throughout the time frame alleged in the complaint, the Plan operated as a participant-directed 401(k) plan. *Id*. at ¶ 17. Participants in the Plan directed the investment of their contributions into various investment options offered by the Plan, such as mutual funds and collective trust funds. *Id*. The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income. *Id*. Defendants are alleged fiduciaries of the Plan and were responsible for maintaining the plan including selecting and monitoring prudent and diverse investment options for the participants. *See id.* at 4. Plaintiff filed this purported class action suit against Defendants as Plan administrators and Plan fiduciaries alleging breach of fiduciary duties—specifically, failing to appropriately monitor the Plan's investments that resulted in the retention of unsuitable investments in the Plan instead of prudent alternative investments that were readily available. ECF No. 1 at ¶ 5. Plaintiff contends that because of the alleged breached of fiduciary duties, the Plan suffered substantial losses. *Id*. at ¶ 89. Plaintiff brings the class action on behalf of the Plan under Sections 404, 409, and 502 of ERISA, 29 U.S.C. §§ 1104, 1109, and 1132. Plaintiff also seeks equitable, legal or remedial relief.

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction on the grounds that Plaintiff lacks standing to bring the claims and Rule 12(b)(6) for failure to state a claim upon which relief may be granted as to the substantive ERISA claims. ECF No. 23 at 1–2. Plaintiff filed a memorandum in opposition and the Defendants filed a reply brief. Additionally, the parties presented oral arguments to the Court on August 1, 2024. The motion to dismiss is now fully briefed and ripe for consideration.

## II. LEGAL STANDARD

Rule 12(b)(1) provides for dismissal of a claim based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). In instances when a complaint could be dismissed for both lack of jurisdiction and failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal v. City of Abilene, Tex*. 436 Fed. Appx. 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). This practice precludes courts without jurisdiction "from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161. The practice also prevents courts from issuing advisory opinions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

"Article III standing is a jurisdictional prerequisite." *Steel*, 523 U.S. at 101; *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir.) (citing *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of

3

particular issues." *Warth*, 422 U.S. at 498. "[S]tanding to bring an action founded on ERISA is a 'jurisdictional' matter." *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to challenge through Rule 12(b)(1)." *Lee v. Verizon Commc'ns, Inc.* 837 F.3d 523, 533 (5th Cir. 2016). "To establish Article III [constitutional] standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up). If a plaintiff lacks standing to bring a claim, the court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

The burden of establishing subject matter jurisdiction is on the party—here, Esquivel—seeking to invoke it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When deciding a motion to dismiss pursuant to Rule 12(b)(1), a court may evaluate: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *See Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). When adjudicating a "facial attack," a court is only required to look at the sufficiency of the allegations in the complaint, taken as true. *Id*. (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). However, if a defendant brings a "factual attack" on the complaint, a court may consider matters outside of the pleadings (affidavits, documents, testimony, etc.). *Id*.

4

Defendants here have presented a factual attack because the arguments it makes relating to standing rely on the documentary evidence attached to its briefing on the motion to dismiss. Accordingly, the Court may consider material outside of the pleadings. *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).

## III. <u>ANALYSIS</u>

### A. Standing

The Defendants first move to dismiss Plaintiff's complaint on the grounds he lacks standing because he has released his claims against Whataburger, including those for "fiduciary breach" under ERISA. ECF No. 23 at 4–5. When his employment at Whataburger ended, Plaintiff signed a Separation and Release Agreement ("Agreement"). *See* ECF No. 23-2. In the Agreement, Plaintiff agreed to release Defendants and fiduciaries and others affiliated with the Plan from "all claims of any type" (known or unknown). *Id.* at 5. The Agreement also provided the Plaintiff gave up his rights to participate in any "class or collective action" or seek recovery "on behalf of another person or entity." *Id.* at 1–2.

Plaintiff contends that a release is ineffective to release breach of fiduciary claims brought on behalf of a plan under Section 502(a)(2) of ERISA. ECF No 25 at 9–10.

### 1. Release

The Defendants assert that the Plaintiff voluntarily and knowingly signed the Agreement in exchange for over $26,000. ECF No. 23 at 8. The Defendant does not dispute that assertion.

The release at issue provides in relevant parts:

> You release Whataburger . . . fiduciaries and others affiliated with Whataburger's benefit plans . . . from all claims . . . of any type to date, known or unknown . . . to the fullest extent allowed by law . . . including but not limited to anything to do with your employment . . . This means you give up all claims and rights related to: . . . compensatory . . . damages . . . or other federal . . . statutory . . . matters . . . claims under . . . the Employee Retirement Income Security Act . . . any

5

participation in any class or collective action against any Releasee; and claims for damages in an individual capacity or on behalf of another person or entity.

ECF No. 23-2.

The language of ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), allows plan participants and beneficiaries to sue plan administrators for breach of fiduciary duty under § 409, 29 U.S.C. § 1109(a)[1]. The Supreme Court has determined that claims brought pursuant to § 502(a)(2) are available to parties seeking relief that benefits the plan as a whole as opposed to recovery for individual plan participants or beneficiaries. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 142 n.9, 105 S. Ct. 3085, 87 L.Ed.2d 96 (1985) (Plan participants or beneficiaries may bring claims for breach of fiduciary duties "in a representative capacity on behalf of the plan as a whole.").

Understanding that 502(a)(2) allows participants to bring breach of fiduciary duty claims on behalf of a plan, the Court now analyzes whether a release prevents a participant from doing so. The Second, Sixth, Ninth and Third Circuits have determined that agreements related to employment that have been signed by an individual participant do not preclude those participants from suing on behalf of a plan. *See Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999) (holding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected by her release); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022) (addressing claims involving arbitration agreements and finding that "§ 502(a)(2) claims 'belong' to the Plan"); *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024) (holding employment agreements that contained

---

[1] ERISA authorizes participants to bring various "types of civil actions" to protect their interests. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139 (1985). Section 502(a)(2) is one of three actions set forth in ERISA that a plaintiff can bring to protect their interests. Section 502(a)(1)(B) allows a participant to "recover benefits due under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) permits suits to "enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

provisions to prospectively waive the right to seek remedies on behalf of a retirement plan are unenforceable). Looking further, several courts have concluded the issue is clear-cut, determining, as a matter of law, an individual cannot release a plan's claims and accordingly a release cannot bar an individual from bringing claims on behalf of a plan under 502(a)(2). *See e.g.*, *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("[T]he instant claims in this action are brought on behalf of the Plan pursuant to ERISA § 502(a)(2), not by ERISA plan participants seeking individual benefits. As a matter of law, a plan participant cannot release the Plan's claims."); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 423 (N.D. Okla. 2005) ("[T]he Court notes that the claims here are brought on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law.") (citation omitted); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006) ("[N]umerous courts have held that under ERISA, individuals do not have the authority to release a . . . plan's right to recover for breaches of fiduciary duty.").

In a case on point, the Third Circuit held that participants in a retirement plan lack the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2).").

In *In re Schering Plough Corp.*, a participant signed a release contained in a separation agreement after leaving her former employer, stating, "I release the Company (which includes Schering-Plough, and all of its subsidiaries, affiliates, officers, directors, and employees) from all claims and liabilities which I have or may have against it as of the date on which I sign this Agreement." *Id*. at 592 n.4. Despite the agreement, the participant brought a § 502(a)(2) claim on behalf of her retirement plan against her employer, and the employer argued the release barred the

7

claim. *Id*. at 595. The court held that even though the participant signed the release and the release was valid, "[§] 502(a)(2) claims are, by nature, plan claims." *Id*. Thus, because the participant's claims were brought under § 502(a)(2), they were "causes of action that belong[ed] to the Plan and [we]re based on duties owed to the Plan" and could not be affected by participant's release. *Id*. In the decision, the court noted, "[t]he vast majority of courts have concluded that an individual release has no affect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2)." *Id*.

But not all circuits agree. The Seventh Circuit found that a plaintiff released claims under ERISA § 502(a)(2) when he signed a general release that covered "any claim or entitlement to pay, benefits or damages arising under any federal law (including but not limited to . . . [ERISA])"). *Howell v. Motorola, Inc.*, 633 F.3d 552, 558 (7th Cir. 2011). There the court found that a valid release precludes § 502(a)(2) claims brought on behalf of a plan. *Id*. at 561. A D.C. district court similarly concluded that a plaintiff that signed a release of "any and all claims" alleging "violations of "any federal . . . statute and excluding "claims for vested benefits under employee benefits plans" had released her ERISA claims. *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 107 (D.D.C. 2019). However, other courts have distinguished both *Howell* and *Stanley* because those courts did not specifically discuss whether the plaintiffs had the power to waive claims brought derivatively on behalf of the plan. *See Arnold v. Paredes*, 714 F. Supp. 3d 962, 973–974 (M.D. Tenn. Jan. 31, 2024) (distinguishing *Howell* and *Stanley*); *Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *14 (D. Conn. May 25, 2022) (same).

This Court is unaware of a case wherein the Fifth Circuit squarely addresses whether a release bars claims brought on behalf of a plan. In *Langbecker v. Electronic Data Systems Corp.*, a district court certified a class in which close to 9,000 potential class members in a § 502(a)(2)

8

claim had signed broad releases. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 313 (5th Cir. 2007). On interlocutory appeal, a divided Fifth Circuit panel remanded the class certification to the district court for further consideration of the effect of the releases on the certification decision. *Id*. In its decision to remand, the panel did not hold that the releases foreclosed a § 502(a)(2) suit on behalf of a plan, noting that "holders of the releases could become a subclass if a class action is otherwise deemed appropriate." *Id*.

Defendants cite *Chaplin v. NationsCredit Corp.* as instructive on the issue. There the Fifth Circuit determined that a release can prevent a plaintiff from bringing a claim when seeking benefits on their own behalf. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 376 (5th Cir. 2002) (finding a valid release bars claims that "fall within the subject matter of the release[].)" The plaintiff in *Chaplin*, having signed a release of claims, sued a former employer under ERISA seeking severance benefits. *Id*. at 370. The *Chaplin* court found the release covered the plaintiff's ERISA claim and as a result his claims were barred. *Id*. at 372. Although the *Chaplin* Court held that a release bars ERISA claims, the issue there involved a Plaintiff bringing a claim on his own behalf, not a claim brought on behalf of a plan as contemplated here.

In sum, the Plaintiff is bringing claims through a statutory mechanism that provides for derivative actions on behalf of the plan. The weight of authority suggests a release is ineffective from barring the claim. Finding very little authority suggesting otherwise, the Court concludes that Plaintiff has not released his right to bring the section 502(a)(2) claims at issue here.

**2. Promise Not to Sue**

Defendants next assert that the Plaintiff lacks standing to bring the lawsuit because he entered into a Promise Not to Sue. ECF No. 23 at 9. The Defendants argue the Promise Not to Sue

9

is separate and distinct from the release and thus operates independently to bar Plaintiff's lawsuit. *Id*.

Plaintiff argues that, in the same manner as a general release, a covenant not to sue is ineffective against a Plan participant's right to bring suit in a representative capacity. ECF No. 25 at 13–14. The Plaintiff also contends that a covenant not to sue is ineffective as to unknown, future ERISA claims. *Id*. at 14–15.

The Court first examines whether the Promise Not to Sue should be examined independent of the release.

Starting with the language of the Promise Not to Sue itself, the covenant clearly states it is to be distinguished from the release. ECF No. 23-1 at 5 (stating the Promise Not to Sue "is different from the General Release Above."). Both the Plaintiff and the Defendants agree that the two provisions are separate. ECF No. 25 at 14 (plaintiff concedes "Defendants are correct in distinguishing the covenant not to sue from a release."). Despite the concession, the Plaintiff contends that the covenant is ineffective from preventing derivative claims from being brought on behalf of the plan. *Id*. In support of his position, Plaintiff cites *In re JDS Uniphase Corp. ERISA Litigation*. In that case, the release and the covenant not to sue were, by terms of the agreement, one and the same. The court there found the release did not bar an ERISA fiduciary duty claim on behalf of the plan but provided no analysis specific to the covenant not to sue. *In re JDS Uniphase Corp. ERISA Litigation*, 2006 WL 2597995, at *1–2 (N.D. Cal. Sept 11, 2006).

The Third Circuit, in *In re Schering Plough*, distinguished between a release and a covenant not to sue when it explained (without deciding), "even if a release does not bar an individual from bringing an ERISA § 502 claim on behalf of a plan, it could be argued that the covenant not to sue

10

bars [Plaintiff] from filing a lawsuit and serving as a lead plaintiff in an action against [defendant]." *In re Schering Plough*, 589 F.3d 585, 599 (3d. Cir. 2009).

There is very little authority on whether a covenant not to sue precludes a plaintiff from bringing claims on behalf of a plan. As noted above, the Third Circuit commented that an argument could be made that a covenant not to sue bars a plaintiff from bringing claims under 502(a)(2). *In re Schering Plough*, 589 F.3d 585, 599 (3d. Cir. 2009). A district court in the Northern District of Georgia barred a plaintiff from bringing 502(a)(2) claims on behalf of a plan reasoning in part that "at least two district courts in the Eleventh Circuit have found that covenants not to sue bar a plaintiff from bringing a section 502(a)(2) claim on behalf of employee stock bonus plan." *Wagner v. Stiefel Laboratories, Inc.*, 2015 WL 4557686, at *12 (N.D. Ga. June 18, 2015) (discussing *Stargel v. SunTrust Banks, Inc.*, 968 F.Supp.2d 1215, 1224 (N.D. Ga. August 6, 2013) (vacated and remanded on other grounds); *Finnerty v. Stiefel Laboratories, Inc.*, No. 09-CV-2187 (S.D. Fla. 2009)).

Looking first at the text of Section 502, the Court finds no statutory stricture on covenants not to sue. Unlike other Congressional Acts, which regulate release requirements[2], ERISA contains no such provisions. *Chaplin*, 307 F.3d 368, 376 ("ERISA does not regulate releases at all").

When Courts interpret a severance agreement releasing ERISA claims, federal common law applies. *See Chaplin*, 307 F.3d at 372[3]. "Settlement agreements and release agreements are contracts, and their construction is governed by legal principles applicable to contracts generally."

---

[2] The Older Workers Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f) requires a release to contain certain elements for the release to be valid. *See Chaplin*, 307 F.3d at 375.

[3] "The relevant federal substantive law" includes "common-sense canons of contract interpretation" that are "derived from state law." *Morais v. Cent. Beverage Corp. Union Emps.' Suppl. Ret. Plan*, 167 F.3d 709, 712 (1st Cir. 1999) (construing settlement agreements involving the release of ERISA benefits). The Court will draw from Texas law to set forth the applicable general contract principles to interpret the covenant not to sue. The Court finds those general principles equally apply under Texas and federal common law, and that the Court would reach the same conclusion irrespective of which law governs.

11

*Stamps v. Univ. of Texas System*, 2024 WL 2194856, at *4 (W.D. Tex. May 15, 2024) (citations omitted). "In Texas, 'settlement agreements are governed by the law of contracts.'" *Sanders v. Unum Life Ins. Co. of America*, 2016 WL 1436695, at *1 (W.D. Tex. Apr. 11, 2016) (citing *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App. 2009)).

"In construing a contract . . . courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law." *Int'l Turbine Servs*, 278 F.3d at 497 (citing *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

The Promise Not to Sue plainly states "[a] 'promise not to sue' means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by the General Release, you agree never to sue any Releasee for any reason covered by the General Release." *Id*. The General Release covers: (1) all claims . . . of any type to date, known or unknown; (2) claims under the Employee Retirement Income Security Act; (3) any participation in any class or collective action against any Releasee; and (4) claims for damages in an individual capacity or on behalf of another person or entity. *Id*.

Analyzing the Promise Not to Sue, the Court concludes it is clear and unambiguous. First, Plaintiff expressly *promised not to sue any Releasee*. Despite the Promise, Plaintiff has sued Whataburger, The Board of Directors of Whataburger Restaurants LLC and The Whataburger 401(K) Savings Plan Administrative Committee in this Court. The Agreement's definition of Releasee includes Whataburger and any other entity related to it including fiduciaries and others affiliated with Whataburger's benefit plans. ECF No. 23-2 at 5. Second, Plaintiff Promised Not to

12

Sue for any reason covered by the General Release ("*all claims of any type to date, known or unknown, suspected or unsuspected, to the fullest extent allowed by law, including but not limited to anything to do with your employment or the end of your employment*" including *claims under the Employment Retirement Income Security Act*. Third, Plaintiff Promised Not to Sue *or participate in any class or collective action against any Releasee or bring claims for damages on behalf of another person or entity*.

Based on the clear, unambiguous language of the Promise Not to Sue, the Court finds it encompasses the claims asserted in the Plaintiff's lawsuit. Therefore, Plaintiff's claims are barred by the Promise Not to Sue and may be dismissed under Federal Rule 12(b)(1).

Plaintiff brings one final attack on the Promise Not to Sue, arguing, it is ineffective as to unknown, future ERISA claims. Plaintiff cites a case wherein a court determined that "a waiver may release known claims, [but] it cannot release future unknown claims." *Sullivan v. AT&T, Inc.*, 2010 WL 905567, at *4 (N.D. Tex. March 12, 2010). The *Sullivan* court considered whether a plaintiff could bring a claim for an alleged misrepresentation that occurred "more than four years after he executed a waiver." In making its decision, the court referenced a Fourth Circuit holding that a waiver did not release claims arising from events that had not occurred when the release was executed. *Barron v. UNUM Life Ins. Co. of America*, 260 F.3d 310, 317 (4th Cir. 2001). Respectively, both courts concluded that waivers are invalid for future claims (i.e., claims for events after the release was executed).

Defendants here, on the other hand, argue that all the events the Plaintiff has sued on occurred before he signed the Promise Not to Sue—March 15, 2023. ECF. No. 27 at 6.[4] By

---

[4] Defendant summarized the Plaintiff's complained of conduct. ECF No. 27 at 6. *See e.g.*, ECF No. 1 at ¶¶ 46–56 (Janus Fund allegedly underperformed between 2020 and 2021; "Had the Committee met to appropriately review the Plan's investment results as of the end of the Fourth Quarter of 2021 . . . ."); *Id*. at ¶¶ 32–41 (Mainstay Fund allegedly

13

Plaintiff's own admission, the causes of action arose during his participation in the Plan and so must have occurred and existed prior to the effective date of the Promise Not to Sue.

The Court agrees that the events complained of occurred before the date the Plaintiff signed the Promise Not to Sue and therefore cannot be unknown, future claims.

While the Plan may have claims that could be brought against the Defendants, the Plaintiff has contracted away his right to bring those claims on behalf of the Plan.

## CONCLUSION

For the foregoing reasons, the Court concludes Plaintiff does not have standing to bring his claims against the Defendants.

Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED** as to the Rule 12(b)(1) motion and **DENIED** as **MOOT** as to the 12(b)(6) argument.

IT IS **ORDERED** that Plaintiff's claim against Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is so **ORDERED**.

**SIGNED** this 8th day of November, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

underperformed in 2018 and 2019; "Had the Committee met to appropriately review the Plan's investment results at the end of the Fourth Quarter of 2019 . . . .").

14